**CLARKSON LAW FIRM, P.C.**
Shireen M. Clarkson (SBN 237882)
*sclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
Alan Gudino (SBN 326738)
*agudino@clarksonlawfirm.com*
Ryan Ardi, Esq. (SBN 348738)
*rardi@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff and the Putative Class*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN PRESCOTT, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | 1. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, (CAL. CIV. CODE §§ 1750, *et seq.*) |
| ABBOTT LABORATORIES, | |
| Defendant. | 2. VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, (CAL. BUS. & PROF. CODE §§ 17500, *et seq.*) |
| | 3. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, (CAL. BUS. & PROF. CODE §§ 17200, *et seq.*) |
| | 4. BREACH OF EXPRESS WARRANTY |
| | 5. UNJUST ENRICHMENT/RESTITUTION |
| | **JURY TRIAL DEMANDED** |

## TABLE OF CONTENTS

Page No.

I.     SYNOPSIS ............................................................................................................. 1

II.    JURISDICTION AND VENUE ............................................................................ 12

III.   PARTIES ............................................................................................................. 13

IV.    FACTUAL ALLEGATIONS ................................................................................ 15

       A.     Background on Products and Product Claims ......................................... 15

       B.     Plaintiff and Reasonable Consumers Were Misled by the Challenged
              Representations ...................................................................................... 26

       C.     No Adequate Remedy at Law .................................................................. 28

V.     CLASS ALLEGATIONS ..................................................................................... 30

CAUSES OF ACTION ................................................................................................... 34

       COUNT ONE ........................................................................................................ 34

       COUNT TWO ....................................................................................................... 36

       COUNT THREE .................................................................................................... 37

              "Unfair" Prong ...................................................................................... 39

              "Fraudulent" Prong ............................................................................... 41

              "Unlawful" Prong .................................................................................. 42

       COUNT FOUR ...................................................................................................... 43

       COUNT FIVE ........................................................................................................ 44

PRAYER FOR RELIEF .................................................................................................. 45

DEMAND FOR JURY TRIAL ....................................................................................... 46

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Plaintiff Steven Prescott ("**Plaintiff**"), individually, and on behalf of all other similarly situated purchasers, as more fully described herein (the "**Class**"), brings this class action complaint against Abbott Laboratories ("**Defendant**"). Plaintiff's allegations are based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys.

I.   **SYNOPSIS**

1.   Every day, millions of health-conscious consumers seek to make purchase decisions that align with their nutritional needs, and they trust food and beverage companies to advertise product attributes honestly.

2.   Informed choice is especially important to the ~150M (and rising) people living with type 2 diabetic conditions in the United States who necessarily depend on diet to manage their disease and live a longer life.[1]

3.   This putative class action arises from Defendant's abuse of consumer trust by marketing its popular "Glucerna" brand shakes and powders as nutritional and "formulated specifically for diabetics" even though they contain sucralose and other key ingredients shown to deregulate blood sugar, worsen diabetes, and even cause it, among other harms.

4.   Noting specifically the "increased risk of type 2 diabetes, cardiovascular diseases, and mortality in adults," the World Health Organization advises against consuming sugar alternatives like the sucralose featured in the Products. Other medical studies are in accord.

5.   Defendant employs teams of food scientists who know about these health risks, but nowhere does Defendant disclose any of them. Defendant elects instead to tell an affirmatively false story, prominently on the front labels of its Glucerna Products, that the Products "help manage blood sugar" and are the "#1 doctor recommended brand" that is "specifically designed for people with diabetes" (collectively, the "**Diabetes Health Claims**" or the "**Challenged Representations**"), as follows:

///

///

_____
[1] Diabetes Statistics, DIABETES RSCH. INST. (2022).

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

a. <u>Glucerna Original Shakes, Glucerna Hunger Smart Shakes, Glucerna Protein Smart Shakes,</u> and <u>Glucerna Original Snack Shakes:</u> "help manage blood sugar"; "#1 doctor recommended brand"; "scientifically designed for people with diabetes" (collectively, the "Shakes").

b. <u>Glucerna Hunger Smart Powder</u>: "#1 doctor recommended brand"; "scientifically designed for people with diabetes" (the "Powder," together with the Shakes and collectively, the "Glucerna Products" or the "Products").

6. Defendant's deceptive marketing has proved profitable, and Defendant now enjoys a leading market position in the multi-billion-dollar health foods industry. As Defendant intended, reasonable consumers understand the Challenged Representations to mean the Products are healthy drinks and powders that are suitable for, or can aid in, the management of blood sugar generally and diabetes specifically.

7. But because all the Products are made with sucralose, they are neither healthy nor suitable for these purposes. Instead, according to science yet unknown to consumers, sucralose negatively affects pancreatic beta cells, promotes insulin resistance, destabilizes glucose absorption, causes obesity, and harms the gut microbiome.

8. Similarly harmful to diabetics, and blood sugar regulation for everyone, are three other ingredients featured in the Shakes: (1) carrageenan, a Product additive that impairs insulin signaling; (2) choline chloride, which has been shown to exacerbate glucose and insulin resistance in people with Type 2 diabetes specifically; and (3) maltodextrin, a carbohydrate Defendant adds to the Glucerna Original and Snack Shakes which negatively influences the gut microbiome and has a glycemic index superseding that of table sugar.

9. Against this backdrop, the Products are not "scientifically designed for people with diabetes" as Defendant boldly touts. Nor do they "help manage blood sugar" as promised. Instead, the Products negatively affect blood sugar levels and gut health, which can be harmful to everyone and especially those with diabetes.

10. Absent judicial intervention, millions of diabetics and other consumers will continue to unknowingly ingest unhealthy ingredients in Products they would otherwise avoid—and pay

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Defendant a premium to do so. True and accurate depictions of the Products' false labels and packaging are shown below as "Exhibits 1-5."

**Exhibit 1: Glucerna Original Shakes**

 

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265




CLASS ACTION COMPLAINT



CLASS ACTION COMPLAINT

**Exhibit 2: Glucerna Hunger Smart Shakes**



CLASS ACTION COMPLAINT

1

**Exhibit 3: Glucerna Protein Smart Shakes**

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



CLASS ACTION COMPLAINT

**Exhibit 4: Glucerna Original Snack Shakes**



///

///

///

///

///

CLASS ACTION COMPLAINT



///
///
///
///
///

CLASS ACTION COMPLAINT

**Exhibit 5: Glucerna Hunger Smart Powder**



///

///

///

CLASS ACTION COMPLAINT

11. **The Products.** All Glucerna Products at issue are manufactured or sold by Defendant to consumers in California and the United States. The Products are:

      i.  **Glucerna Original Shake**: all flavors, varieties, and sizes of Glucerna Original Shake drinks, including but not limited to, Glucerna Original Homemade Vanilla, Glucerna Original Creamy Strawberry, Glucerna Original Rich Chocolate, Glucerna Original Classic Butter Pecan, and Glucerna Original Chocolate Caramel;

      ii.  **Glucerna Hunger Smart Shake**: all flavors, varieties, and sizes of Glucerna Hunger Smart Shakes, including, but not limited to, Glucerna Hunger Smart Rich Chocolate, Glucerna Hunger Smart Homemade Vanilla, Glucerna Hunger Smart Creamy Strawberry, and Glucerna Hunger Smart Peaches & Crème;

      iii.  **Glucerna Protein Smart Shake**: all flavors, varieties and sizes of Glucerna Protein Smart Shake, including, but not limited to, Glucerna Protein Smart Chocolate and Glucerna Protein Smart Vanilla;

      iv.  **Glucerna Original Snack Shake**: all flavors, varieties and sizes of Glucerna Original Snack Shake, including, but not limited to, Glucerna Original Snack Rich Chocolate and Glucerna Original Snack Homemade Vanilla; and,

      v.  **Glucerna Hunger Smart Powder:** all flavors, varieties and sizes of Glucerna Hunger Smart Powder, including, but not limited to, Glucerna Hunger Smart Powder Rich Chocolate and Glucerna Hunger Smart Powder Homemade Vanilla.

