MATTHEW D. POWERS (S.B. #212682)
  mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Tel: (415) 984-8700

JANE METCALF (*pro hac vice* pending)
  jmetcalf@pbwt.com
WILLIAM F. CAVANAUGH, JR.
  wfcavanaugh@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000

*Attorneys for Defendant*
*Abbott Laboratories*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| STEVEN PRESCOTT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT LABORATORIES,<br>Defendant. | Case No.: 5:23-cv-04348-PCP<br><br>**DEFENDANT ABBOTT LABORATORIES NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hon. P. Casey Pitts<br><br>Date: Jan. 4, 2024<br>Time: 10:00 a.m.<br>Courtroom: 8 |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on January 4, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8 of the above-captioned Court, located at 280 South First Street, San Jose, CA 95113, before the Honorable P. Casey Pitts, Defendant Abbott Laboratories will and hereby does move this Court pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for an order dismissing with prejudice Plaintiff's Complaint.

Plaintiff alleges violations of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, and the Unfair Competition Law, *Id.* § 17200, *et seq.*, and brings common law claims for breach of express warranty and unjust enrichment/restitution.  Regardless of whether Plaintiff can ultimately establish that Defendants are liable on these claims—and he cannot—his claims fail as a matter of law because he fails to allege any fraudulent statement on the products at issue and he lacks standing.  His complaint should be dismissed in its entirety with prejudice.

This Motion is based on this Notice, the following Memorandum of Points and Authorities, the pleadings and records on file, and such other matters as the Court deems necessary and proper to adjudicate this Motion.

Dated: November 6, 2023          By:     */s/ Matthew D. Powers*

Matthew D. Powers
O'MELVENY & MYERS LLP

Jane Metcalf (*pro hac vice* pending)
William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB & TYLER LLP

*Attorneys for Defendant Abbott Laboratories*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

BACKGROUND ........................................................................................................................ 2

      A.     Glucerna ................................................................................................ 2

           a.     Sucralose ....................................................................... 5

           b.     Maltodextrin, Carrageenan, and Choline Chloride ........................ 7

      B.     Plaintiff's Allegations .......................................................................... 8

ARGUMENT ............................................................................................................................. 9

    I.     Plaintiff Fails To Allege Any Fraudulent Statement About Glucerna ................. 10

      A.     Reasonable consumers interpreting the entirety of Glucerna's labels understand the claims being made are relative to a high glycemic meal ....................................................................................... 11

      B.     A reasonable consumer reading Glucerna's labels would not be misled about its ingredients ......................................................... 13

      C.     The Complaint Makes No Plausible Allegation that Sucralose, Maltodextrin, Carrageenan, and Choline Chloride Causes Health Problems for Diabetics .......................................................... 15

    II.    Plaintiff Lacks Standing ...................................................................................... 16

      A.     Plaintiff's claims fail for lack of standing .............................................. 16

      B.     Plaintiff lacks standing to seek injunctive relief ..................................... 18

      C.     Plaintiff lacks statutory standing because he fails to allege reliance ........ 19

    III.    Plaintiff's Breach of Express Warranty Claim Should be Dismissed for Failure to State a Claim ..................................................................................................... 20

    IV.    Plaintiff's Unjust Enrichment Claim Should be Dismissed for Failure to State a Claim and as Derivative of his California Claims ................................................. 21

CONCLUSION ......................................................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)............................................................................................9, 19

*Babaian v. Dunkin' Brands Grp., Inc.,*
2018 WL 11445613 (C.D. Cal. June 12, 2018) ....................................................17

*Becerra v. Dr Pepper/Seven Up, Inc.,*
2018 WL 1569697 (N.D. Cal. Mar. 30, 2018)......................................................16

*Becerra v. Dr. Pepper/Seven Up, Inc.,*
2018 WL 3995832 (N.D. Cal. Aug. 21, 2018), *aff'd*, 945 F. 3d 1225 (9th Cir.
2019) ......................................................................................................................13

*Becerra v. Dr Pepper/Seven Up, Inc.,*
945 F.3d 1225 (9th Cir. 2019) ...............................................................................11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)................................................................................................9

*Bower v. AT & T Mobility, LLC,*
196 Cal. App. 4th 1545 (2011) ..............................................................................17

*Brand v. KSF Acquisition Corp.,*
2023 WL 3225409 (S.D. Cal. Mar. 17, 2023) .......................................................11

*Carrea v. Dreyer's Grand Ice Cream, Inc.,*
475 F. App'x 113 (9th Cir. 2012) ..........................................................................11

*Choon's Design, LLC v. ContextLogic Inc.,*
2020 WL 6891824 (N.D. Cal. Nov. 24, 2020) .................................................12, 20

*In re Coca-Cola Prod. Mktg. & Sales Pracs. Litig. (No. II),*
2021 WL 3878654 (9th Cir. Aug. 31, 2021)..........................................................19

*Daniels-Hall v. Nat'l Educ. Ass'n,*
629 F.3d 992 (9th Cir. 2010) ...................................................................................4

*Dinan v. SanDisk LLC,*
2020 WL 364277 (N.D. Cal. Jan. 22, 2020), *aff'd*, 844 F. App'x 978 (9th Cir.
2021) ......................................................................................................................12

*Ebner v. Fresh, Inc.,*
838 F.3d 958 (9th Cir. 2016) .................................................................................11

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ...........................................................................................11

*Frison v. Accredited Home Lenders, Inc.*,
    2011 WL 2729241 (S.D. Cal. July 13, 2011) ...............................................................21

*Geffner v. Coca-Cola Co.*,
    343 F. Supp. 3d 246 (S.D.N.Y. 2018).........................................................................16

*Great Pac. Sec. v. Barclays Cap., Inc.*,
    743 F. App'x 780 (9th Cir. 2018) ................................................................................20

*Hall v. Diamond Foods, Inc.*,
    2014 WL 5364122 (N.D. Cal. Oct. 21, 2014) ..............................................................13

*Hodges v. King's Hawaiian Bakery West, Inc.*,
    2021 WL 5178826 (N.D. Cal. Nov. 8, 2021) ...............................................................19

*Horti v. Nestlé HealthCare Nutrition, Inc.*,
    2022 WL 2441560 (N.D. Cal. July 5, 2022)......................................................14, 18, 20

*Horti v. Nestlé Healthcare Nutrition, Inc.*, 2022 WL 16748613 (N.D. Cal. Nov. 7,
    2022), *appeal filed*, No. 22-16832 (9th Cir. Nov. 29, 2022) ...................................15

*Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*,
    2021 WL 148063 (S.D. Cal. Jan. 15, 2021)................................................................19

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .................................................................................9, 10

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ........................................................................................6

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ..........................................................................................17, 19

*Legrand v. Abbott Labs.*,
    2023 WL 1819159 (N.D. Cal. Feb. 8, 2023) ...............................................................20

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983)......................................................................................................18

*Mack v. LLR, Inc.*,
    2018 WL 6927860 (C.D. Cal. Aug. 15, 2018) ............................................................21