12. **The Deception.** Through labeling, packaging, advertising, and marketing its Glucerna Products with the Diabetes Health Claims, Defendant misleads reasonable consumers, including Plaintiff, into believing the Products are nutritional drinks and powders that provide diabetes and blood sugar management benefits, when they do not.

///

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

13.    **Primary Dual Objectives.** Plaintiff brings this action individually and on behalf of those similarly situated consumers who purchased the Products during the relevant Class Period (Class defined *infra*), for dual primary objectives: ***One***, Plaintiff seeks, on his behalf and on behalf of the Class, injunctive relief to stop Defendant's unlawful manufacture, marketing, and sale of the Products to avoid or mitigate the risk of deceiving the public into believing the Products can provide the advertised benefits, by requiring that Defendant change its business practices, which may include one or more of the following: remove the "to help manage blood sugar," "scientifically designed for people with diabetes," and "#1 doctor recommended brand" claims on the Products' labels and/or packaging, and/or discontinuance of the Products' manufacture, marketing, and/or sale. ***Two,*** Plaintiff seeks, on his behalf and on behalf of the Class, monetary recovery of the premium consumers paid for the Products due to the false and deceptive labeling, consistent with permissible law (including, for example, damages, restitution, disgorgement, and any applicable penalties solely as those causes of action so permitted).

## II.    JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. Section 1332, because: (i) the Class consists of 100 or more members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) minimal diversity exists because at least one Plaintiff (CA) and Defendant (IL) are citizens of different states. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. Section 1367.

15.    Venue is proper in this District under 28 U.S.C. Section 1391 because a substantial part of the events, omissions, and acts giving rise to the claims occurred in this District. Defendant markets and sells Products in this District, Defendant gains substantial revenue and profits from doing business in this District, and consumers pay Defendant in this District.

16.    Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts that exist between Defendant and California. Defendant is authorized to do and is doing business in California, and Defendant advertises and solicits business in California. Defendant has purposefully availed itself of the protections of California law and should reasonably

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

expect to be hauled into court in California for harm arising out of its pervasive contacts with California.

### III.   PARTIES

17.   **Plaintiff Steven Prescott**. The following is alleged based upon Plaintiff's personal knowledge:

    a.   **Residence**. Plaintiff is, and at all times relevant was, a resident of California residing in the county of Santa Cruz.

    b.   **Purchase Details and Background Information**. Plaintiff was diagnosed with Type 2 diabetes in 2005 and continues to suffer from diabetes through the time of the filing of this Complaint. Plaintiff purchased the Glucerna Original Shake Homemade Vanilla and Glucerna Original Shake Creamy Strawberry Products in California within the last four (4) years of the filing of this Complaint from a Rite Aid store located in Santa Cruz, California in or around September 2021. Plaintiff paid approximately $12.99 for each pack of six.

    c.   **Reliance on Challenged Representations**. In making his purchases, Plaintiff understood the Products' advertising to mean that the Products would aid in managing his diabetes. Plaintiff relied upon Defendant's labeling, marketing, and advertising claims, that the Products could "[] help manage blood sugar," are "scientifically designed for people with diabetes," and are the "#1 doctor recommended brand."

    d.   **Caution/Damages.** Plaintiff would not have purchased the Products, or would not have paid as much for the Products, had he known they could not provide the advertised benefits.

    e.   **Desire to Repurchase**: Plaintiff continues to see the Products available for purchase and would like to purchase the Products again in the future if he could be sure the Products were compliant with California and consumer protection laws.

    f.   **Lack of Personal Knowledge and Expertise**: Plaintiff is not personally familiar with, and does not possess any specialized knowledge skill, experience, or education, in the manufacture of nutritional drinks and, therefore, Plaintiff has no way of

**CLASS ACTION COMPLAINT**

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

determining whether Defendant's Products can actually "[] help manage blood sugar," are "scientifically designed for people with diabetes," and are the "#1 doctor recommended brand."

g. **Inability to Rely.** Plaintiff is, and continues to be, unable to rely on the Products' representations, statements, or functions as they are advertised.

18.    **Plaintiff's Future Harm**. Defendant continues to market and sell the Products as nutritional drinks and powders that "[] help manage blood sugar," are "scientifically designed for people with diabetes," and are the "#1 doctor recommended brand." Plaintiff wants to purchase the Products in the future if he can be sure the Products can provide the advertised benefits. However, Plaintiff is an average consumer who is not sophisticated in, for example, the ingredients that go into making diabetic nutritional drinks and powders, similar to and including the Products, and he cannot determine if the Products can achieve their advertised benefits. Since Plaintiff would like to purchase the Products again—despite the fact that the Products currently cannot achieve the advertised benefits—Plaintiff would likely and reasonably, but incorrectly, assume the Products can achieve the advertised benefits. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant has fixed the Products such that Plaintiff may buy it again, believing it can achieve the advertised benefits of diabetes and blood sugar management. In this regard, Plaintiff is currently and, in the future, deprived of the ability to rely on the Products' labeling and packaging. However, an injunction prohibiting use of the Challenged Representations unless true would enable Plaintiff to rely confidently on the Product labels in making his future purchase decisions.

19.    **Defendant Abbott Laboratories** is a company headquartered in Abbott Park, Illinois. Abbott Laboratories is located at 100 Abbott Park Road, Abbott Park, Illinois 60064. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California. Defendant is the owner, manufacturer, and/or distributor of the Products, and is a company that created and/or authorized the false, misleading, and deceptive labeling and packaging for the Products. Defendant and its agents manufactured, advertised, marketed, and sold the Products in this jurisdiction and in this judicial district. The unfair, unlawful, deceptive, and misleading false advertising claims on the Products

14

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

were prepared, authorized, ratified, and/or approved by Defendant and its agents, and, accordingly, disseminated throughout the State of California and nationwide by Defendant and its agents to deceive and mislead consumers into purchasing the Products.

## IV.  FACTUAL ALLEGATIONS

### A.  Background on Products and Product Claims

20.  **Sucralose**. Sucralose was discovered in 1976 by chemists who were testing it for use as an insecticide. Because of its sweet taste, it was also found to be useful as food. Sucralose is synthesized by chlorinating the sugar sucrose, by substituting three hydroxyl groups with three chlorine atoms. Sucralose is approximately 600 times sweeter than sucrose, or sugar. Since 1998, Defendant's Glucerna brand has been associated with shakes and powders purportedly "formulated specifically for diabetics and others with dietary restrictions,"[2] including the Products featuring sucralose.

21.  **Diabetes, Generally**. Roughly 37.3 million Americans, or 1 in 10 Americans, have diabetes.[3]  Diabetes is characterized by high blood sugar caused by the inability to produce enough insulin—a hormone that allows sugar to be removed from the blood stream and used for energy in the cells of the pancreas.[4]  The most common form of diabetes is Type 2 diabetes, which impairs the pancreas due to insulin resistance typically as a result of diet and lifestyle factors.[5]  Insulin resistance means that the cells in the pancreas stop responding to insulin that normally triggers the flow of glucose into the cells.[6]  When the cells become resistant, insulin is no longer able to signal glucose uptake, so it remains in the blood stream where it causes problems like organ failure and diabetes.[7]  People who suffer from Type 2 diabetes may be prescribed medicine but generally

---

[2] *See* Defendant's official website at, http://www.abbott.com/about-abbott/our-heritage.html (last visited August 10, 2023).