*Mack v. LLR, Inc.*,
    2019 WL 1873294 (C.D. Cal. Feb. 6, 2019)...............................................................21

*Manuel v. Pepsi-Cola Co.*,
    2018 WL 2269247 (S.D.N.Y. May 17, 2018) .............................................................16

*Matic v. U.S. Nutrition, Inc.*,
    2019 WL 3084335 (C.D. Cal. Mar. 27, 2019) .......................................................................19

*Mattero v. Costco Wholesale Corp.*,
    336 F. Supp. 3d 1109 (N.D. Cal. 2018) .............................................................................20

*McGinity v. P&G*,
    69 F.4th 1093 (9th Cir. 2023) ...............................................................................11, 12, 13

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) .............................................................................................................16

*Moore v. Apple, Inc.*,
    73 F. Supp. 3d 1191 (N.D. Cal. 2014) ...............................................................................19

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
    2021 WL 3524047 (N.D. Cal. Aug 6. 2021) ..................................................................4, 11

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) .................................................................................................11

*Naimi v. Starbucks Corp.*,
    798 F. App'x 67 (9th Cir. 2019) .........................................................................................17

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ............................................................................................................18

*Roper v. Big Heart Pet Brands*,
    510 F. Supp. 3d 903 (E.D. Cal. 2020) ...............................................................................21

*Schippell v. Johnson & Johnson Consumer Inc.*,
    2023 WL 6178485 (C.D. Cal. Aug. 7, 2023) ....................................................................17

*Sidhu v. Bayer Healthcare Pharms. Inc.*,
    2023 WL 6541865 (N.D. Cal. Oct. 5, 2023) .......................................................................6

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) .............................................................................................9

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ........................................................................................................19

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ...............................................................................................6

*Urban v. Tesla, Inc.*,
    2023 WL 6796021 (N.D. Cal. Oct. 13, 2023) ..............................................................18, 19

*Werbel v. Pepsico, Inc.*,
    2010 WL 2673860 (N.D. Cal. July 2, 2010) ......................................................................11

iv

*Whiteside v. Kimberly-Clark Corp.*,
   2023 WL 4328175 (C.D. Cal. June 1, 2023) ...........................................................................12

**Statutes**

Cal. Bus. & Prof. Code § 17204 .................................................................................................17

**Other Authorities**

21 C.F.R. § 105.3 (a)(2).................................................................................................................5

21 C.F.R. § 172.831 .......................................................................................................................5

Fed. R. Civ. P. 9(b) ................................................................................................................10, 21

Defendant Abbott Laboratories ("Abbott") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the Complaint.

## PRELIMINARY STATEMENT

In this putative class action, Plaintiff accuses Abbott of misleading consumers about the nutritional benefits of its Glucerna®- branded pre-made and powdered shakes.  Glucerna's labeling describes these products as "'delicious snack or meal replacement'" shakes that help "manage blood sugar" because they are "designed to help minimize blood sugar spikes in people with diabetes *compared to high glycemic carbohydrates*" (emphasis added).  According to Plaintiff, these statements are misleading because the Glucerna products contain several ingredients—including sucralose, carrageenan, maltodextrin, and choline chloride—that Plaintiff considers unhealthy for diabetics.  In support of this claim, Plaintiff offers a layperson's interpretation of a handful of scientific studies, which purportedly show an association between these ingredients and various negative long-term health outcomes, including diabetes.

The problem is that, even by Plaintiff's own telling, none of these studies indicate that the labeling statements Plaintiff identifies are misleading.  Plaintiff does not and cannot claim that Glucerna, or any of its ingredients, fails to "minimize blood sugar spikes in people with diabetes." The studies he relies upon do not speak to that question.  Indeed, Plaintiff alleges nothing at all about the effect of Glucerna's ingredients on "blood sugar spikes."  And he certainly does not allege that Glucerna fails to minimize blood sugar spikes *relative to high glycemic carbohydrates*. He claims, at most, some potential association between long-term consumption of the challenged ingredients and the development of chronic health conditions, based on his own rather farfetched interpretation of the scientific literature.  But even if this association were sufficient to allege a causal link (it is not), the challenged labeling does not promote Glucerna as a preventative against diabetes or other chronic health conditions.  The label claims only that Glucerna helps to minimize blood sugar spikes, relative to high glycemic carbohydrates, in people who already have diabetes.  Because Plaintiff has not alleged that that claim is false, his Complaint does not get out of the starting gate.

Plaintiff also cannot plausibly allege that Abbott concealed the presence of these ingredients from him or other consumers.  As Plaintiff does not dispute, all the ingredients he takes issue with are duly disclosed on the Glucerna products' ingredient list.  Had Plaintiff wished to know what the Glucerna products contained, he could have simply looked there.  Moreover, there is nothing "deceptive" or improper about the use of a non-nutritive sweetener in a product for diabetics.  On the contrary, the FDA has expressly authorized the use of sucralose and other non-nutritive sweeteners for the "special dietary use" of regulating carbohydrate intake in diabetics.  Accordingly, Plaintiff has utterly failed to allege that the Glucerna products' labeling would mislead a reasonable consumer.  His Complaint fails for that reason alone.

Even if Plaintiff's Complaint had alleged a viable cause of action under California consumer fraud law, Plaintiff has failed to allege that he has statutory or Article III standing to bring it, because his Complaint does not explain in a nonconclusory fashion how the products' labeling injured him.  Plaintiff does not allege that he consumed Glucerna, that Glucerna was detrimental to his diabetes or blood sugar, that he relied on the alleged deception when purchasing Glucerna, or any other details regarding his purported injury.  In addition, Plaintiff lacks standing to pursue injunctive relief because he cannot allege a real or immediate threat that he will be wronged again in the future. This is a separate and independent fatal defect of Plaintiff's Complaint.  The Complaint should be dismissed with prejudice.

## BACKGROUND

### A.      Glucerna

Abbott, an Illinois corporation, is  a century-old health care company with a  broad portfolio of products, including its "Glucerna" brand shakes and powders.  ECF No. 1 at ¶ 3 (hereinafter, "Compl.").  At issue here are Glucerna Original Shakes, Glucerna Hunger Smart Shakes, Glucerna Protein Smart Shakes, Glucerna Original Snack Shakes (collectively, the "Shakes"), and Glucerna Hunger Smart Powder (the "Powder," together with the Shakes and collectively, "Glucerna").  *See id.* at ¶ 5.  As their labels indicate, the Glucerna products are specially formulated for diabetics to enjoy as a "Delicious Snack or Meal Replacement."  *See id.* at 3–10.

1    The labeling statements to which Plaintiff objects also inform consumers of this special

2    dietary purpose.  *See id*. at ¶ 5.  These include the phrase, "#1 Doctor Recommended Brand,"

3    which appears toward the top.  *See id*. at 3–10.  Below that on the righthand side appear the words

4    "Scientifically Designed for People with Diabetes."  *See id.*  These two statements are connected

5    by a "§" symbol for the Shakes, signaling that these two statements are related.  *See id.* at ¶ 43.