[3] *The Facts, Stats, and Impacts of Diabetes,* CDC, https://www.cdc.gov/diabetes/library/spotlights/diabetes-facts-stats.html#:~:text=37.3%20million%20Americans%E2%80%94about%201,t%20know%20they%20have%20it (last visited Aug. 21, 2023).

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

manage the disease via exercise and healthy eating.  That is why people with Type 2 diabetes seek out food products that are nutritional and can help them manage their blood sugar.

22.    **The Products Contain Express and Implied Health Claims.** The Products claim to aid consumers suffering from diabetes in managing their blood sugar levels. The Diabetes Health Claims not only serve as express claims regarding diabetes, but they also serve as implied health claims to all consumers, including non-diabetics, who reasonably understand the claims to mean the Products are healthy shakes and powders for people with diabetes as well as those without.

   a.    The Glucerna Original Shakes, Glucerna Hunger Smart Shakes, Glucerna Protein Smart Shakes and Glucerna Original Snack Shakes contain the following claims directly on the front of the packaging:

      i.    "To Help Manage Blood Sugar"

      ii.    "Scientifically Designed For People With Diabetes"

      iii.    "#1 Doctor Recommended Brand"

   b.    The Glucerna Hunger Smart Powders contain the following statements on the front of the packaging: "Scientifically Designed For People With Diabetes" and "#1 Doctor Recommended Brand."

23.    **The Products Contain Sucralose, Which is Harmful to Diabetics and is Generally Unhealthy.** A core ingredient in all the Products is sucralose. While the Products purport to be designed specifically for people with diabetes and to aid with blood sugar management, sucralose has been shown to induce and worsen obesity, metabolic syndrome, and Type 2 diabetes itself by interfering with bodily responses that contribute to control glucose and energy balance.[8] The ingestion of sucralose causes blood sugar destabilization by triggering an abnormally high reaction to glucose, causing it to irrationally spike after consuming a normal meal.[9]  A 2017 study found that after only two weeks of daily sucralose intake, there was a glucose absorption enhancement,

---

[8] M. Yanina Pepino, *Metabolic Effects of Non-Nutritive Sweeteners*, 152 (PART B) PHYSIOLOGY & BEHAV., 450, 450 (Dec. 1, 2015), https://www.sciencedirect.com/science/article/pii/S0031938415003728#bb0215.

[9] M. Yanina Pepino et al., *Sucralose Affects Glycemic and Hormonal Responses to an Oral Glucose Load,* 36 DIABETES CARE 2530, 2530-34 (Apr. 30, 2013), https://pubmed.ncbi.nlm.nih.gov/23633524/.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

worsening blood glucose response to external glucose, and a deleterious impact on glycemic control, which causes a predisposition for diabetes in healthy adults.[10]

24.    In an even more recent large-scale study of 105,588 participants conducted in July 2023 researchers studied the relationship between sucralose (and other artificial sweeteners) and the risk of Type 2 diabetes. The study discovered that as compared to non-consumers of sucralose, those who consume sucralose had a higher risk of developing Type 2 diabetes.[11]

25.    Further undermining Defendant's Diabetes Health Claims is a May 2023 comprehensive review of 11 meta-analyses derived from 7 systemic reviews finding that consumption of artificially sweetened beverages, including sucralose, is associated with a higher risk of obesity, Type 2 diabetes, hypertension, cardiovascular disease incidence, and all-cause mortality.[12]

26.    **Sucralose Damages Pancreatic Beta-Cells.** While the Products claim "to help manage blood sugar," the truth is the sucralose in the Products *deregulates* blood sugar by disrupting the gut microbiome, causing gut dysbiosis, and damaging residual functioning of the pancreas through multiple pathways. It induces a prediabetic state by killing beta cells of the pancreas that release insulin, which after prolonged consumption leads to diabetes.[13]  When these beta cells die, insulin is no longer produced, and diabetes becomes more severe and permanent.[14]  Sucralose can

---

[10] Richard Young et al., *Impact of Artificial Sweeteners on Glycaemic Control in Healthy Humans,* EUROPEAN ASS'N FOR THE STUDY OF DIABETES, (Sept. 14, 2017), https://www.easd.org/media-centre/home.html#!resources/impact-of-artificial-sweeteners-on-glycaemic-control-in-healthy-humans.

[11] Charlotte Debras et al., *Artificial Sweeteners and Risk of Type 2 Diabetes in the Prospective NutriNet-Sante Cohort*, DIABETES CARE (July 25, 2023), https://diabetesjournals.org/care/article/doi/10.2337/dc23-0206/153434/Artificial-Sweeteners-and-Risk-of-Type-2-Diabetes.

[12] Cristina Diaz et al., *Artificially Sweetened Beverages and Health Outcomes: An Umbrella Review*, 14(4) ADVANCES IN NUTRITION 710, 710 (July, 2023), https://www.sciencedirect.com/science/article/pii/S2161831323003150?via%3Dihub.

[13] S. Gupta et al., *Sucralose Induced Pancreatic Toxicity in Albino Rats: Histomorphological Evidence*, 31 J. MORPHOL. SCI 123, 125-6 (2014), https://d-nb.info/1181607574/34.

[14] Patrik Rorsman & Frances M Ashcroft, *Pancreatic β-Cell Electrical Activity and Insulin Secretion: Of Mice and Men*, 98 (1) PHYSIOLOGICAL REVIEWS 117, 117-18 (Jan. 1, 2018), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5866358/.

also cause necrosis of the pancreas and inflammation of the liver because of its negative effect on gut health.[15]

27.   **Sucralose Causes Insulin Resistance.** Sucralose decreases insulin sensitivity, meaning it causes cells to be more resistant to insulin, which signals the cells to take sugar out of the bloodstream.[16] For example, in a 2020 study, participants were given either sucralose or water followed by a glucose tolerance test. The study found that those who consumed sucralose had higher blood insulin levels.[17]  This can cause a suffering pancreas, as seen in Type 2 diabetics, to work even harder, pumping more and more insulin resulting in the cells becoming more resistant. Over time, the pancreas can shut down and the cells no longer respond to insulin (i.e., insulin resistance) which can cause high blood sugar and diabetes.[18]

28.   The insulin resistance caused by sucralose also impacts healthy individuals. A 14-day short-term study that tested sucralose consumption at the 15% Acceptable Daily Intake (ADI) in healthy participants found a significant decrease in insulin sensitivity.[19] Another short-term study lasting 10 days discovered that when sucralose is paired with a carbohydrate such as maltodextrin, as it is in Defendant's Products, its consumption decreases insulin sensitivity in non-diabetic participants.[20] Likewise, following a 4-week consumption of sucralose in healthy participants in a randomized, double-blind, placebo-controlled study, sucralose was found to decrease insulin

---

[15] Xiaoming Bian et al., *Gut Microbiome Response to Sucralose and Its Potential Role in Inducing Liver Inflammation in Mice*, 8 FRONT PHYSIOL 487, 487-88 (July 24, 2017), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5522834/.