6    On the Powder, these same two statements are connected by a "†" symbol.  *See id.*

7    The Shake labels also contain additional information about the products' suitability for

8    persons with diabetes.  The front labels inform consumers that the products are "made with

9    CARBSTEADY"—a specialized low-glycemic carbohydrate blend—"to help manage blood

10    sugar."  *See id.* at 3–10.  *See id.*  A photo of Glucerna Original Shake is included here:



22    Directly beside the claim to "help manage blood sugar," a "†" symbol refers the consumers

23    to still more explanatory information:  "Designed to help ***minimize blood sugar spikes*** in people

24    with diabetes ***compared to high glycemic carbohydrates***."  *Id.* at ¶ 44 (emphasis added).  Also

25    adjacent to the claim, an image of a clock underscores that the products are intended to avert short-

26    term blood sugar spikes:



Taken together, Glucerna's labeling clearly communicates that the products are suitable snack or meal replacements for individuals with diabetes, because they "help manage blood sugar" by "help[ing] minimize blood sugar spikes . . . compared to high glycemic carbohydrates."

Plaintiff's Complaint does not allege that any part of this is false. He does not allege that the Glucerna products fail to "help minimize blood sugar spikes," whether as an absolute matter or relative to "high glycemic carbohydrates." Rather, he complains about Glucerna's purported failure to live up to promises that it never actually made. According to Plaintiff, Glucerna's labeling leads consumers to believe "the Products are nutritional drinks and powders," which provide diffuse "diabetes and blood sugar management benefits" above and beyond the discrete benefits mentioned on the label. *Id.* at ¶ 12. This is misleading, Plaintiff alleges, because the Glucerna products contain various ingredients that Plaintiff believes are harmful to diabetics in the long term—namely sucralose, carrageenan, choline chloride, and maltodextrin. *See id.* at ¶¶ 7–8. Notably, Plaintiff does not dispute that each of these ingredients is duly disclosed on the products' ingredient list.[1] (Glucerna Original and Glucerna Original Snack Shakes contain all of the ingredients identified in the Complaint;[2] Glucerna Hunger Smart and Glucerna Protein Smart Shakes contain sucralose, carrageenan, and choline chloride;[3] and the Powder contains sucralose.[4])

---

[1] The Complaint omits Glucerna's ingredients list found on the back labels, but Abbott requests the Court take judicial notice of the entirety of Glucerna's labels, which are on www.glucerna.com. Courts may take judicial notice of a document a complaint "necessarily relies" on if: (1) "the complaint refers to the document," (2) "the document is central to the plaintiff's claim," and (3) "no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *see also Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 2021 WL 3524047 (N.D. Cal. Aug 6. 2021) ("Courts often take judicial notice of packaging labels in false advertising suits when neither party objects to the authenticity of the labels and the labels are central to the plaintiff's complaint." (citation omitted)).

[2] *See* https://glucerna.com/nutrition-products/glucerna-shakes-rich-chocolate; https://glucerna.com/nutrition-products/glucerna-snack-shakes-rich-chocolate.

[3] *See* https://glucerna.com/nutrition-products/glucerna-hunger-smart-shakes-rich-chocolate; https://glucerna.com/nutrition-products/glucerna-30g-protein-shake-rich-chocolate.

[4] *See* https://glucerna.com/nutrition-products/glucerna-hunger-smart-powder-chocolate.

1   Nevertheless, Plaintiff contends, the Glucerna products' "blood sugar management" claims are

2   misleading due to the mere presence of these ingredients.

3                                   **a.   Sucralose**

4           Among the ingredients Plaintiff takes issue with, sucralose takes center stage.  Sucralose

5   is a sweetener used in foods as a substitute for sugar.  *See* Compl. at ¶ 20.  Importantly, the Food

6   and Drug Administration ("FDA") does not share Plaintiff's view that sucralose is unsuitable for

7   persons with diabetes.  Indeed, the FDA has approved sucralose as an "additive [that] may be used

8   as a sweetener in foods generally."  *See* 21 C.F.R. § 172.831.  What is more, the FDA has explicitly

9   blessed "the use of an artificial sweetener," like sucralose, "in a food… for regulation of the intake

10  of calories and available carbohydrate, ***or for use in the diets of diabetics***[,]" which the FDA

11  considers "a special dietary use."  *Id.* § 105.3 (a)(2) (emphasis added).  Thus, the FDA, like Abbott,

12  considers sucralose a safe and appropriate sweetener in foods designed for diabetics.

13          Plaintiff has a different opinion, based on his lay interpretation of the available scientific

14  literature.  He references a handful of studies purportedly linking sucralose to negative effects on

15  health indicators like "pancreatic beta-cells," Compl. at ¶ 26, "insulin resistance," *id.* at ¶ 27, the

16  "gut microbiome," *id.* at ¶ 30, "obesity," *id.* at ¶ 31, and "genotoxicity," *id.* at ¶ 32.  Through a

17  series of speculative inferences, Plaintiff then purports to link each of these outcomes to a negative

18  effect on "blood sugar management."  For example, he alleges that a "disruption in the bacterial

19  environment in the gut from sucralose causes inflammation, worsens insulin resistance, and

20  promotes obesity and increase sugar cravings." *See id* at ¶ 31. Similarly, the Complaint alleges

21  "[s]ucralose also increases sugar cravings, which can lead to overconsumption of sugars and cause

22  weight gain and obesity." *Id.*  Stretching this causal chain further, Plaintiff continues, "[o]bese

23  individuals who consume sucralose are found to have much higher blood sugar and insulin spikes

24  in response to normal sugar, which not only promotes weight gain, but also promotes insulin

25  resistance as it impairs insulin signaling that causes less glucose uptake from the blood." *Id.*  Thus,

26  by layering his own inferences on top of these studies, Plaintiff concludes that sucralose is

27  detrimental to the health of diabetics.

28

This conclusion, however, is nowhere to be found in the studies themselves.[5]  Indeed, none of the studies establishes a causal relationship between sucralose and adverse health effects in diabetics.  Many of these reports propose further research before reaching any conclusions.  *See* Compl. at ¶ 23 n.8 ("[T]here is *no clear evidence that NNSs [like sucralose] cause metabolic disorders in human subjects*. . .More research is needed . . . ." (emphasis added)); *id.* at ¶ 23 n.9 ("Additional studies of other NNS, conducted in distinct study populations, including children and chronic NNS user. . .are needed." (emphasis added)); *id.* at ¶ 26 n.13 (a study, which involved rats, "points towards the apparent gap in the knowledge" concerning sucralose consumption in humans); *id.* at ¶ 27 n.16 ("[R]esults from clinical studies . . . have been *equivocal . . . . Clearly, much more needs to be learned about the effects of sucralose* and other [low-calorie sweeteners (LCS)] . . . ." (emphasis added)); *id.* at ¶ 27 n.17 ("[*F*]*urther studies are required to conclude a direct correlation of artificial sweeteners with decreased insulin sensitivity*." (emphasis added)); *id.* at ¶ 28 n.19 ("*Further studies are needed* to confirm the decrease in insulin sensitivity and to explore the mechanisms for these metabolic alterations." (emphasis added)); *id.* at ¶ 32 n.38 (concluding results of in vitro studies "indicate that a regulatory status review needs to be undertaken").