[16] Yanina M. Pepino, *The Not-So Sweet Effects of Sucralose on Blood Sugar Control*, 108(3) THE AM. J. OF CLINICAL NUTRITION 431, 431-432 (Sept., 2018), https://www.sciencedirect.com/science/article/pii/S0002916522029665?via%3Dihub.

[17] Kushagra Mathur et al., *Effect of Artificial Sweeteners on Insulin Resistance Among Type-2 Diabetes Mellitus Patients*, 9 (1) J. FAM. MED PRIM. CARE 69, 69 (2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7014832/.

[18] *Type 2 Diabetes,* CDC, https://www.cdc.gov/diabetes/basics/type2.html (last visited Aug. 10, 2023).

[19] Alonso Romo-Romo et al., *Sucralose Decrease Insulin Sensitivity in Healthy Subjects: A Randomized Controlled Trial*, 108 AM. J. CLINICAL NUTRITION 485, 485 (Sept. 1, 2018), https://pubmed.ncbi.nlm.nih.gov/30535090/; Pepino, *supra* note 16.

[20] Jelle R. Dalenberg et al., *Short-Term Consumption of Sucralose With, but Not Without, Carbohydrate Impairs Neural and Metabolic Sensitivity to Sugar in Humans*, 31(3) CELL METABOLISM 493, 493 (Mar. 3, 2020), https://www.cell.com/cell-metabolism/fulltext/S1550-41312030057-7.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

sensitivity.[21] Notably, in a randomized, placebo-controlled clinical trial, even a single 48 mg sip of sucralose increased the amount of insulin in the blood to an unhealthy level (known as hyperinsulinemia) in otherwise healthy participants.[22]

29.     In addition, because sucralose acts like glucose, it gets mistaken as such by the sweet taste receptors in the pancreas. This weakens insulin receptors, causing the release of insulin that leads to Type 2 diabetes and obesity.[23] Sucralose also causes insulin resistance by triggering faster insulin secretion rate while decreasing insulin clearance (i.e., removal from the blood).[24] This heightened level of insulin in the blood further weakens insulin receptors which prevents cells from taking in glucose, causing permanent high blood sugar and a weakened pancreas—a feature of diabetes.[25]

30.     **Sucralose Harms the Gut Microbiome.** Sucralose has also been shown to cause gut dysbiosis (i.e., an imbalance between good and bad bacteria in the gut) and inflammation.[26] A disruption in the bacterial environment in the gut from sucralose causes inflammation, worsens insulin resistance, and promotes obesity and increases sugar cravings.[27]  Even minimal amounts of sucralose intake can increase acidity of the entire GI tract and kill good bacteria for weeks after consumption.[28]  Interference with gut microbiota from sucralose also induces glucose intolerance

---

[21] Amornpan Lertrit et al., *Effects of Sucralose on Insulin and Glucagon-Like Peptide-1 Secretion in Healthy Subjects: A Randomized, Double-Blind, Placebo-Controlled*, 55-56 NUTRITION 125, 125 (Nov., 2018), https://www.sciencedirect.com/science/article/abs/pii/S0899900718302557?via%3Dihub.

[22] Angelica Y. Gomez-Arauz et al., *A Single 48mg Sucralose Sip Unbalances Monocyte Subpopulations and Stimulates Insulin Secretion in Healthy Young Adults*, J. IMMUNOL RSCH. (Apr. 28, 2019), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6512026/.

[23] Mathur, *supra* note 17.

[24] *Id.*

[25] *Id.*

[26] Susan S. Schiffman & Kristina I. Rother, *Sucralose, A Synthetic Organochlorine Sweetener: Overview of Biological Issues*, 16 J. OF TOXICOLOGY AND ENV'T HEALTH, PART B 399, 399 (Nov. 12, 2013), https://www.tandfonline.com/doi/pdf/10.1080/10937404.2013.842523?noFrame=true.

[27] Clare J. Lee et al., *Gut Microbiome and its Role in Obesity and Insulin Resistance*, 1461(1) ANN N.Y. ACAD. SCI. 37, 37 (May 14, 2019), https://pubmed.ncbi.nlm.nih.gov/31087391/.

[28] Mohamed B. Abou-Donia et al., *Splenda Alters Gut Microflora and Increases Intestinal p-Glycoprotein and Cytochrome p-450 in Male Rats*, 71 J TOXICOL. ENV'T. HEALTH 1415 (2008) https://pubmed.ncbi.nlm.nih.gov/18800291/.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

and interacts with sweet-taste receptors in the digestive system that play a vital role in glucose absorption and insulin secretion, meaning sucralose deregulates blood sugar management.[29] Additionally, the sucralose induced gut dysbiosis triggers beta cell destruction of the pancreas, an organ necessary for our bodies to produce insulin which naturally regulates blood sugar.[30]  In a randomized clinical trial study, young, healthy participants who consumed 48 mg of sucralose every day for ten weeks were found to have gut dysbiosis.[31] A 2018 study conducted over 6-weeks found that sucralose worsened gut inflammation in mice with Crohn's disease.[32]

31.  **Sucralose Promotes Obesity.** Sucralose also increases sugar cravings, which can lead to overconsumption of sugars and cause weight gain and obesity.[33] Obese individuals who consume sucralose are found to have much higher blood sugar and insulin spikes in response to normal sugar, which not only promotes weight gain, but also promotes insulin resistance as it impairs insulin signaling that causes less glucose uptake from the blood.[34] Thus, consumption of sucralose increases the risk of Type 2 diabetes and obesity, thereby decreasing the overall health and life expectancy of an individual.[35]  Sucralose can also induce liver inflammation,[36] and further

---

[29] *Id.*

[30] Gupta, *supra*, note 13.

[31] Alexander Rodriguez-Palacios et al., *The Artificial Sweetener Splenda Promotes Gut Proteobacteria, Dysbiosis, and Myeloperoxidase Reactivity in Crohn's Disease—Like Ileitis*, 24 INFLAMMATORY BOWEL DISEASE 1005, 1005 (Mar. 15, 2018), https://academic.oup.com/ibdjournal/article/24/5/1005/4939054.

[32] Lucia A. Mendez-Garcia et al., *Ten-Week Sucralose Consumption Induces Gut Dysbiosis and Altered Glucose and Insulin Levels in Healthy Young Adults*, 10 MICROORGANISMS 434, 434 (Feb. 14, 2022), https://www.mdpi.com/2076-2607/10/2/434/htm.

[33] Qing Yang, *Gain Weight by "Going Diet?" Artificial Sweeteners and the Neurobiology of Sugar Cravings*, 83 YALE J. BIOL. MED. 101, 101 (2010), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2892765; Qiao-Ping Wang et al., *Sucralose Promotes Food Intake Through NPY and a Neuronal Fasting Response*, 24 CELL METABOLISM 75, 75 (2016), https://www.cell.com/cell-metabolism/comments/S1550-4131(16)30296-0#secsectitle0010.

[34] Hubert Kolb et al., *Insulin: Too Much of a Good Thing is Bad*, BMC MED (2020), https://bmcmedicine.biomedcentral.com/articles/10.1186/s12916-020-01688-6#:~:text=Because%20of%20the%20largely%20unrestricted,increased%20risk%20of%20cardiovascular%20disease.

[35] *Id.*

[36] Xiaoming Bian et al., *Gut Microbiome Response to Sucralose and its Potential Role in Inducing Liver Inflammation in Mice*, 8 FRONT. PHYSIOL. 487, 487 (July 23, 2017), https://www.frontiersin.org/articles/10.3389/fphys.2017.00487/full.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

exacerbate fatty liver, or non-alcoholic liver disease. A study conducted in February 2023 found that newborns whose mothers heavily consumed sucralose during their pregnancy had a higher birth weight than those whose mothers consumed sucralose and other non-nutritive sweeteners only sporadically.[37] The newborns were significantly heavier and above the 95th percentile of birth weight.