Many also expressly emphasize their own limitations for purposes of inferring causality. *See id.* at ¶ 25 n.12 (noting the "study has several limitations" and "further experimental work is urgently needed."); *id.* at ¶ 28 n.20 (acknowledging there were "a number of limitations in the current work that should be considered as caveats"); *id.* at ¶ 28 n.21 ("[T]he clinical significance of these results needs to be investigated in longer follow-up studies."); *id.* at ¶ 28 n.22 (noting "limitations" to the study and "encourage[d] further research focused on exploring the potential

---

[5] Abbott requests the Court incorporate by reference the entirety of all the Complaint's cited studies.  "[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself."  *Sidhu v. Bayer Healthcare Pharms. Inc.*, 2023 WL 6541865, at *2 (N.D. Cal. Oct. 5, 2023) (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)).  "Under this doctrine, a court may consider a document 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'"  *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).  "A court generally 'may assume an incorporated document's contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'"  *Id.* (quoting *Khoja*, 899 F.3d at 1003).

long-term impact of noncaloric artificial sweeteners on insulin metabolism and immune response in humans"); *id.* at ¶ 31 n.37 (describing "a cross-sectional study that *restricts us from finding cause-and-effect relationships among the studied variables*" (emphasis added)).  Accordingly, Plaintiff's inferences about the harmful effects of sucralose are utterly unsupported by the studies on which he relies.

Moreover, even taking these inferences at face value, they do not come close to establishing that Glucerna's labeling is misleading.  Plaintiff does not allege that these studies suggest that sucralose is ineffective at "help[ing] minimize blood sugar spikes," much less that it is ineffective for this purpose relative to high glycemic carbohydrates.  Indeed, the studies Plaintiff rely upon largely do not pertain to "blood sugar spikes" in the short term.  Rather, most, if not all, of the studies analyze the potential effects of sucralose consumption over longer periods, ranging from several months to 9.1 years.  *Id.* at ¶ 24 n.11; ¶ 30 n.28.  Similarly, several of the studies concerned the effect of sucralose on the risk of *developing* diabetes, but Glucerna's labeling only make claims about managing blood sugar in people *who already have diabetes*.  *See, e.g.*, *id.* at ¶ 26 n.10 (noting the study "supports…the potential exaggerated postprandial glycaemic excursions in high habitual NAS consumers, which could predispose to [type 2 diabetes].");  *id.* at ¶ 24 n.10 ("[F]indings of positive associations between artificial sweetener intakes and increased [type 2 diabetes] risk.").  By Plaintiff's own account, these studies do not afford any basis for doubting Abbott's claim that Glucerna products will "help with blood sugar management" by managing short-term blood sugar spikes relative to high-glycemic carbohydrates.

### b.    Maltodextrin, Carrageenan, and Choline Chloride

Though Plaintiff focuses primarily on sucralose, he also objects to Glucerna's inclusion of maltodextrin, carrageenan, and choline chloride (though not every Glucerna product contains all of these ingredients).  *See* Compl. at ¶ 8.

The Complaint's citations to studies concerning these other ingredients suffer from the same defects as those involving sucralose.  Again, Plaintiff relies upon out-of-context quotes from cherry-picked studies that analyze the long-term effects of these ingredients rather than their short-term effect as a snack or meal substitute.  Nor do they analyze how these ingredients' inclusion in

Glucerna affect a consumer's diabetes or blood sugar management compared to a snack or meal high in glycemic carbohydrates.  *See id*. at ¶¶ 33–35.  Thus, even crediting Plaintiff's theories about these ingredients' long-term effects on "glucose intolerance and insulin resistance," he does not and cannot allege that they render Abbott's actual labeling claims misleading.  *See id.*

Like the sucralose studies, the studies cited here also fail to demonstrate a causal relationship between maltodextrin, carrageenan, or choline chloride and ***any*** health problems in human diabetics, short-term or otherwise.  Plaintiff only cited one study involving carrageenan. *See id*. at ¶ 33 n.39.  The authors concluded "the *combination of high fat diet and carrageenan* significantly increased the non-HDL cholesterol and total cholesterol," so the "study results are consistent with a *potential role* for carrageenan and cholesterol sulfate in the pathophysiology of atherosclerotic disease." *Id.* (emphasis added).  In other words, the study had nothing to do with blood sugar, diabetes, or carrageenan consumption in the absence of a "high fat diet."

Likewise, only one study was cited involving choline.  *See id.* at ¶ 34 n.41.  Based on a study of mice, the authors reached the tepid conclusion that the "role of choline should be factored into our thinking about insulin resistance."  The authors make no findings regarding human consumption.  Finally, the only study cited concerning maltodextrin, *Short-Term Consumption of Sucralose With, but Not Without, Carbohydrate Impairs Neural and Metabolic Sensitivity to Sugar in Humans*, acknowledged there were "a number of limitations in the current work that should be considered as caveats."  *See id.* at ¶ 35 n.45.  Moreover, the authors only "suggest that sucralose consumption alters the metabolism" when combined with ingredients like maltodextrin.  A "suggest[ion]" is insufficient support for any causation theory.

In sum, Plaintiff's assertion that these ingredients have been linked causally to metabolic disorders is not borne out by the studies incorporated in his Complaint.  Moreover, even by Plaintiff's account, none of the studies shows that the Glucerna products fail to "help minimize blood sugar spikes relative to high glycemic carbohydrates," as advertised.

**B.    Plaintiff's Allegations**

Plaintiff's Complaint is also notably light on details about his personal experiences with the Glucerna products.  He alleges that he personally purchased two such products, Glucerna

Original Shake Homemade Vanilla and Glucerna Original Shake Creamy Strawberry.  *See* Compl. at ¶ 17(b).  He alleges he "understood the Products' advertising to mean that the Products would aid in managing his diabetes" and "that the Products could '[] help manage blood sugar,' are 'scientifically designed for people with diabetes,' and are the '#1 doctor recommended brand.'" *See id.* at ¶ 17(c) (alteration in original).  In a similarly conclusory fashion, he alleges that he "would not have purchased the Products, or would not have paid as much for the Products, had he known they could not provide the advertised benefits," and that he would "like to purchase the Products again in the future if he could be sure the Products were compliant with California and consumer protection laws."  *See id.* at ¶ 17(d)-(e).

Yet beyond these conclusory characterizations, Plaintiff offers no actual facts about how, if at all, the Glucerna products fell short of his expectations.  Nowhere does Plaintiff allege that Glucerna was detrimental to his diabetes or blood sugar management in any way—much less that it failed to "help minimize blood sugar spikes" relative to "high glycemic carbohydrates," as advertised.  Indeed, Plaintiff fails even to allege that he ever consumed Glucerna.  Plaintiff also fails to allege that Glucerna's labeling caused him to pay more for the product than he otherwise would have, or to forgo other comparable products that were free of the challenged ingredients.