32.  **Surcalose-6-Acetate, a Sucralose Metabolite, has Been Linked to Genotoxicity.** Sucralose-6-acetate is an impurity left over from the manufacturing process of sucralose. Regardless of whether a product contains Sucralose-6-acetate in its original formulation, it is a metabolite of sucralose, meaning it is formed in the gut once sucralose is digested. A recent study published on May 29, 2023, found evidence that sucralose-6-acetate is genotoxic (i.e., destroys human DNA).[38] The study reaffirms the harm sucralose causes by promoting diabetes and destabilizing blood sugar. Further, sucralose-6-acetate, when exposed to human intestinal cells, increased inflammation, oxidative stress, and caused cancer. The study further showed that sucralose disrupts essential cellular processes that metabolize toxins, increasing risk of adverse toxicological exposures and cellular toxicity. Both sucralose and sucralose-6-acetate impair the intestinal barrier to cause a "leaky gut," which is problematic because toxins that normally would be flushed out of the body in feces are instead leaked out of the gut and absorbed into the bloodstream where they cause disease.

33.  **Carrageenan and Choline Chloride, Other Ingredients in the Glucerna Original Shakes, Glucerna Protein Smart Shakes, Glucerna Hunger Smart Shakes, and the Glucerna Original Snack Shakes, Also Promote the Development of Diabetes by Causing Glucose Intolerance and Insulin Resistance.** Exposure to low concentration (i.e., 10 mg/L) of the Product

---

[37] Jose Alfredo Aguayo-Guerrero et al., *Newborns from Mothers Who Intensely Consumed Sucralose during Pregnancy Are Heavier and Exhibit Markers of Metabolic Alteration and Low-Grade Systemic Inflammation: A Cross-Sectional, Prospective Study*, 11 Biomedicines 650, 650 (Feb. 21, 2023), https://www.semanticscholar.org/paper/Newborns-from-Mothers-Who-Intensely-Consumed-during-Aguayo-Guerrero-M%C3%A9ndez-Garc%C3%ADa/7e741d2539290a3f4583bc1f323c07bffcf8d989.

[38] Susan S. Schiffman et al., *Toxicological and Pharmacokinetic Properties of Suraclose-6-Acetate and its Parent Sucralose: In Vitro Screening Assays*, 26(6) J. of Toxicological and Env't Health, Part B 307, 307 (May 29, 2023), https://www.tandfonline.com/doi/full/10.1080/10937404.2023.2213903.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

additive carrageenan (i.e., 10 mg/L) for only six days led to carrageenan-induced inflammation. This impairs insulin signaling, meaning the cells do not take up glucose and the resulting high blood glucose levels cause organ damage over time.[39]   As a result, another study concluded that the "*elimination* of dietary ingestion of carrageenan [like that in Defendant's Shakes] may help in efforts to reduce the incidence of diabetes and its associated morbidities. [40] (emphasis added). Despite this science, Defendant encourages diabetics and others to consume the Shakes, and thus carrageenan, by virtue of the Challenged Representations.

34.     The other added ingredient, choline chloride, also does not counteract insulin resistance. Instead, in a 2013 study, researchers found that increased choline intake in mice that were fed a high fat diet led to an increase in plasma glucagon which resulted in insulin resistance.[41] The study thus concluded that too much dietary consumption of choline chloride could exacerbate glucose and insulin resistance in people with obesity or Type 2 diabetes.[42]

35.     **Maltodextrin, Another Ingredient in the Glucerna Original Shakes and the Glucerna Original Snack Shakes, Also Promotes the Development of Diabetes by Causing Glucose Intolerance and Insulin Resistance.** Maltodextrin—a carbohydrate—has a significant Glycemic Index (GI) that supersedes the GI of table sugar.[43] It has also been identified as a factor that can influence the gut microbiome.[44] A study on forty-five healthy young adults, aged 20-45,

---

[39] Sumit Bhattacharyya et al., *Exposure to Common Food Additive Carrageenan Alone Leads to Fasting Hyperglycemia and in Combination with High Fat Diet Exacerbates Glucose Intolerance and Hyperlipidemia Without Effect on Weight*, J. DIABETES RSCH. 1, 1 (Mar. 25, 2015), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4390184/pdf/JDR2015-513429.pdf.
[40] *Id.*
[41] Wu, Gengshu et al., *Choline Supplementation Promotes Hepatic Insulin Resistance in Phosphatidylethanolamine N- Methyltransferase-deficient Mice via Increased Glucagon Action*, 288(2) J. OF BIOLOGICAL CHEM. 837, 837-847 (2013) https://doi.org/10.1074/jbc.M112.415117.
[42] *Id.*
[43] Christine Mikstas, *What is maltodextrin*?, Nourish by WebMD (July 10, 2023), https://www.webmd.com/diet/what-is-maltodextrin#:~:text=The%20glycemic%20index%20(GI)%20in,or%20diabetes%20can%20be%20fatal.
[44] *Id.*

22

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

who did not regularly consume a low-calorie sweetener (LCD) found that insulin sensitivity was reduced when consuming both sucralose and maltodextrin in a beverage.[45]

36. **The World Health Organization ("WHO") Advises Against the Consumption of Sucralose**. On May 15, 2023, the WHO released a set of guidelines urging against the consumption of sucralose, among other non-sugar sweeteners, "to control body weight or reduce the risk of noncommunicable diseases (NCDs)," including diabetes. The WHO's advisory comes on the heels of "the findings of a systematic review of the available evidence …suggest[ing] that there may be potential undesirable effects from long-term use of NSS [non-sugar sweeteners], such as an ***increased risk of type 2 diabetes***, cardiovascular diseases, and mortality in adults."[46] (emphasis added). Still, Defendant continues to tout the Products as suitable for those with diabetes and as recommended by doctors.

37. **The Center for Science in the Public Interest ("CSPA") Advises Against Consumption of Sucralose.** The CSPA, one of the oldest, independent, science-based, and consumer advocacy non-profit organizations in the United States has also stated that sucralose, like that found in the Products, should be "avoided," after a large 2016 Italian study on male mice found that sucralose caused leukemia and related blood cancers.[47]

38. **Even the First Round of Testing for FDA Approval Found Sucralose to Affect Blood Sugar.** In 1999, the FDA approved sucralose as a general-purpose sweetener. However, a six-month clinical test on sucralose conducted during the first round of FDA-approval found

---

[45] Jelle R. Dalenberg et al., *Short-Term Consumption of Sucralose with, but Not without, Carbohydrate Impairs Neural and Metabolic Sensitivity to Sugar in Humans*, 31(3) CELL METAB. 493, 493-502 (Mar. 3, 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7784207/#:~:text=These%20findings%20indicate%20that%20consumption%20of%20sucralose%20in,suggesting%20dysregulation%20of%20gut-brain%20control%20of%20glucose%20metabolism.

[46] *WHO advises not to use non-sugar sweeteners for weight control in newly released guideline,* WORLD HEALTH ORG., (May 15, 2023), https://www.who.int/news/item/15-05-2023-who-advises-not-to-use-non-sugar-sweeteners-for-weight-control-in-newly-released-guideline.

[47] *Sucralose: Chemical Cuisine Rating*, CTR. FOR SCI. IN THE PUBLIC INTEREST (Jan. 4, 2021), https://www.cspinet.org/article/sucralose.