Nevertheless, on this threadbare basis, Plaintiff asserts violations of the California Consumers Legal Remedies Act ("CLRA"), the California False Advertising Law ("FAL"), and the California Unfair Competition Law ("UCL," and collectively, the "California Claims"), as well as claims for breach of express warranty and unjust enrichment/restitution.

## ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]llegations in a complaint [ ] may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

1   Where a complaint is "grounded in fraud," Rule 9(b) of the Federal Rules of Civil

2   Procedure applies to the "pleading . . . as a whole."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120,

3   1125 (9th Cir. 2009).  Under Rule 9(b), "the circumstances constituting fraud or mistake" shall be

4   "state[d] with particularity."  Fed. R. Civ. P. 9(b).  A plaintiff cannot evade this heightened

5   standard by packaging a UCL claim as one for "unfair" rather than "fraudulent" conduct.  Claims

6   under the "unfair" prong are still subject to Rule 9(b) when "grounded in fraud."  *E.g.*, *Kearns*,

7   567 F.3d at 1127.

8   Each of Plaintiff's claims is "grounded in fraud" for purposes of Rule 9(b).  Each count is

9   premised on Abbott's purportedly fraudulent marketing of Glucerna.  Plaintiff's CLRA claim rests

10   on the contention that Abbott "represent[ed] that the Products have 'characteristics, …uses [or]

11   benefits…which they do not have,'" that they "are of a particular standard, quality, or

12   grade…[when] they are of another," that Abbott advertised "the Products 'with [the] intent not to

13   sell them as advertised,'" *see* Compl. at ¶ 74, and that such actions were "malicious, fraudulent,

14   and wanton."  *Id.* at ¶ 76.  Plaintiff's UCL claim also rests on his allegation that Abbott engaged

15   in a "deliberately fraudulent marketing scheme" because it did "not have any reasonable basis for

16   the claims about the Products made in Defendant's advertising and on Defendant's packaging or

17   labeling of the Products."  *Id.* at ¶ 93.  Indeed, Plaintiff expressly makes a claim under the UCL's

18   "Fraudulent" prong.  *See id.* at ¶¶ 111–19.  Finally, Plaintiff's unjust enrichment/restitution claim

19   alleges Abbott obtained a benefit through Plaintiff's purchase of Glucerna through "fraudulent,

20   misleading, and deceptive representations."  *See id.* at ¶ 138.  Accordingly, Plaintiff's Complaint

21   is subject to the heightened standard of Rule 9(b).

22   **I.    Plaintiff Fails To Allege Any Fraudulent Statement About Glucerna**

23   Plaintiff's California Claims require a plausible allegation that "reasonable consumers" are

24   "likely to be deceived" by Glucerna's labels when they are read in their entirety.  The Complaint

25   lacks any such allegation.  Plaintiff's claims are premised on his alleged expectation that the

26   Glucerna products would provide diffuse, long-term preventive health benefits—a promise that

27   the label does not make, and that no reasonable consumer would read into the labeling.  As any

28   reasonable consumer would conclude, the Glucerna labeling represents only that the products will

"help minimize blood sugar spikes" when consumed in place of a snack or meal high in glycemic carbohydrates.  Moreover, even ignoring the Complaint's mischaracterization of the labeling, the Complaint makes no plausible allegation that Glucerna's ingredients harm diabetics.

**A. Reasonable consumers interpreting the entirety of Glucerna's labels understand the claims being made are relative to a high glycemic meal**

The Complaint fails to allege that Glucerna's labeling misleads consumer in any way about the products' attributes.  A reasonable consumer would understand Glucerna's labeling to communicate only that it is designed to help minimize blood sugar spikes relative to a high-glycemic snack or meal, and thus that it is a suitable meal or snack "replacement" for diabetics.  Because Plaintiff fails to allege this claim is misleading, his Complaint cannot get out of the starting gate.

The California claims "are governed by the 'reasonable consumer' standard," which requires that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by the challenged communication. *McGinity v. P&G*, 69 F.4th 1093, 1097 (9th Cir. 2023).  This "objective" standard demands more than "a mere possibility" that the disputed representation "might conceivably be misunderstood by [a] few consumers viewing it in an unreasonable manner." *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019).  When applying the standard, courts must account for the "contextual inferences regarding the product" that a reasonable consumer would make. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021); *Becerra*, 945 F.3d at 1228 (court must "consider the [representation] in its proper context").  If a court "can conclude as a matter of law that members of the public are not likely to be deceived," *Werbel v. Pepsico, Inc.*, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010), the complaint must be dismissed. *See, e.g.*, *Moore*, 4 F.4th at 880–86; *Becerra*, 945 F.3d at 1228–31; *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965–67 (9th Cir. 2016).

The "reasonable consumer" test requires viewing a product label in its entirety. *See Brand v. KSF Acquisition Corp.*, 2023 WL 3225409, at *4 (S.D. Cal. Mar. 17, 2023) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995)); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) (affirming dismissal with prejudice of CLRA, FAL, and UCL

claims and rejecting the plaintiff's attempt to interpret words on a product's label out of context). Here, that means the statement that Glucerna "help[s] manage blood sugar" must be read in conjunction with the statement that it is a snack or meal replacement, and with the "†" symbol appearing next to it, which leads to the statement "Designed to help minimize blood sugar spikes in people with diabetes compared to high glycemic carbohydrates."  The Ninth Circuit has made clear that a label cannot be considered deceptive if  "[u]pon seeing the back labels, [the product feature at issue] would be clear to a reasonable consumer."  *McGinity*, 69 F.4th at 1098.  Plaintiff "cannot simply look to the statement on the front panel, ignore the asterisk, and claim [he] has been misled."  *Whiteside v. Kimberly-Clark Corp.*, 2023 WL 4328175, at *4 (C.D. Cal. June 1, 2023) (citation omitted); *see also Dinan v. SanDisk LLC*, 2020 WL 364277, at *8 (N.D. Cal. Jan. 22, 2020), *aff'd*, 844 F. App'x 978 (9th Cir. 2021) ("Asterisks are common in both commerce and elsewhere to denote that the 'reader' should be aware that there is more than meets the eye," specifically it "calls the consumer's attention to the fact that there is supplemental information on the package that the consumer should read.").

Here, the Complaint nominally identifies three statements about the Glucerna products that it defines as the "Challenged Representations" in Paragraph 5 of the Complaint:  that they (1) "help manage blood sugar"; (2) that they are the "#1 doctor recommended brand"; and (3) that they are "[scientifically] designed for people with diabetes."[6]  Despite its length, the Complaint gives scant attention to the second and third representations.  For example, there is no allegation that doctors recommend some other brand more frequently than Glucerna or that the *design* of Glucerna was unscientific or not directed to people with diabetes.  Rather, the Complaint focuses on the first statement and whether Glucerna is appropriate for people with diabetes.  As set forth supra, that statement is accompanied by the further explanation that the Glucerna products "help[] minimize blood sugar spikes in people with diabetes compared to high glycemic carbohydrates."