23

sucralose to have a *negative* effect on blood sugar.[48] This stands in contrast to Defendant's false claim that the Products "help manage blood sugar."

39.   **The Products' Substantial Similarity:** Plaintiff purchased the Glucerna Original Shakes in the Homemade Vanilla and Creamy Strawberry Product flavors ("**Purchased Products**").

40.   The Glucerna Original Shakes, including without limitation, Classic Butter Pecan, Chocolate Caramel, and Rich Chocolate Product flavors ("Original Shakes"); Glucerna Hunger Smart Shakes, including without limitation, Rich Chocolate, Homemade Vanilla, Creamy Strawberry, and Peaches & Crème flavors ("Hunger Smart Shakes"); Glucerna Protein Smart Shakes, including without limitation, Chocolate and Vanilla flavors ("Protein Smart Shakes"); and Glucerna Original Snack Shake, including without limitation, Rich Chocolate and Homemade Vanilla flavors ("Snack Shakes") are substantially similar to the Purchased Products:

       i.   **Defendant.** The Original Shakes, Hunger Smart Shakes, Protein Smart Shakes, and Snack Shakes are manufactured, sold, marketed, advertised, labeled, and packaged by Defendant.

      ii.   **Brand.** The Original Shakes, Hunger Smart Shakes, Protein Smart Shakes, and Snack Shakes are sold under the same brand name: Glucerna.

     iii.   **Purpose.** The Original Shakes, Hunger Smart Shakes, Protein Smart Shakes, and Snack Shakes are intended to be consumed.

     iv.   **Key Ingredients.** The Original Shakes, Hunger Smart Shakes, Protein Smart Shakes, and Snack Shakes are made largely from the same ingredients, including, but not limited to sucralose, carrageenan, choline chloride, and maltodextrin (in Original Shakes and Snack Shakes only).

---

[48] *Food Additives Permitted for Direct Addition to Food for Human Consumption: Sucralose*, 21 C.F.R. PART 172 (Apr. 3, 1998), https://www.govinfo.gov/content/pkg/FR-1998-04-03/html/98-8750.html.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

    **v.**    **Marketing Demographics.** The Original Shakes, Hunger Smart Shakes, Protein Smart Shakes, and Snack Shakes are marketed directly to diabetic, pre-diabetic, and health-conscious consumers for personal consumption.

    **vi.**    **Representations.** The Products are labeled and advertised using the Challenged Representations (i.e., "to help manage blood sugar," "scientifically designed for people with diabetes," and "#1 doctor recommended brand.").

    **vii.**    **Packaging.** The Original Shakes, Hunger Smart Shakes, Protein Smart Shakes, and Snack Shakes are similarly packaged, including using similar styles for written content. The Products' front labeling share the same marketing claims, including brand identity and identity of the product line.

    **viii.**    **Misleading Effect.** The misleading effect of the Challenged Representations on consumers is the same for the Original Shakes, Hunger Smart Shakes, Protein Smart Shakes, and Snack Shakes—consumers over-pay a premium for a product that claims to provide blood sugar management benefits, despite the inclusion of ingredients like sucralose, carrageenan, choline chloride and maltodextrin (in the Original Shakes and Snack Shakes) that worsen blood sugar.

41.     The Glucerna Hunger Smart Shake Powders ("Powders"), including without limitation, the Homemade Vanilla and Rich Chocolate flavors are substantially similar to the Purchased Products as follows:

    **i.**    **Defendant.** The Powders are manufactured, sold, marketed, advertised, and labeled by Defendant.

    **ii.**    **Brand.** The Powders are sold under the same brand name: Glucerna.

    **iii.**    **Purpose.** The Powders are intended to be consumed.

    **iv.**    **Key Ingredients.** The Powders are made largely from the same ingredients, including sucralose.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

> **v.    Marketing Demographics.** The Powders are marketed directly to diabetic, pre-diabetic, and health-conscious consumers for personal consumption.
>
> **vi.    Representations.** The Powders are labeled and advertised using the Challenged Representations (i.e., "scientifically designed for people with diabetes" and "#1 doctor recommended brand").
>
> **vii.    Misleading Effect.** The misleading effect of the Challenged Representations on consumers is the same for the Powders—consumers over-pay a premium for a product that claims to provide blood sugar management benefits, despite the inclusion of ingredients like sucralose that worsen blood sugar.

**B.    Plaintiff and Reasonable Consumers Were Misled by the Challenged Representations**

42.    **Representations on the Products' Labels.** Defendant manufactures, markets, advertises, labels, packages, and sells the Products with the following representations: "to help manage blood sugar," "scientifically designed for people with diabetes," and "#1 doctor recommended brand," respectively.  (*See* "**Exhibits 1-5**," *supra*).

43.    On the Shakes, the section symbol after the "#1 Doctor Recommended Brand **§**" representation connects to the "**§** Scientifically Designed for People with Diabetes" statement. The labels on the Powder similarly connect these statements but using a **†** symbol. In both cases, connecting the two statements further underscores for consumers the purported suitability of the Products for diabetics.

44.    The false representation on the Shake's front label "to help manage blood sugar" is followed by a **†** symbol, leading to this statement on the side of the Product: "Designed to help minimize blood sugar spikes in people with diabetes compared to high glycemic carbohydrates." To the extent consumers see this side-label statement, it affirms the false notion that the Products are specifically suited for people with diabetes.

45.    **Consumers Reasonably Believe the Products Can Help Them Manage Their Blood Sugar.** Plaintiff and other reasonable consumers were deceived by Defendant into believing that the Products conform to the Challenged Representations. Reasonable consumers interpret the

26

Challenged Representations to mean that the Products can aid in managing their blood sugar and/or are designed for their diabetic condition. Reasonable consumers have no way of knowing, nor do they have a reason to know or believe, that the Products cannot provided the advertised benefits.

46. **Consumers Reasonably Believe the Challenged Representations are Implied Health Claims.** Plaintiff and other reasonable consumers, including those without diabetes or pre-diabetes, interpret the Challenged Representations to mean that the Products are nutritional shakes and powders. Specifically, consumers understand Defendant's label claims that the Products "[] help manage blood sugar," are "scientifically designed for people with diabetes" and are the "#1 doctor recommended brand" as an indication that the Products are uniquely healthy, given their doctor recommendation and their designation for people with medical conditions like diabetes. In making their purchases, Plaintiff and other reasonable consumers, including those without diabetes or pre-diabetes, relied on Defendant's misrepresentations of health.

47. **Material.** The Challenged Representations are material to reasonable consumers, including Plaintiff, because they have the potential to influence consumers' decision to purchase the Products, as set forth herein. Plaintiff would not have purchased the Products, or would have paid significantly less for them, if he had known that the Products' label claims were false and misleading, that the Products cannot help in managing his blood sugar (but in actuality can worsen it), and that the Products are not otherwise suitable for diabetes care.

48. **Reliance.** Reasonable consumers, including Plaintiff, reasonably relied on the Products' Challenged Representations, including understanding the representations to be implied health claims, in deciding to purchase the Products.

49. **Falsity.** The Products' Challenged Representations are false and deceptive because the Products cannot provide the advertised benefits.

50. **Consumers Lack Knowledge of Deception/Fraudulence.** Consumers, including Plaintiff, who purchased the Products, did not know, and had no reason to know, at the time of purchase, that the Products were incapable of providing the advertising benefits.