A reasonable consumer reading these statements together would understand this to mean just what it says:  that when consumed as a snack or meal substitute, Glucerna helps manage blood

---

[6] Paragraph 5 uses the word "specifically" instead of "scientifically," but the rest of the Complaint uses the word "scientifically,' suggesting a typo in Paragraph 5.

sugar *relative to* snacks or meals with high glycemic carbohydrates.  In other words, the claim that Glucerna is "made with CARBSTEADY to help manage blood sugar" is a *relative* claim about its ability to "minimize blood sugar spikes" in people with diabetes when "compared to high glycemic carbohydrates."   Relative claims like this must be compared *solely* against the referenced comparison item, meaning high glycemic carbohydrates.  *Cf. Becerra v. Dr. Pepper/Seven Up, Inc.*, 2018 WL 3995832, at *4 (N.D. Cal. Aug. 21, 2018), *aff'd*, 945 F. 3d 1225 (9th Cir. 2019) (noting courts analyze "diet" soda claims as "relative" health claims and that they must be compared "to the non-diet variant of the same brand"); *Hall v. Diamond Foods, Inc.*, 2014 WL 5364122, at *2–3 (N.D. Cal. Oct. 21, 2014) (noting the parties' arguments that Reduced Fat Sea Salt Chip's claim it was "40% reduced fat potato chips" would be interpreted by a reasonable consumer as either 40% reduced fat compared to a "regular" chip or 40% reduced fat compared to the "regular version" of that brand's chip).

Once the labeling is viewed through the lens of a "reasonable consumer"—as it must be—it becomes clear that Plaintiff's Complaint is a nonstarter.  Plaintiff does not and cannot allege that the straightforward message of Glucerna's labeling is false or misleading.  His Complaint is devoid of any allegation that Glucerna does not actually "help manage blood sugar" when used as a snack or meal replacement by helping to "minimize blood sugar spikes in people with diabetes compared to high glycemic carbohydrates."   Thus, he has failed to allege that any aspect of Glucerna's labeling is misleading to a reasonable consumer.  This alone warrants dismissal of his Complaint.

## B. A reasonable consumer reading Glucerna's labels would not be misled about its ingredients

Instead of basing his claims on what the Glucerna labels actually say (*i.e.*, that it minimizes short-term blood sugar spikes when used as a substitute for a high-glycemic snack or meal), Plaintiff complains that Glucerna contains sucralose and other ingredients.  But Plaintiff identifies no false claim in this regard.

To the extent Plaintiff asserts a failure to disclose the fact that Glucerna includes sucralose and the other ingredients identified in the Complaint, such a claim fails.  The back label for Glucerna, where its ingredients are listed, *discloses every single ingredient about which Plaintiff*

13

*complains*.  The ingredient list on a back label ameliorates any potential deception by the front label unless the front label is "unambiguously deceptive."  *McGinity*, 69 F.4th at 1098.  Thus, to contend that the labeling misled consumers about the presence of the challenged ingredients, Plaintiff must allege that the front label "unambiguously" assured consumers that the challenged ingredients were absent.  Plaintiff does not and cannot allege any such thing.  Indeed, the products' front labels say nothing at all about the challenged ingredients, and would never lead a reasonable consumer to any conclusions about this topic.

Plaintiff also vaguely claims that Glucerna's labels represented the products as "healthy drinks and powders," offering diffuse benefits for "the management of blood sugar generally and diabetes specifically."  Compl. at ¶ 6.  This message is alleged to be false because Glucerna contains sucralose which, according to Plaintiff, "negatively affects pancreatic beta cells, promotes insulin resistance, destabilizes glucose absorption, causes obesity, and harms the gut microbiome."  *See id*. at ¶¶ 6–7.

This contention, too, fails the "reasonable consumer" test.  No reasonable consumer reading Glucerna's label would share Plaintiff's expectation that Glucerna provides complete protection from these other conditions or was free of any ingredient that with long term use could theoretically be harmful to diabetics.  This would be an impossible standard to meet:  no consumer product can be free of all ingredients that, if consumed in large quantities over a long period of time, are believed by some to be correlated with any health condition arguably associated with diabetes.

Indeed, a Northern District of California court rejected an analogous claim concerning a similar product in *Horti v. Nestlé HealthCare Nutrition, Inc.*, 2022 WL 2441560 (N.D. Cal. July 5, 2022).  In that case, plaintiffs also made claims under the CLRA, FAL, and UCL against Nestlé for including on its snack or meal replacement shakes' labels "Helps manage blood sugar" and "Designed for people with diabetes" as misleading consumers "into believing that the products can prevent and treat diabetes" when they do not.  *See id.* at *1.  In finding no reasonable consumer would interpret the claims to mean this, the court noted diabetics in particular understand there is no treatment for diabetes and would not interpret the challenged claims to mean that the products

"will on its own treat diabetes or maintain healthy glucose levels." *See id.* at *7; *see also id.* ("Reasonable consumers, particularly reasonable consumers who monitor their blood sugar, understand that consuming food, including nutritional drinks like Boost, impacts blood sugar levels."). Plaintiffs' attempt at curing these deficiencies through an amended complaint with additional allegations was similarly rejected. *See Horti v. Nestlé Healthcare Nutrition, Inc.*, 2022 WL 16748613, at *4–6 (N.D. Cal. Nov. 7, 2022), *appeal filed*, No. 22-16832 (9th Cir. Nov. 29, 2022). Similarly here, a reasonable consumer, particularly diabetics familiar with diabetes, would interpret the Glucerna label claims to pertain only to short-term impact on blood sugar relative to high glycemic carbohydrates. *See* Compl. at ¶¶ 6, 17(c). In the end, Glucerna's labeling makes a narrow health claim concerning the minimization of blood sugar spikes in people with diabetes *compared to high glycemic carbohydrates*. Plaintiff fails to allege this claim is untruthful.

### C. The Complaint Makes No Plausible Allegation that Sucralose, Maltodextrin, Carrageenan, and Choline Chloride Causes Health Problems for Diabetics

Instead, Plaintiff hinges his Complaint on a handful of scientific studies that, in his view, call into question the general healthiness of sucralose and other ingredients when consumed over the long term. But even if Plaintiff's interpretation of the studies were correct, that would be irrelevant, for the reasons explained above. The Glucerna products were not labeled or advertised as a preventative balm against every conceivable health condition. Nor do they purport to be formulated with ingredients that would meet every consumer's definition of "healthful" in all respects. Accordingly, Plaintiff's allegations about the challenged ingredients' abstract nutritional properties are neither here nor there. None of the studies Plaintiff relies upon goes to the sole message communicated by Abbott's labeling: that the products are a suitable "snack or meal replacement" for diabetics, which "help[] manage blood sugar" by "minimiz[ing] blood sugar spikes" as compared to "high glycemic carbohydrates." They are thus irrelevant to his claims.