51. **Defendant's Knowledge.** Defendant knew, or should have known, that its Products' Challenged Representations were false, misleading, deceptive, and unlawful at the time that

Defendant manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representations to Plaintiff and the Class. Defendant intentionally and deliberately used the Challenged Representations to cause Plaintiff and similarly situated consumers to purchase the Products. Defendant, as the manufacturer, had exclusive control over how the Products were marketed and labeled, and Defendant readily and easily could have remedied the deception by stopping the use of the Challenged Representations to sell the Products. Defendant deliberately chose to market the Products with the Challenged Representations, thereby misleading consumers into buying or overpaying for the Products. Thus, Defendant knew, or should have known, at all relevant times, that the Challenged Representations mislead reasonable consumers, such as Plaintiff, into buying the Products to attain the product attributes that Defendant falsely advertised and warranted.

52.    **Detriment.** Plaintiff and similarly situated consumers would not have purchased the Products if they had known the Products could not provide the advertised benefits or would not have overpaid a price premium for the Products, if they had known that the Challenged Representations were false as labeled, claimed, promised, warranted, advertised, and represented. Accordingly, based on Defendant's material misrepresentations and omissions, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

C.    **No Adequate Remedy at Law**

53.    **No Adequate Remedy at Law**. Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a.    **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, Class members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

b.   **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendant's overall unfair marketing scheme to brand the Products with the Challenged Representations across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the labeling and advertising. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue).  Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

c.   **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products as alleged herein. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures, is necessary to dispel the public misperception about the Products that have resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products' labeling and advertising is not true and providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

An injunction requiring affirmative disclosures to dispel the public's misperception and to prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation has not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **Procedural Posture—Incomplete Discovery & Pre-Certification.** This is an initial pleading in this action and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class. Plaintiff therefore reserves his right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class. Such proof, to the extent necessary, will be presented prior to trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## V.   CLASS ALLEGATIONS

54.   **Class Definition.** Plaintiff brings this action on his own behalf and on behalf of all other persons similarly situated. The Class which Plaintiff seeks to represent is defined as follows:

All residents of the United States who, within the four years prior to the filing of this Complaint, purchased the Products for purposes other than resale (the "Nationwide Class"); and

All residents of California who, within four years prior to the filing of this Complaint, purchased the Products for purposes other than resale (the "California Subclass").

("Nationwide Class" and "California Subclass," collectively, the "Class")

55.     **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

56.     **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

57.     **Numerosity.** The Class is so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands or hundreds of thousands throughout California and the United States. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

58.     **Common Questions Predominate.** Common questions of fact and law predominate over questions which may affect individual class members, including the following:

a.     Whether Defendant's conduct constitutes an unfair method of competition or unfair or deceptive act or practice in violation of California Civil Code Section 1750, *et seq.*;

b.     Whether Defendant used deceptive representations in connection with the sale of the Product in violation of California Civil Code Section 1750, *et seq.*;

c.     Whether Defendant represented the Products to have characteristics that they do not have in violation of California Civil Code Section 1750, *et seq.*;

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

d.      Whether Defendant advertised the Products with the intent not to sell them as advertised in violation of California Civil Code Section 1750, *et seq.*;

e.      Whether Defendant's advertising is untrue or misleading within the meaning of Business and Professions Code Section 17500, *et seq.*;

f.      Whether Defendant knew or by the exercise of reasonable care should have known its advertising was and is untrue or misleading in violation of Business and Professions Code Section 17500, *et seq.*;

g.      Whether Defendant made false and misleading representations in its advertising and labeling of the Product in violation of Business and Professions Code Section 17500, *et seq.*;

h.      Whether Defendant's conduct is an unfair business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

i.      Whether Defendant's conduct is a fraudulent business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

j.      Whether Defendant's conduct is an unlawful business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

k.      Whether Defendant's conduct constitutes a breach of warranty;

l.      Whether Defendant was unjustly enriched by its deceptive conduct;

m.      Whether Plaintiff and the Class paid more money or a premium amount for the Products than they actually received; and

n.      How much more money or premium amount Plaintiff and the Class paid for the Products than they actually received.

59.      **Typicality.** Plaintiff's claims are typical of the claims of the Class, and Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

60.      **Adequacy**. Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained

counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

61.     **Superiority and Substantial Benefit:** A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually.

62.     **Manageability.** The trial and litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economics of scale, and comprehensive supervision by a single court.

63.     **Injunctive/Equitable Relief.** Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

64.     **Inconsistent Rulings.** Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

65.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations and material omissions. Plaintiff and the Class purchased the Products under the false belief that the Products could provide the advertised benefits. Plaintiff and the Class relied upon Defendant's labeling, packaging, and advertising claims and would not have purchased the Products, or would paid significantly less for the Products, if they had known that the Products could not provide the advertised benefits.

///

66.     On March 22, 2023, written notice was sent to Defendant via certified U.S. mail pursuant to Civil Code Section 1750, *et seq*., which set forth the claims of the Class concerning the Products' false, misleading, deceptive, unlawful, unfair, and fraudulent claims.

**CAUSES OF ACTION**

**COUNT ONE**

**Violation of California Consumers Legal Remedies Act,**

**(California Civil Code 1750, *et seq*.)**

**(*On Behalf of the California Subclass*)**

67.     **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

68.     **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

69.     **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

70.     **Goods/Services.** The Product are "goods," as defined by the CLRA in California Civil Code §1761(a).

71.     **Defendant.** Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

72.     **Consumers.** Plaintiff and members of the Class are "consumers," as defined by the CLRA in California Civil Code §1761(d).

73.     **Transactions.** The purchase of the Products by Plaintiff and members of the Class are "transactions" as defined by the CLRA under California Civil Code section 1761(e).

74.     **Violations of the CLRA.** Defendant violated the following sections of the CLRA by advertising and selling the Products to Plaintiff and the Class through the false, misleading, deceptive, and fraudulent Challenged Representations:

    a.  Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which they do not have."

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

b. Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

c. Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

75. **Knowledge.** Defendant's uniform material representations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its representations and omissions were untrue and misleading.

76. **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sales of the Products.

77. **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the Class could not have reasonably avoided such injury. Plaintiff and members of the Class were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiff and members of the Class would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

78. **Causation/Reliance/Materiality.** Plaintiff and the Class suffered harm as a result of Defendant's violations of the CLRA because they purchased the Products relying on the Challenged Representations in deciding to purchase the Products. The Challenged Representations were a substantial factor. The Challenged Representations were material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

79. **Section 1782(d) Notice Requirement.** Pursuant to California Civil Code, section 1782, on March 22, 2023, Plaintiff, on Plaintiff's behalf and on behalf of members of the Class, notified Defendant of its alleged violations of the CLRA via U.S. Certified Mail.

80. **Causation/Damages (Section 1782(d)).** As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

81.    **Injunction.** Given that Defendant's conduct violated California Civil Code section 1780, Plaintiff and members of the Class are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of the CLRA. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiff and the Class.

<u>**COUNT TWO**</u>

**Violation of California False Advertising Law,**

**(Business & Professions Code 17500,** *et seq.***)**

(***On Behalf of the California Subclass***)

82.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

83.    **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Product within the applicable statute of limitations.

84.    **FAL Standard.**  The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

85.    **False & Material Challenged Representations Disseminated to the Public.** Defendant violated § 17500 when it advertised and sold the Products through unfair, deceptive, untrue, and misleading Challenged Representations disseminated to the public through the Products' labeling, packaging, and advertising. These representations were false because the Products did not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

86.    **Knowledge.** In making and disseminating the Challenged Representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading and acted in violation of § 17500.