Moreover, Plaintiff's interpretation of the studies is incorrect in any event. Plaintiff piles inference upon inference to suggest that the challenged ingredients render the Glucerna products generally unhealthy for diabetics. But none of the studies he relies upon establishes a causal

relationship between the challenged ingredients and negative health outcomes.  In a series of cases pertaining to diet soft drinks, the courts rejected plaintiffs' theory of a link between diet soft drinks and adverse health effects for a similar reason.  As several courts concluded, "the studies point[ed] only to a non-causal association between NNS consumption and weight gain (or related health problems)" and many even "[e]xpressly disclaim[ed] any generalizable causal conclusion." *Manuel v. Pepsi-Cola Co.*, 2018 WL 2269247, at *10 (S.D.N.Y. May 17, 2018); *see also, e.g.*, *Geffner v. Coca-Cola Co.*, 343 F. Supp. 3d 246, 253–54 (S.D.N.Y. 2018) ("Nor do the studies cited in the FAC, taken in the light most favorable to the plaintiffs, show that consumption of aspartame ***increases the risk*** that a consumer will gain weight or develop hyperglycemia" because none "show a causal link between the aspartame in Diet Coke and risk of weight gain or health problems; indeed, many caution against a finding of causality." (emphasis in original)); *Becerra v. Dr Pepper/Seven Up, Inc.*, 2018 WL 1569697, at *6 (N.D. Cal. Mar. 30, 2018) (finding studies cited in complaint "do not allege causation at all—at best, they support merely a correlation or relationship between artificial sweeteners and weight gain, or risk of weight gain" but "correlation is not causation, neither for purposes of science nor the law").  So too here, Plaintiff has failed to allege a causal link between the challenged ingredients and any undesirable health outcome.

In short, the studies to which Plaintiff devotes the majority of his Complaint are of no help to his consumer fraud claims.  These studies do not ask the right question, in that they do not evaluate the short-term impact of the challenged ingredients on blood sugar spikes when compared to high glycemic carbohydrates.  Rather, they inquire about potential amorphous health consequences from consumption of these ingredients, a question that has no bearing on Plaintiff's consumer fraud claims.  What is more, contrary to Plaintiff's allegations, the studies do not even reach a definitive answer to ***that*** inapposite question.  Plaintiff has failed to plausibly allege that the Glucerna labels are misleading in any way.

## II.   Plaintiff Lacks Standing

### A.   Plaintiff's claims fail for lack of standing

To satisfy Article III standing, a plaintiff must allege: (1) injury-in-fact that is concrete and particularized, as well as actual and imminent; (2) wherein injury is fairly traceable to the

1    challenged action of the defendant; and (3) redressable by a favorable ruling.  *See Monsanto Co.*

2    *v. Geertson Seed Farms*, 561 U.S. 139, 140 (2010).  More specifically under the UCL and FAL, a

3    plaintiff only has standing if he or she "has suffered injury in fact and has lost money or property

4    as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204; *see also Kwikset Corp. v.*

5    *Superior Court*, 51 Cal. 4th 310, 322 (2011) (holding to have standing under the UCL or FAL, a

6    named plaintiff must: "(1) establish a loss or deprivation of money or property sufficient to qualify

7    as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of,

8    i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim").

9    Likewise, to bring a CLRA claim, "[a] plaintiff . . . must not only be exposed to an unlawful

10   practice but also have suffered some kind of damage."  *Bower v. AT & T Mobility, LLC*, 196 Cal.

11   App. 4th 1545, 1556 (2011).

12        Plaintiff fails to allege he consumed Glucerna, whether he would consume Glucerna in the

13   future, whether Glucerna affected his health, how much he allegedly overpaid for Glucerna, and

14   what he would have paid for Glucerna absent the alleged deception.  He also does not allege that

15   the purported deception caused him to forgo any other, comparable products that would have met

16   his standards for "blood sugar management."  Plaintiff's conclusory allegation that he "would not

17   have purchased the Products, or would not have paid as much for the Products, had he known they

18   could not provide the advertised benefits," *see* Compl. at ¶ 17(d), is not a cognizable injury.  *See,*

19   *e.g.*, *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019) (finding plaintiffs failed to

20   allege "necessary factual details concerning the alleged price premium they paid," including "how

21   much they paid for the beverage, how much they would have paid for it absent the alleged

22   deception, whether [defendant]. . . was responsible for any overpayment, or any other details

23   regarding the price premium"); *Schippell v. Johnson & Johnson Consumer Inc.*, 2023 WL

24   6178485, at \*8, \*23 (C.D. Cal. Aug. 7, 2023) (holding that plaintiff failed to "make a minimal

25   factual, nonconclusory showing in support of her price premium theory" and "thus does not

26   adequately plead an injury"); *Babaian v. Dunkin' Brands Grp., Inc.*, 2018 WL 11445613, at \*7

27   (C.D. Cal. June 12, 2018) (finding plaintiff failed to plead economic injury even though he listed

28   competitors offering the same products with the "real" ingredient because he failed to establish

"that a price premium attaches to the Class Products due to the alleged misrepresentation.  That is, the mere fact that competitors sell products with real blueberry and maple ingredients is inapposite to whether Dunkin' extracted a price premium by selling the Class Products with artificial blueberry and maple while representing that they contain blueberry and maple.").

Courts have dismissed complaints with similar defects for lack of standing.  For example, in *Horti*, the court found plaintiffs lacked standing because plaintiffs failed to allege how much they would have paid for the products absent the alleged deception, whether they consumed the products, and whether they were injured from ingesting the products.  *See* 2022 2022 WL 2441560, at *8.  The court found insufficient plaintiffs' allegation "that they have suffered injury based on their payment of a 'premium price' for a product that did not work as advertised and that they would not have paid for had they known the truth."  *Id.*

Because Plaintiff has likewise failed to include a nonconclusory basis for his claim of injury, his Complaint should be dismissed.

### B.   Plaintiff lacks standing to seek injunctive relief

Plaintiff lacks standing to seek injunctive relief because he cannot allege a "real or immediate threat that [he] will be again wronged in a similar way."  *Urban v. Tesla, Inc.*, 2023 WL 6796021, at *5 (N.D. Cal. Oct. 13, 2023) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  The ingredients at issue are identified in Glucerna's ingredient list.  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…if unaccompanied by any continuing, present adverse effects."  *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).  If Plaintiff wishes to avoid Glucerna unless and until it is reformulated without certain ingredients, the current labels provide him with all the information he needs to do so, and he has no need for an injunction to acquire this information.

In the absence of any ongoing deprivation of information, Plaintiff's insistence that he "wants to purchase the Products in the future if he can be sure the Products can provide the advertised benefits," *see* Compl. at ¶ 18, is inadequate to confer standing.  To the extent Plaintiff was ever previously confused about the products' benefits or properties, that was only because he allegedly did not realize that they contained the challenged ingredients.  Plaintiff is at no risk of

repeating that purported injury, because he can now look at the ingredient list, which tells him all he needs to know.  His bare desire to ensure that the products are accurately labeled does not confer standing to seek injunctive relief.  *See In re Coca-Cola Prod. Mktg. & Sales Pracs. Litig. (No. II)*, 2021 WL 3878654, at *1–2 (9th Cir. Aug. 31, 2021) (finding standing for injunctive relief cannot be premised on mere "abstract interest in compliance with labeling requirements," and reversing district court's conclusion that the consumer plaintiffs had standing to seek injunction); *see also Urban*, 2023 WL 6796021, at *5 (finding Plaintiff lacked standing to seek injunctive relief despite expressing a desire to purchase a Tesla in the future because, *inter alia*, "the allegations in the complaint do not establish Urban's need for such relief, given that he is already aware of the defect at issue"); *Matic v. U.S. Nutrition, Inc.*, 2019 WL 3084335, at *7–8 (C.D. Cal. Mar. 27, 2019) (finding plaintiff lacked standing for injunctive relief because "[w]hile he complains that the size and location of the weight information make it difficult for unsuspecting consumers to find and read, it is clear that *he* knows precisely where to find it" and he is unlikely "to be deceived by the size of the protein powder containers in the future").

For this reason, Plaintiff's claims for injunctive relief should be dismissed.

### C.    Plaintiff lacks statutory standing because he fails to allege reliance

Plaintiff also lacks statutory standing to bring his California Claims, because he fails to satisfy the "actual reliance" requirement for standing under those statutes.  *See Kwikset*, 51 Cal. 4th at 326 (holding plaintiff must "demonstrate actual reliance" for fraud-based consumer protection claims).  Actual reliance requires that in the absence of the alleged misrepresentation, "in all reasonable probability [the plaintiff] would not have engaged in the injury producing conduct."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009); *see also Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, 2021 WL 148063, at *6 (S.D. Cal. Jan. 15, 2021) (adopting the majority rule "that a plaintiff must allege its own reliance and not the reliance of third parties"); *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1200 (N.D. Cal. 2014) (dismissing CLRA claim for failing to meet the "actual reliance" standard).  In making this determination, the Court need not accept Plaintiff's allegations if they lack "facial plausibility."  *See Hodges v. King's*

1    *Hawaiian Bakery West, Inc.*, 2021 WL 5178826, at *5 (N.D. Cal. Nov. 8, 2021) (quoting *Iqbal*,

2    556 U.S. at 678).

3           Aside from his conclusory allegation a portion of Glucerna's label led him to believe

4    Glucerna would aid in managing his diabetes, Plaintiff failed to explain the who, what, when,

5    where, and how of his reliance.  *Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 782–

6    83 (9th Cir. 2018) (plaintiffs must plead with particularity "the 'who, what, when, where, and how'

7    of [their] reliance").  He does not say what he noticed about the Glucerna labeling or how it

8    influenced his purchasing decision.  Plaintiff's bare allegations he relied on certain statements on

9    Glucerna's labeling in making his purchase "fall short of describing *how* [he was led] to believe

10   that [Glucerna] treated diabetes or otherwise fell short of the representations on the labels.

11   [Plaintiff] offer[s] no comparisons of [the Glucerna products he purchased] against other [Glucerna

12   products] or other glucose-control marketed food products." *Horti*, 2022 WL 2441560, at *8.

13          Plaintiff's California Claims fail for this additional reason.

14   **III.    Plaintiff's Breach of Express Warranty Claim Should be Dismissed for Failure to**

15   **State a Claim**

16          "A plaintiff asserting a breach of warranty claim must allege facts sufficient to show that:

17   (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods;

18   (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Mattero*

19   *v. Costco Wholesale Corp.*, 336 F. Supp. 3d 1109, 1115 (N.D. Cal. 2018).  In false advertising

20   matters, courts often analyze express warranty claims the same as California consumer protection

21   claims, including whether plaintiff met the reasonable consumer test.  *See Legrand v. Abbott Labs.*,

22   2023 WL 1819159, at *13 (N.D. Cal. Feb. 8, 2023) (citing collection of cases); *see also Horti*.

23   2022 WL 2441560, at *9 (dismissing breach of express warranty claim because "[a]s discussed in

24   relation to the UCL, CLRA, and FAL claims, plaintiffs have failed to identify an actionable

25   misrepresentation as a matter of law").  Plaintiff's express warranty claim should be dismissed for

26   the same reasons as his California Claims.

27

28

**IV.    Plaintiff's Unjust Enrichment Claim Should be Dismissed for Failure to State a Claim and as Derivative of his California Claims**

Unjust enrichment claims that are merely derivative of deficient claims under the CLRA, UCL, and FAL are routinely dismissed.  *See, e.g.*, *Choon's Design, LLC v. ContextLogic Inc.*, 2020 WL 6891824, at *5 n.4 (N.D. Cal. Nov. 24, 2020) ("Plaintiff's unjust enrichment claim also fails because it is a derivative cause of action."); *Frison v. Accredited Home Lenders, Inc.*, 2011 WL 2729241, at *5 (S.D. Cal. July 13, 2011) ("Because all other claims . . . are dismissed, Plaintiff's claim for unjust enrichment is also dismissed . . . .").  Plaintiff's unjust enrichment claim fails as derivative of his California Claims, which should be dismissed for the reasons discussed above.

Furthermore, Rule 9(b) applies to "unjust enrichment claims based in fraud." *Mack v. LLR, Inc.*, 2019 WL 1873294, at *9 (C.D. Cal. Feb. 6, 2019).  Plaintiff's unjust enrichment claim relies on Abbott having obtained a benefit through alleged "fraudulent, misleading, and deceptive representations," *see* Compl. at ¶ 138.  It must therefore comply with Rule 9(b) but Plaintiff failed to allege the underlying circumstances of fraud "with particularity."  *See Mack v. LLR, Inc.*, 2018 WL 6927860, at *7, *14 (C.D. Cal. Aug. 15, 2018) (dismissing unjust enrichment claim where plaintiffs "failed to plead the when, what, and who of the alleged misrepresentations").  For this reason too, Plaintiff's unjust enrichment claim fails.

Finally, if Plaintiff's breach of express warranty claim is not dismissed, Plaintiff's unjust enrichment claim should be dismissed because a plaintiff cannot invoke "state law to assert an unjust enrichment claim while also alleging an express contract." *Roper v. Big Heart Pet Brands*, 510 F. Supp. 3d 903, 924 (E.D. Cal. 2020) (citations omitted).  A breach of an express warranty claim is the equivalent of an express contract.  *See id.* at 924–25.  If Plaintiff's express warranty claim survives dismissal, Plaintiff's unjust enrichment claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Abbott respectfully requests that the Court dismiss the Complaint with prejudice.

1

Respectfully submitted,

2

Dated: November 6, 2023

By: */s/ Matthew D. Powers*

3

4

Matthew D. Powers
O'MELVENY & MYERS LLP

5

6

Jane Metcalf (*pro hac vice* pending)
William F. Cavanaugh, Jr.
 PATTERSON BELKNAP WEBB & TYLER LLP

7

8

*Attorneys for Defendant Abbott Laboratories*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28