87.    **Intent to sell.** Defendant's conduct was specifically designed to induce reasonable consumers, like Plaintiff and the Class, to purchase the Products.

88.    **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the Class were harmed in the amount of the purchase

36

price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

## COUNT THREE

**Violation of California Unfair Competition Law,**

**(Business & Professions Code Section 17200, *et seq.*)**

**(*On Behalf of the California Subclass*)**

89.     **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

90.     **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiff and the California Subclass who purchased the Product within the applicable statute of limitations.

91.     **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

92.     **False Advertising Claims.** Defendant, in its advertising, labeling, and packaging of the Products, made misleading statements and fraudulent omissions regarding the quality and characteristics of the Products—specifically, Defendant labeled, advertised, and markets the Products as nutritional products that "[] help manage blood sugar," are "scientifically designed for people with diabetes" and are the "#1 doctor recommended brand," despite the Products' inclusion of sucralose.

93.     **Defendant's Deliberately Fraudulent Marketing Scheme.** Defendant does not have any reasonable basis for the claims about the Products made in Defendant's advertising and on

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

37

Defendant's packaging or labeling of the Products because the Products cannot provide the advertised benefits. Defendant knew and continues to know that the Products cannot provide the advertised benefits (i.e., diabetes care and blood sugar management), though Defendant intentionally advertised and marketed the Products to deceive reasonable consumers into believing that they could achieve the advertised benefits.

94.   **Misleading Labeling, Advertising Cause Purchase of Product.** Defendant's labeling and advertising of the Products using the Challenged Representations, and continues to lead to, reasonable consumers, including Plaintiff, believing that the Products can truly provide diabetes care and blood sugar management benefits, when they cannot.

95.   **Injury in Fact.** Plaintiff and the Class have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's Challenged Representations—namely, Plaintiff and the Class lost the money they paid for the Products they purchased from Defendant.

96.   **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

97.   **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

98.   **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue daily until Defendant voluntarily alters its

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

conduct or Defendant is otherwise ordered to do so.

99. **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the Class seek an order from this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products as "to help manage blood sugar," "scientifically designed for people with diabetes," and "#1 doctor recommended brand" when they are not. Plaintiff and the members of the Class also seek an order requiring Defendant to disclose such information, and/or precluding Defendant from selling the Products.

100. **Causation/Restitution.** As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and the Class were harmed in the amount of the purchase price they paid for the Products. Plaintiff and the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

### *"Unfair" Prong*

101. **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

102. **Injury.** Defendant's action of mislabeling the Products with the Challenged Representations does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive Products commensurate with their reasonable expectations, receive a Product of lesser standards than what they reasonably expected to receive, and are exposed to increased health risks. Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling and advertising of the Products. The injuries caused by Defendant's deceptive labeling and advertising outweigh any benefits.

103. **Balancing Test.** Some courts conduct a balancing test to decide if a challenged

activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

104.   **No Utility.** Defendant's conduct of falsely labeling and advertising the Products as nutritional drinks that can "help manage blood sugar," "scientifically designed for people with diabetes," and "#1 doctor recommended brand" have no utility and rather harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

105.   **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

106.   **Unfair Conduct.** Defendant's labeling and advertising of the Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's representations and omissions constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

107.   **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from selling the Products.

108.   **Defendant's Wrongful Conduct.** All the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

109.   **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products as nutritional products that can "[] help manage blood sugar," are "scientifically designed for people with diabetes," and are the "#1 doctor recommended brand."

110.   **Causation/Restitution.** Plaintiff and the Class have suffered injury in fact, have lost money, as a result of Defendant's unfair conduct. Plaintiff and the Class paid for Products that could supposedly help with diabetes care and blood sugar management when they cannot. Plaintiff and

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

the Class would not have purchased the Products if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Fraudulent" Prong*

111. **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

112. **Fraudulent & Material Challenged Representations.** Defendant sold the Products as nutritional products that "[] help manage blood sugar," are "scientifically designed for people with diabetes," and are the "#1 doctor recommended brand." These representations were deceptive, and Defendant knew or should have known of its deception. The representations are likely to mislead consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

113. **Fraudulent Business Practice.** As alleged herein, the representations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

114. **Reasonable and Detrimental Reliance.** Plaintiff and the Class reasonably and detrimentally relied on the labeling on the Products to their detriment in that they purchased the Products without receiving the advertised benefits.

115. **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from selling the Products.

116. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

117. **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products as nutritional products that "[] help manage blood sugar," are

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

"scientifically designed for people with diabetes," and are the "#1 doctor recommended brand."

118.  **Causation/Restitution.** Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff and the Class paid for a product that they believed could supposedly help with diabetes care and blood sugar management when it cannot.

119.  Plaintiff and the Class would not have purchased the Products if they had known the truth. Accordingly, Plaintiff seeks restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Unlawful" Prong*

120.  **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

121.  **Violations of CLRA and FAL.** Defendant's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* and California Business and Professions Code sections 17500, *et seq.* as set forth below in the sections regarding those causes of action.

122.  **Additional Violations.** Defendant's conduct in making the deceptive representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's representations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, and 1711, as well as the common law.

123.  **Unlawful Conduct.** Defendant's packaging, labeling, and advertising of the Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

124.  **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

have refrained from selling the Products.

125. **Business Practice.** All the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

126. **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order from this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products as nutritional products that "[] help manage blood sugar," are "scientifically designed for people with diabetes," and are the "#1 doctor recommended brand."

127. **Causation/Restitution.** Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff and the Class paid an unwarranted premium for the Products. Plaintiff and the Class would not have purchased the Products if they had known that Defendant purposely deceived consumers into believing that the Products could supposedly help with diabetes care and blood sugar management when they cannot.

128. Accordingly, Plaintiff seeks restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

## COUNT FOUR

### Breach of Express Warranty

### (*On Behalf of the Nationwide Class and California Subclass*)

129. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

130. **Nationwide Class and California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass who purchased the Product within the applicable statute of limitations.

131. **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendant— to wit, that the Products, among other things, could provide the advertised benefits.

132. **Breach of Warranty.** Contrary to Defendant's warranties, the Products do not conform to the Products' representations of nutritional products that are made "to help manage blood sugar," are "scientifically designed for people with diabetes," and are the "#1 doctor recommended brand" and, therefore, Defendant breached its warranties about the Products and their qualities.

133. **Causation/Remedies.** As a direct and proximate result of Defendant's breach of warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

## COUNT FIVE

### Unjust Enrichment/Restitution

### (*On Behalf of the Nationwide Class and California Subclass*)

134. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

135. **Nationwide Class and California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass who purchased the Product within the applicable statute of limitations.

136. **Plaintiff/Class Conferred a Benefit.** By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

137. **Defendant's Knowledge of Conferred Benefit.** Defendant had knowledge of such benefit and Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

138. **Defendant's Unjust Receipt Through Deception.** Defendant's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent, misleading, and deceptive representations.

139. **Causation/Restitution.** As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all causes of action as follows:

a. **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

b. **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c. **Injunction:** For an order requiring Defendant to immediately cease and desist from selling the unlawful Products in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; requiring Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

e. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

f. **Pre-/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and,

g. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues and causes of action so triable.

DATED: August 24, 2023                     **CLARKSON LAW FIRM, P.C.**

/s/ Bahar Sodaify
Shireen M. Clarkson, Esq.
Bahar Sodaify, Esq.
Alan Gudino, Esq.
Ryan Ardi, Esq.

*Attorneys for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT