MATTHEW D. POWERS (S.B #212682)
  mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Tel: (415) 984-8700

WILLIAM F. CAVANAUGH, JR. (S.B. #133461)
  wfcavanaugh@pbwt.com
JANE METCALF (*pro hac vice*)
  jmetcalf@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000

*Attorneys for Defendant*
*Abbott  Laboratories*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| STEVEN PRESCOTT, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>ABBOTT LABORATORIES,<br>                    Defendant. | Case No.: 5:23-cv-04348-PCP<br><br>**DEFENDANT ABBOTT LABORATORIES NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hon. P. Casey Pitts<br><br>Date:  May 23, 2024<br>Time:  10:00 a.m.<br>Courtroom:  8 |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on May 23, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8 of the above-captioned Court, located at 280 South First Street, San Jose, CA 95113, before the Honorable P. Casey Pitts, Defendant Abbott Laboratories will and hereby does move this Court pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for an order dismissing with prejudice Plaintiffs' Amended Complaint.

Plaintiffs allege violations of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, and the Unfair Competition Law, *Id.* § 17200, *et seq.*, and brings common law claims for breach of express warranty and unjust enrichment/restitution. Plaintiffs have failed to allege that Abbott made statements misleading to a reasonable consumer, and also fail to allege their standing to seek injunctive relief. Their Amended Complaint should be dismissed in its entirety with prejudice.

This Motion is based on this Notice, the following Memorandum of Points and Authorities, the pleadings and records on file, and such other matters as the Court deems necessary and proper to adjudicate this Motion.

Dated: March 6, 2024    By:    */s/ Matthew D. Powers*

Matthew D. Powers
O'MELVENY & MYERS LLP

William F. Cavanaugh, Jr.
Jane Metcalf (*pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP

*Attorneys for Defendant Abbott Laboratories*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................... 2

      A.     Glucerna .............................................................................................. 2

      B.     Plaintiffs' Allegations About Sucralose ...................................... 5

      C.     The Mismatch Between the Labeling Claims and Plaintiffs' Cited Studies .............................................................................................. 7

      D.     Plaintiffs' Allegations Regarding Other Ingredients ................................. 8

      E.     Plaintiffs' Allegations About Their Purchases of Glucerna ...................... 9

ARGUMENT ..................................................................................................................... 10

    I.     Plaintiffs Fail To Allege Any Fraudulent Statement About Glucerna ................. 11

      A.     The Labeling Claims Clearly Identify the Discrete Benefits Offered by the Products ...................................................................... 11

      B.     *Horti* is of No Help to Plaintiffs ............................................... 14

      C.     Plaintiffs' Alternative Interpretations of the Label Are Unreasonable ...................................................................................... 15

      C.     The Amended Complaint Makes No Plausible Allegation that Sucralose, Maltodextrin, or Carrageenan Cause Health Problems for Diabetics ........................................................................................ 17

    II.    Plaintiffs Lack Standing to Seek Injunctive Relief ............................................. 18

    III.    Plaintiffs' Ancillary Claims Also Fail ............................................................. 20

CONCLUSION ................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................10

*Becerra v. Dr Pepper/Seven Up, Inc.*,
   2018 WL 1569697 (N.D. Cal. Mar. 30, 2018)........................................................18

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
   2018 WL 3995832 (N.D. Cal. Aug. 21, 2018), *aff'd*, 945 F. 3d 1225 (9th Cir.
   2019) ......................................................................................................................13

*Becerra v. Dr Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ...............................................................................12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................10

*Brand v. KSF Acquisition Corp.*,
   2023 WL 3225409 (S.D. Cal. Mar. 17, 2023) ......................................................12

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   475 F. App'x 113 (9th Cir. 2012) .........................................................................12

*Choon's Design, LLC v. ContextLogic Inc.*,
   2020 WL 6891824 (N.D. Cal. Nov. 24, 2020) .....................................................20

*In re Coca-Cola Prod. Mktg. & Sales Practices. Litig. (No. II)*,
   2021 WL 3878654 (9th Cir. Aug. 31, 2021).........................................................19

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ...................................................................................4

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) .................................................................................19

*Dinan v. SanDisk LLC*,
   2020 WL 364277 (N.D. Cal. Jan. 22, 2020), *aff'd*, 844 F. App'x 978 (9th Cir.
   2021) ......................................................................................................................13

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) .................................................................................12

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ...................................................................................12

*Frison v. Accredited Home Lenders, Inc.*,
   2011 WL 2729241 (S.D. Cal. July 13, 2011) ...........................................................21

*Geffner v. Coca-Cola*,
   928 F.3d 198 (2d Cir. 2019).......................................................................................13

*Geffner v. Coca-Cola Co.*,
   343 F. Supp. 3d 246 (S.D.N.Y. 2018).......................................................................18

*Horti v. Nestle Healthcare Nutrition, Inc.*,
   2023 WL 8613601 (9th Cir. Dec. 13, 2023) .....................................................2, 14, 15

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...................................................................................10

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) .......................................................................................6

*Legrand v. Abbott Labs.*,
   655 F.Supp.3d 871 (N.D. Cal. 2023) ........................................................................20

*Los Angeles v. Lyons*,
   461 U.S. 95 (1983)......................................................................................................18

*Mack v. LLR, Inc.*,
   2018 WL 6927860 (C.D. Cal. Aug. 15, 2018)...........................................................21

*Mack v. LLR, Inc.*,
   2019 WL 1873294 (C.D. Cal. Feb. 6, 2019)..............................................................21

*Manuel v. Pepsi-Cola Co.*,
   2018 WL 2269247 (S.D.N.Y. May 17, 2018), *aff'd*, 763 Fed. App'x 108 (2d
   Cir. 2019) ...................................................................................................................17

*Martinez v. Mead Johnson & Co., LLC*,
   2022 WL 15053334 (C.D. Cal. Oct. 22, 2022)..........................................................20

*Matic v. U.S. Nutrition, Inc.*,
   2019 WL 3084335 (C.D. Cal. Mar. 27, 2019) ...........................................................20

*Mattero v. Costco Wholesale Corp.*,
   336 F. Supp. 3d 1109 (N.D. Cal. 2018) ....................................................................20

*McGinity v. Proctor & Gamble Co.*,
   69 F.4th 1093 (9th Cir. 2023) ........................................................................11, 12, 16

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
   2021 WL 3524047 (N.D. Cal. Aug 6. 2021) ..........................................................4, 12

iii

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ..................................................................................12

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)...........................................................................................19

*Roper v. Big Heart Pet Brands*,
    510 F. Supp. 3d 903 (E.D. Cal. 2020).................................................................21

*Sidhu v. Bayer Healthcare Pharms. Inc.*,
    2023 WL 6541865 (N.D. Cal. Oct. 5, 2023)..........................................................6

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ............................................................................10

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ................................................................................6

*Urban v. Tesla, Inc.*,
    2023 WL 6796021 (N.D. Cal. Oct. 13, 2023)......................................................18

*Werbel v. Pepsico, Inc.*,
    2010 WL 2673860 (N.D. Cal. July 2, 2010).........................................................12

*Whiteside v. Kimberly-Clark Corp.*,
    2023 WL 4328175 (C.D. Cal. June 1, 2023) .......................................................13

**Other Authorities**

21 C.F.R. § 105.3(a)(2).............................................................................................5, 15

21 C.F.R. § 172.831 ........................................................................................................5

Fed. R. Civ. P. 9(b) ................................................................................................10, 21

Defendant Abbott Laboratories ("Abbott") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the Amended Complaint.

## PRELIMINARY STATEMENT

In this putative class action, Plaintiffs accuse Abbott of misleading consumers about the nutritional benefits of its Glucerna®- branded pre-made and powdered shakes. Glucerna's labeling describes these products as "delicious snack or meal replacement" shakes that "help manage blood sugar." An explanatory note further clarifies that the shakes "help manage blood sugar" in that they are "designed to help minimize blood sugar spikes in people with diabetes *compared to high glycemic carbohydrates*" (emphasis added). According to Plaintiffs, Glucerna's labeling is misleading because the Glucerna products contain three ingredients—sucralose, carrageenan, and maltodextrin—that Plaintiffs consider unhealthy, particularly for diabetics. In support of their claim, Plaintiffs offer a layperson's interpretation of a handful of scientific studies, which purportedly show an association between routine consumption of these ingredients and various negative long-term health outcomes.

The problem is that, even by Plaintiffs' own farfetched telling, none of these studies indicates that the labeling statements on Glucerna are misleading. Plaintiffs do not and cannot claim that Glucerna fails to "minimize blood sugar spikes in people with diabetes" in the short term. They allege no facts at all about the effect of Glucerna or any of its ingredients on short-term "blood sugar spikes." And they certainly do not allege that Glucerna fails to minimize blood sugar spikes *relative to high glycemic carbohydrates*, as the product labels claim. The studies that Plaintiffs rely upon are silent on each of these questions. Thus, Plaintiffs have alleged no facts suggesting that Glucerna's labeling claims are misleading.

Instead Plaintiffs allege, at best, some potential association between (i) long-term consumption of the three ingredients at issue in the Amended Complaint and (ii) the development of chronic health conditions, based on their own dubious interpretation of the scientific literature. But that is irrelevant to the claims on Glucerna's labeling, which pertain only to the product's impact on blood sugar spikes compared to high glycemic alternatives, and do not present the product as a preventive balm against all chronic health problems. It is also wrong, as Plaintiffs'

own allegations show. In point of fact, the studies Plaintiffs rely upon do not even support a causal link between the ingredients in question and negative long-term health effects.

Plaintiffs patterned this deficient complaint after another recent complaint that is also related to the labeling of a nutritional shake for diabetics, and which the Ninth Circuit recently deemed adequate to survive dismissal. *Horti v. Nestle Healthcare Nutrition, Inc.*, 2023 WL 8613601 (9th Cir. Dec. 13, 2023). But in *Horti*, the dispute turned entirely on whether the product's label could lead reasonable consumers to expect "***some benefit***" to blood sugar management. Here, Abbott does not contest that Glucerna's labels could be read to suggest "some benefit" in that area. As Plaintiffs' allegations reflect, however, the product labels clearly specify what that benefit is: a short-term reduction in blood sugar spikes relative to high-glycemic carbohydrates. Because Plaintiffs have not plausibly alleged that Glucerna fails to deliver that benefit, they have not stated a consumer fraud claim.

These defects dispose of Plaintiffs' common-law as well as their statutory claims. In addition, Plaintiffs lack standing to pursue injunctive relief because they cannot allege a real or immediate threat that they will be wronged again in the future. Notably, Abbott identified these defects in a motion to dismiss the original Complaint, but Plaintiffs' Amended Complaint makes the same mistakes all over again. Two chances are enough. This Court should dismiss the Amended Complaint with prejudice.

## BACKGROUND

### A.    Glucerna

Abbott, an Illinois corporation, is a century-old health care company with a broad portfolio of products, including its "Glucerna" brand shakes and powders. *See* Amended Complaint, ECF No. 24 ¶ 6 (hereinafter, "AC"). The Glucerna portfolio includes a range of products, including Glucerna Original Shakes, Glucerna Hunger Smart Shakes, Glucerna Protein Smart Shakes, Glucerna Original Snack Shakes (collectively, the "Shakes"), and Glucerna Hunger Smart Powder (the "Powder," together with the Shakes and collectively, "Glucerna"). *See id.* ¶ 9. As their labels

1  indicate, the Glucerna products are specially formulated for diabetics to enjoy as a "Delicious

2  Snack or Meal Replacement."  *See id.* pp. 4–11.

3      The Glucerna labels clearly inform consumers of the products' benefits and intended

4  purposes.  *See id*. ¶ 9.  The top of the label identifies the products as "Delicious Snack or Meal

5  Replacement[s]," and also informs consumers that Glucerna is the "#1 Doctor Recommended

6  Brand."  Below that on the righthand side appear the words "Scientifically Designed for People

7  with Diabetes."  *See id.*  These two statements are connected by a "§" symbol for the Shakes,

8  signaling that these two statements are related.  *See id.* ¶ 61.  On the Powder, these same two

9  statements are connected by a "†" symbol.  *See id.*

10      The Shake labels also contain additional information about the products' suitability for

11  persons with diabetes.  The front labels inform consumers that the products are "made with

12  CARBSTEADY"—a specialized low-glycemic carbohydrate blend—"to help manage blood

13  sugar."  *See id.* pp. 4–11.  A photo of Glucerna Original Shake is included here:



DEF. ABBOTT'S MOTION TO DISMISS AC (CASE NO.: 5:23-CV-04348-PCP)

Directly beside the claim to "help manage blood sugar," a "†" symbol refers the consumers to still more explanatory information:  "Designed to help **minimize blood sugar spikes** in people with diabetes **compared to high glycemic carbohydrates**."  *Id.* ¶ 63 (emphasis added).  In addition, adjacent to the claim on the front label, an image of a clock underscores that the products are intended to avert short-term blood sugar spikes:



Taken together, Glucerna's labeling clearly communicates that the products are suitable snack or meal replacements for individuals with diabetes, because they "help manage blood sugar" in the short term by "help[ing] minimize blood sugar spikes . . . compared to high glycemic carbohydrates."  Given these purposes and benefits, Glucerna can frequently be found in stores and online alongside other diabetes-management products.  *See id.* ¶ 65.

Plaintiffs' Amended Complaint does not allege that Glucerna's claims about its precise blood-sugar benefits are false.  They do not allege that the Glucerna products fail to "help minimize blood sugar spikes," whether as an absolute matter or relative to "high glycemic carbohydrates." Rather, Plaintiffs' core allegation is that Glucerna's labeling leads consumers to believe "the Products are healthy sugar-alternative drinks and powders," which provide diffuse "diabetes and blood sugar management benefits" above and beyond the discrete benefits mentioned on the label. *Id.* ¶ 16.  This is misleading, Plaintiffs allege, because the Glucerna products contain various ingredients that Plaintiffs believe are harmful to diabetics in the long term—namely sucralose, carrageenan, and maltodextrin.  *See id.* ¶¶ 10–11.  Notably, Plaintiffs do not dispute that each of these ingredients is duly disclosed on the products' ingredient list.[1]  (Glucerna Original and

---

[1] The Amended Complaint omits Glucerna's ingredients list found on the back labels, but this Court may take judicial notice of the full product labels, which are on www.glucnera.com, since the label content is integral to Plaintiffs' claim and not subject to dispute.  Courts may take judicial notice of a document a complaint "necessarily relies" on if: (1) "the complaint refers to the document," (2) "the document is central to the plaintiff's claim," and (3) "no party questions the authenticity of the copy attached to the 12(b)(6) motion."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *see also Moore v. GlaxoSmithKline Consumer Healthcare Holdings*

1   Glucerna Original Snack Shakes contain all of   the ingredients identified in the Amended

2   Complaint;[2] Glucerna Hunger Smart and Glucerna Protein Smart Shakes contain sucralose and

3   carrageenan;[3] and the Powder contains sucralose.[4]).  Nevertheless, Plaintiffs contend, the Glucerna

4   products' "blood sugar management" claims are misleading due to the mere presence of these

5   ingredients.

6       **B.       Plaintiffs' Allegations About Sucralose**

7       Though Plaintiffs take issue with several Glucerna ingredients, their Amended Complaint

8   focuses primarily on their claim that sucralose, a non-nutritive sweetener, is unhealthy for

9   diabetics.  *See* AC ¶ 26.  Importantly, the Food and Drug Administration ("FDA") does not share

10  Plaintiffs' opinions about sucralose.  In fact, the FDA has not only approved sucralose for "use[]

11  as a sweetener in foods generally,"  *see* 21 C.F.R. § 172.831, but has also explicitly endorsed "the

12  use of an artificial sweetener," like sucralose, "in a food… for regulation of the intake of calories

13  and available carbohydrate, ***or for use in the diets of diabetics***."  *Id.* § 105.3 (a)(2) (emphasis

14  added).  Thus, the FDA, like Abbott, considers sucralose a safe and appropriate sugar substitute in

15  foods designed for diabetics.

16      Plaintiffs' Amended Complaint details their divergent view, which is based on their lay

17  interpretation of the available scientific literature.  They reference a handful of studies purportedly

18  linking sucralose to negative effects on health indicators like "pancreatic beta-cells," AC ¶ 33,

19  "insulin resistance," *id.* ¶ 34, the "gut microbiome," *id.* ¶ 37, "obesity," *id.* ¶ 41, and

20  "genotoxicity," *id.* ¶ 43.  Through a series of speculative inferences, Plaintiffs then purport to link

21  each of these outcomes to a negative effect on "blood sugar management."  For example, they

22

23  *(US) LLC*, 2021 WL 3524047, at *2 (N.D. Cal. Aug 6. 2021) ("Courts often take judicial notice of
    packaging labels in false advertising suits when neither party objects to the authenticity of the

24  labels and the labels are central to the plaintiff's complaint." (citation omitted)).

25  [2] *See* https://glucerna.com/nutrition-products/glucerna-shakes-rich-chocolate;
    https://glucerna.com/nutrition-products/glucerna-snack-shakes-rich-chocolate.

26  [3] *See* https://glucerna.com/nutrition-products/glucerna-hunger-smart-shakes-rich-chocolate;

27  https://glucerna.com/nutrition-products/glucerna-30g-protein-shake-rich-chocolate.

28  [4] *See* https://glucerna.com/nutrition-products/glucerna-hunger-smart-powder-chocolate.

allege that a "disruption in the bacterial environment in the gut from sucralose causes inflammation, worsens insulin resistance, and promotes obesity and increase sugar cravings." *See id* ¶ 37.  According to Plaintiffs, this increase in "sugar cravings…can lead to overconsumption of sugars and cause weight gain and obesity."  *Id.* ¶ 41.  Piling yet another inference onto the chain, Plaintiffs opine that "[o]bese individuals who consume sucralose are found to have much higher blood sugar and insulin spikes in response to normal sugar."  *Id.*  In this manner, by layering their own inferences on top of these studies, Plaintiffs conclude that sucralose is detrimental to the health of diabetics.

Notably, this conclusion is nowhere to be found in the studies themselves.[5]  Indeed, none of the studies establishes a causal relationship between sucralose and adverse health effects in diabetics.  Many of them emphasize the need for more research before drawing any definitive conclusions.  *See id.* ¶ 30 n.15 ("[T]here is *no clear evidence that NNSs [like sucralose] cause metabolic disorders in human subjects*. . .More research is needed . . . ." (emphasis added)); *id.* ¶ 30 n.16 ("Additional studies of other NNS, conducted in distinct study populations, including children and chronic NNS user. . .are needed." (emphasis added)); *id.* ¶ 34 n.25 ("[R]esults from clinical studies . . . have been *equivocal . . . . Clearly, much more needs to be learned"* (emphasis added)); *id.* ¶ 34 n.26 ("[F]*urther studies are required to conclude a direct correlation of artificial sweeteners with decreased insulin sensitivity*." (emphasis added)); *id.* ¶ 36 n.31 ("*Further studies are needed* to confirm the decrease in insulin sensitivity") (emphasis added)).  Several also expressly acknowledge their own limitations for purposes of inferring causality.  *See id.* ¶ 31 n.21 (noting the "study has several limitations"); *id.* ¶ 36 n.32 (acknowledging there were "a number of

---

[5] Abbott requests the Court incorporate by reference the entirety of all the Amended Complaint's cited studies.  "[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself."  *Sidhu v. Bayer Healthcare Pharms. Inc.*, 2023 WL 6541865, at *2 (N.D. Cal. Oct. 5, 2023) (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)).  "Under this doctrine, a court may consider a document 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'"  *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).  "A court generally 'may assume an incorporated document's contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'"  *Id.* (quoting *Khoja*, 899 F.3d at 1003).

1   limitations in the current work that should be considered as caveats"); *id.* ¶ 36 n.35 (noting

2   "limitations" to the study and "encourage[d] further research focused on exploring the potential

3   long-term impact of noncaloric artificial sweeteners on insulin metabolism and immune response

4   in humans").  Accordingly, the studies cited in the Amended Complaint fail to support Plaintiffs'

5   contention of a causal link between sucralose and adverse long-term health effects.

6       **C.      The Mismatch Between the Labeling Claims and Plaintiffs' Cited Studies**

7           Even taking Plaintiffs' contentions about the sucralose literature at face value, Plaintiffs do

8   not contend that the discrete representations on Glucerna's labeling are false.  As set forth above,

9   the labeling at issue makes no representation about the effect of Glucerna's ingredients on long-

10  term insulin resistance or "sugar cravings."  Rather, Glucerna claims only to (1) minimize short-

11  term blood sugar spikes (2) relative to "high glycemic" meals or snacks.  Indeed, Plaintiffs'

12  Amended Complaint acknowledges the relative nature of the claims, conceding that "reasonable

13  consumers understand" the Glucerna products to be "sugar-alternative drinks."  AC ¶ 10.

14          Even by Plaintiffs' telling, the studies they cite do not bear on the truth or falsity of these

15  claims.  Plaintiffs do not claim that these studies suggest that  products containing sucralose are

16  ineffective at "help[ing] minimize blood sugar spikes" in the short term, much less that such

17  products are ineffective for this purpose relative to high glycemic carbohydrates.  Indeed, the

18  studies Plaintiffs rely upon have nothing to do with short-term "blood sugar spikes."  Rather, most,

19  if not all, of the studies analyze the health of individuals consuming sucralose over longer periods,

20  ranging from several months to 9.1 years.  *Id.* ¶ 31 n.19, ¶ 37 n.39.  And not one of the studies

21  evaluates the impact of sucralose *relative to high glycemic carbohydrates*, despite Plaintiffs'

22  acknowledgment that Glucerna's labeling claims are relative in nature.  What is more, most of the

23  studies concern the effect of sucralose on the risk of *developing* diabetes, but Glucerna's labeling

24  only make claims about managing blood sugar in people who already have diabetes.  *See, e.g.*, *id.*

25  ¶ 30 n.19 ("[F]indings of positive associations between artificial sweetener intakes and increased

26  [type 2 diabetes] risk.");  ¶ 31  n.20 (noting the study "supports…the potential for exaggerated

27

28

1  postprandial glycemic excursions in high habitual NAS consumers, which could predispose to

2  [type 2 diabetes].").

3  **D.  Plaintiffs' Allegations Regarding Other Ingredients**

4  Though Plaintiffs focus primarily on sucralose, they also object to Glucerna's inclusion of

5  maltodextrin and carrageenan (though not every Glucerna product contains all of these

6  ingredients).  *See* AC ¶ 11.  But as with sucralose, they do not allege any facts suggesting that the

7  presence of these ingredients renders the labeling false.  Instead, they rely on out-of-context quotes

8  from studies that analyze the long-term health associations with these ingredients rather than their

9  short-term effect on "blood sugar spikes."  Nor do Plaintiffs' cited studies analyze how these

10  ingredients' inclusion in Glucerna affect a consumer's blood sugar management compared to a

11  snack or meal high in glycemic carbohydrates.  *See id.* ¶¶ 44–45.  Thus, even crediting Plaintiffs'

12  theories about these ingredients' long-term effects on "glucose intolerance and insulin resistance,"

13  Plaintiffs do not and cannot allege that the ingredients render Abbott's actual labeling claims

14  misleading.  *See id.*

15  Like the sucralose studies, the studies cited here also fail to demonstrate a causal

16  relationship between maltodextrin or carrageenan and ***any*** health problems in human diabetics,

17  short-term or otherwise.  Plaintiffs cite two studies involving carrageenan.  *See id.* ¶ 44.  One

18  focused exclusively on "the *combination of high fat diet and carrageenan*," while the other used

19  animal studies to explore the question whether "dietary exposure to carrageenan *may* contribute to

20  the increasing worldwide prevalence of glucose intolerance and insulin resistance."  *Id.* ¶ 44 n. 57

21  (emphasis added).

22  Plaintiffs' two maltodextrin-related studies are likewise inapt, *see id.* ¶ 45.  The first

23  acknowledged the "effects of consuming low-calorie sweeteners such as sucralose *are widely*

24  *debated*," while the second merely endorsed a "suggest[ion] that sucralose consumption alters the

25  metabolism" when combined with ingredients like maltodextrin.  *See id.* ¶ 45 n.61.  Suggestions

26  are insufficient support for any causation theory.  Thus, none of these four additional studies

27

28

8

1   endorses a causal link between any of the disputed ingredients and adverse health effects for

2   diabetics.

3   　　　In sum, Plaintiffs' assertion that these ingredients have been linked causally to metabolic

4   disorders is not borne out by the studies incorporated in their Amended Complaint.   More

5   importantly, even by Plaintiffs' account, none of the studies show that the Glucerna products fail

6   to "help minimize blood sugar spikes relative to high glycemic carbohydrates," as advertised.

7   　　　**E.   Plaintiffs' Allegations About Their Purchases of Glucerna**

8   　　　Plaintiffs' Amended Complaint is also light on details about their personal experiences

9   with the Glucerna products.   The three Plaintiffs—Steven Prescott, Marleen Villarreal, and Omar

10   Masry—all identify themselves as California consumers who have purchased one or more

11   Glucerna product variants.   *See* AC ¶¶ 21(b), 22(b), and 23(b).   Plaintiffs Prescott and Villarreal

12   each allege that they suffer from diabetes, while Plaintiff Masry alleges that he "believes he has a

13   familial history of diabetes."   *Id.*   Each Plaintiff claims to have "understood the Products' labels

14   and advertising to mean that the Products would be suitable for him [or her]" as an individual

15   seeking to "manag[e]," "regulate," or "maintain" their "blood sugar levels."   Plaintiff Masry

16   ventures that he thought the products would help "prevent type-2 diabetes," while the other two

17   allege that they believed the products to be suitable for individuals who already have diabetes.   *See*

18   *id.* ¶¶ 21(c), 22(c), and 23(c.).   In a similarly conclusory fashion, each Plaintiff alleges that they

19   "intend[] to purchase the Products again in the future if he [or she] could be sure the Products were

20   truthful and compliant with California and federal consumer protection laws."   *See id.* ¶¶ 21(a)-

21   (e), 22(a)-(e), and 23(a)-(e).

22   　　　Plaintiffs do not support these vague allegations with any actual facts establishing how, if

23   at all, Glucerna fell short of its labels' promises.   They do not allege anything about how Glucerna

24   affected their blood sugar.   They do not allege that Glucerna failed to "minimize blood sugar

25   spikes" after consumption.   And they certainly do not allege that Glucerna failed to "minimize

26   blood sugar spikes" relative to the "high glycemic" meals or snacks it is intended to replace.

27

28

1  Instead, Plaintiffs rely entirely on their contention that they believed Glucerna to be generally

2  "suitable" for diabetics and that—according to their reading of the scientific literature—it is not.

3       On this threadbare basis, Plaintiffs assert violations of the California Consumers Legal

4  Remedies Act ("CLRA"), the California False Advertising Law ("FAL"), and the California

5  Unfair Competition Law ("UCL," and collectively, the "California Claims"), as well as claims for

6  breach of express warranty and unjust enrichment/restitution.

7  **ARGUMENT**

8       To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

9  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

10 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

11 "[A]llegations in a complaint [ ] may not simply recite the elements of a cause of action, but must

12 contain sufficient allegations of underlying facts to give fair notice and to enable the opposing

13 party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

14      Where a complaint is "grounded in fraud," Rule 9(b) of the Federal Rules of Civil

15 Procedure applies to the "pleading . . . as a whole." *Kearns v. Ford Motor Co.*, 567 F.3d 1120,

16 1125 (9th Cir. 2009).  Under Rule 9(b), "the circumstances constituting fraud or mistake" shall be

17 "state[d] with particularity."  Fed. R. Civ. P. 9(b).  A plaintiff cannot evade this heightened

18 standard by packaging a UCL claim as one for "unfair" rather than "fraudulent" conduct.  Claims

19 under the "unfair" prong are still subject to Rule 9(b) when "grounded in fraud."  *E.g.*, *Kearns*,

20 567 F.3d at 1127.

21      Each of Plaintiffs' claims is "grounded in fraud" for purposes of Rule 9(b).  Each count is

22 premised on Abbott's purportedly fraudulent marketing of Glucerna.  Plaintiffs' CLRA claim rests

23 on the contention that Abbott "represent[ed] that the Products have 'characteristics, …uses [or]

24 benefits…which they do not have,'" that they "are of a particular standard, quality, or

25 grade…[when] they are of another," that Abbott advertised "the Products 'with [the] intent not to

26 sell them as advertised,'" *see* AC ¶ 97, and that such actions were "malicious, fraudulent, and

27 wanton."  *Id.* ¶ 99.  Plaintiffs' UCL claim also rests on their allegation that Abbott engaged in a

28

10

1  "deliberately fraudulent marketing scheme" because it did "not have any reasonable basis for the

2  claims about the Products made in Defendant's advertising and on Defendant's packaging or

3  labeling of the Products." *Id.* ¶ 116.  Indeed, Plaintiffs expressly make a claim under the UCL's

4  "Fraudulent" prong.  *See id.* ¶¶ 134–42.  Finally, Plaintiffs' unjust enrichment/restitution claim

5  alleges Abbott obtained a benefit through Plaintiffs' purchase of Glucerna through "fraudulent,

6  misleading, and deceptive representations."  *See id.* ¶ 161.  Accordingly, Plaintiffs' Amended

7  Complaint is subject to the heightened standard of Rule 9(b).

8  **I.      Plaintiffs Fail To Allege Any Fraudulent Statement About Glucerna**

9         Plaintiffs' statutory claims require a plausible allegation that "reasonable consumers" are

10  "likely to be deceived" by Glucerna's labels when they are read in their entirety.  The Amended

11  Complaint lacks any such allegation.  As any reasonable consumer would conclude, the Glucerna

12  labeling represents only that the products will "help minimize blood sugar spikes" in the short term

13  "compared to high glycemic carbohydrates."  Plaintiffs' claims are premised on their alleged

14  expectation that the Glucerna products would provide diffuse, long-term preventive health

15  benefits—a promise that no reasonable consumer would read into the labeling.  Moreover,

16  Plaintiffs' theory about the ingredients' health impacts is not only irrelevant, but wrong, as

17  Plaintiffs' cited studies do not support any causal link between the disputed ingredients and

18  adverse health outcomes.

19         **A.  The Labeling Claims Clearly Identify the Discrete Benefits Offered by the**

20              **Products**

21         The fundamental problem with Plaintiffs' Amended Complaint is its failure to allege that

22  Glucerna fell short of the actual representations on its label.  Plaintiffs' consumer fraud claims "are

23  governed by the 'reasonable consumer' standard," which requires that "a significant portion of the

24  general consuming public or of targeted consumers, acting reasonably in the circumstances, could

25  be misled" by the challenged communication. *McGinity v. Proctor & Gamble Co.*, 69 F.4th 1093,

26  1097 (9th Cir. 2023).  This "objective" standard demands more than "a mere possibility" that the

27  disputed representation "might conceivably be misunderstood by [a] few consumers viewing it in

28

an unreasonable manner." *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019).  When applying the standard, courts must account for the "contextual inferences regarding the product" that a reasonable consumer would make.  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021); *Becerra*, 945 F.3d at 1228 (court must "consider the [representation] in its proper context").  If a court "can conclude as a matter of law that members of the public are not likely to be deceived," *Werbel v. Pepsico, Inc.*, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010), the complaint must be dismissed.  *See, e.g., Moore*, 4 F.4th at 880–86; *Becerra*, 945 F.3d at 1228–31; *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965–67 (9th Cir. 2016).

Unless a front label claim is "unambiguously deceptive," reasonable consumers can be expected to consult clarifying information on the back label.  *See, e.g., McGinity*, 69 F.4th at 1099 ("We hold that when, as here, a front label is ambiguous, the ambiguity can be resolved by reference to the back label."); *Brand v. KSF Acquisition Corp.*, 2023 WL 3225409, at *4 (S.D. Cal. Mar. 17, 2023) ("To determine whether a promotion is likely to mislead a reasonable consumer, courts consider the context of the 'promotion as a whole.'" (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995)); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) (affirming dismissal with prejudice of CLRA, FAL, and UCL claims and rejecting the plaintiff's attempt to interpret words on a product's label out of context).  If the back label clarifies the ambiguity, the label is not deceptive as a matter of law.  *McGinity*, 69 F.4th at 1098.

Here, the Amended Complaint accuses Abbott of misleading consumers with the statements that Glucerna (1) "help[s] manage blood sugar"; and (2) is "[scientifically] designed for people with diabetes."[6]  But as set forth *supra*, those statements do not appear in a vacuum.  Rather, the first statement is accompanied by an orbital, which directs consumers to the further

---

[6] Although the Amended Complaint also makes fleeting reference to the claim that Glucerna is the "#1 Doctor Recommended Brand," AC ¶ 9, Plaintiffs offer no factual allegations attacking the truth of this claim.  For example, they do not allege that any competitive product is recommended by doctors more than Glucerna.  Instead, Plaintiffs' Amended Complaint focuses entirely on the Glucerna labels' claim that the products are helpful to blood sugar management and suitable for individuals with diabetes.

explanation that the Glucerna products "help[] minimize blood sugar spikes in people with diabetes compared to high glycemic carbohydrates."  Other aspects of the label also reinforce this explanation.  The clock image next to the claim "Made with CARBSTEADY" highlights the short-term nature of Glucerna's blood sugar impacts, while the description of the product as a "meal or snack replacement" highlights that Glucerna offers these benefits *relative* to higher-glycemic alternatives.  Given all this available clarifying information, Plaintiffs "cannot simply look to the statement on the front panel, ignore the asterisk, and claim [they] ha[ve] been misled."  *Whiteside v. Kimberly-Clark Corp.*, 2023 WL 4328175, at *4 (C.D. Cal. June 1, 2023) (citation omitted); *see also Dinan v. SanDisk LLC*, 2020 WL 364277, at *8 (N.D. Cal. Jan. 22, 2020), *aff'd*, 844 F. App'x 978 (9th Cir. 2021) ("Asterisks . . calls the consumer's attention to the fact that there is supplemental information on the package that the consumer should read.").

A reasonable consumer reading Glucerna's label would therefore interpret it to mean just what it says:  that Glucerna helps reduce short-term blood sugar spikes *relative to* snacks or meals with high glycemic carbohydrates.  Indeed, even in the absence of an asterisk and clarifying note, courts have consistently reached a similar conclusion when evaluating nutritional claims on "sugar-alternative" products like Glucerna.  AC ¶ 10.  In *Geffner v. Coca-Cola,* 928 F.3d 198 (2d Cir. 2019), the Court of Appeals affirmed dismissal of the plaintiffs' complaint, which alleged that the use of the term "diet" on a diet soft drink was misleading when the beverage purportedly failed to promote weight loss.  The court explained that in context, the term "diet" had "a primarily relative (rather than absolute) meaning . . . connot[ing] simply that the 'diet' version of the drink is lower in calories than the 'non-diet' version."  *Id.* at 201.  Courts in this Circuit have reached similar results.  *See Becerra v. Dr. Pepper/Seven Up, Inc*., 2018 WL 3995832, at *4 (N.D. Cal. Aug. 21, 2018), *aff'd*, 945 F. 3d 1225 (9th Cir. 2019) (noting courts analyze "diet" soda claims as "relative" health claims and that they must be compared "to the non-diet variant of the same brand").  Here, Glucerna's label is even clearer about the relative nature of its blood-sugar claims.  It dispels any possible doubt with the explanation that it minimizes blood-sugar spikes "compared to high glycemic carbohydrates."

1  Thus, as a matter of law, the Glucerna label communicates to reasonable consumers only

2  that it will minimize short-term blood-sugar spikes relative to high-glycemic meals or snacks.

3  Because Plaintiffs have utterly failed to allege that that message is misleading, the Court should

4  dismiss the Amended Complaint with prejudice.

5  ## B.  *Horti* is of No Help to Plaintiffs

6  The Ninth Circuit's decision in *Horti v. Nestle Healthcare Nutrition, Inc.*, 2023 WL

7  8613601 (9th Cir. Dec. 13, 2023)—which involved a challenge to the labeling of another

8  nutritional drink, BOOST Glucose Control—is not to the contrary.  There, the dispute turned on

9  whether the plaintiffs' allegations at the pleading stage were "sufficient to show that a reasonable

10  consumer could expect the product to exert ***some benefit*** on the control and regulation of blood

11  sugar," based on the product labeling.  *Id.* at *1 (emphasis added).  The plaintiffs' complaint took

12  issue with the phrase "Glucose Control" in the product name, as well as the phrases "helps manage

13  blood sugar" and "designed for people with diabetes," which appeared elsewhere on the front label.

14  *Id.*  The court considered the messages conveyed by these statements in their full context, taking

15  note of the "fact that [BOOST Glucose Control] was placed in stores and on websites alongside

16  legitimate diabetes treatments."  *Id.* at *2.  The court deemed the plaintiffs' allegations sufficient

17  to support their claim that "a reasonable consumer could expect [BOOST Glucose Control] to exert

18  ***some benefit*** on the control and regulation of blood sugar."  *Id.*  (emphasis added).

19  That is not the issue before this Court.  Abbott does not dispute that, based on Glucerna's

20  labeling, reasonable consumers "could expect [Glucerna] to exert some benefit" to blood sugar

21  management.  The problem for Plaintiffs is that the Glucerna label explicitly and clearly identifies

22  just what benefit it provides:  the product "helps minimize blood sugar spikes in people with

23  diabetes compared to high glycemic carbohydrates."  Numerous other components of the label

24  reinforce this discrete claim.  Accordingly, a reasonable consumer would expect Glucerna to offer

25  that particular blood sugar "benefit," and nothing more.  Because Plaintiffs have not plausibly

26  alleged that that claim is misleading, their Amended Complaint does not state a claim for relief.

27

28

1     In *Horti*, the Ninth Circuit did not reach the question of what specific blood-sugar-related
2 benefit a consumer might expect based on the labeling of BOOST Glucose Control. That is why
3 its decision has no bearing on the motion now before this Court. As it happens, however, the
4 labeling at issue in *Horti* was far less precise about the nature of the product's blood-sugar benefits
5 than the Glucerna labeling at issue here. *First*, and most importantly, the disputed claims "helps
6 manage blood sugar" and "designed for people with diabetes" on BOOST Glucose Control were
7 not accompanied by an asterisked explanatory note, as they are here. *See generally* Third
8 Amended Complaint and Nestle Motion to Dismiss, *Horti v. Nestle Healthcare Nutrition, Inc.*, No.
9 4:21-cv-09812-PJH, (N.D. Cal. Aug. 1 and 29, 2022), ECF Nos. 29 and 32. Indeed, the label
10 offered no explanation whatsoever of the manner in which the products "help[ed] manage blood
11 sugar." *Id. Second*, the disputed BOOST Glucose Control label did not include the other clarifying
12 elements that the Glucerna label does, such as the word "replacement" to clarify the relative nature
13 of the benefit; or the picture of a clock to clarify the short-term nature of the benefit. *Id. Third*,
14 unlike here, the product had "Glucose Control" in the title—again without explanation of the
15 product's mechanism of action. Thus, even if the *Horti* court had considered the issue of what
16 blood-sugar benefits the product label communicated (which it did not), its decision would not
17 control here. In sum, *Horti* lends no support to Plaintiffs' position.

### C. Plaintiffs' Alternative Interpretations of the Label Are Unreasonable

19     Unable to plausibly allege that Glucerna fell short of the representations on its label,
20 Plaintiffs complain instead about Glucerna's failure to deliver on claims it never made. Plaintiffs
21 say they were disappointed to learn that Glucerna contains sucralose, maltodextrin, and
22 carrageenan, having apparently believed otherwise. But Plaintiffs cannot plausibly blame the
23 Glucerna label for instilling this belief. They do not and cannot claim that a reasonable consumer
24 would interpret the phrase "helps manage blood sugar" to mean "free of sucralose, maltodextrin,
25 and carrageenan." Nor can they point to any other component of the label that suggests such a
26 message. On the contrary, the FDA has expressly endorsed the use of sucralose in products that,
27 like Glucerna, are intended for use in blood sugar management. 21 C.F.R. § 105.3(a)(2). Thus, if

anything, Glucerna's labeling statements about blood-sugar management would alert a reasonable consumer that Glucerna **does** contain sucralose.

Moreover, to the extent Plaintiffs had any uncertainty about this point, they could have resolved it by simply reading the ingredient list, which discloses all three of the disputed ingredients. As noted above, the Ninth Circuit has held that unless a front label is "unambiguously deceptive," it cannot be actionably misleading, so long as "the back label[]" makes the product feature "clear to a reasonable consumer." *McGinity*, 69 F.4th at 1099. Plaintiffs do not and cannot allege that Glucerna's front labels "unambiguously" promised a product free of sucralose, carrageenan, or maltodextrin, nor can they dispute that the ingredient list resolved any potential ambiguity on that score. *McGinity*, 69 F.4th at 1098. Accordingly, a reasonable consumer could not interpret the product labels to guarantee a product free of these ingredients.

Plaintiffs also claim to have been dismayed to realize that, according to their reading of the scientific literature, sucralose "negatively affects pancreatic beta cells, promotes insulin resistance, destabilizes glucose absorption, causes obesity, and harms the gut microbiome" when consumed over the long term. AC ¶ 10. In light of this determination, they now allegedly feel misled by Glucerna's representations that the products "aid in blood sugar management" and, in Mr. Prescott's and Ms. Villarreal's case, are "suitable for people with diabetes." *Id.* ¶¶ 21-23.

Even if Plaintiffs' reading of the scientific literature were sound (it is not), this theory likewise seeks to hold Glucerna accountable for promises it never made. As set forth above, Glucerna's labeling describes the product as a "snack or meal replacement" that "helps blood sugar management" ***by "help[ing] minimize blood sugar spikes compared to high glycemic carbohydrates."*** The label does not promise consumers any other benefits for diabetes management or blood sugar regulation. It does not guarantee any benefits to consumers' "pancreatic beta cells," "insulin resistance," "glucose absorption," body weight, "gut microbiome," or other factors purportedly affecting diabetes management. It does not purport to alleviate the symptoms of diabetes or eliminate its underlying causes. In other words, it offers consumers **one** discrete**,** short-term blood-sugar-management benefit relative to high-glycemic

carbohydrates.  Yet Plaintiffs now take Glucerna to task for failing to deliver every conceivable benefit that could possibly bear on diabetes or blood-sugar management.  That is not an expectation of the product that any reasonable consumer would share.

Finally, Plaintiff Omar Masry complains that he purchased Glucerna with the expectation that it would help "prevent type-2 diabetes," and that he now believes it has no such effect.  This expectation, too, is patently unreasonable.  As Plaintiffs acknowledge, the products are expressly marketed as "designed for people with diabetes."  AC ¶ 9.  Nothing on the labels indicates that Glucerna will prevent consumers from developing diabetes in the first place.  Plaintiffs' fanciful interpretations of the product label cannot support a claim that the label is misleading to reasonable consumers.

### C.  The Amended Complaint Makes No Plausible Allegation that Sucralose, Maltodextrin, or Carrageenan Cause Health Problems for Diabetics

Plaintiffs' Amended Complaint cites a series of studies that, in their view, call into question the general healthiness of sucralose and other ingredients when consumed over the long term.  Because none of these studies bears on the actual claims on Glucerna's labeling, Plaintiffs' reliance on these studies is misplaced.  Accordingly, the Court need not evaluate the plausibility of Plaintiffs' *non sequitur* claim that these studies establish a link between the disputed ingredients and various ill health effects.  Even if that claim were plausible, it is irrelevant, because no reasonable consumer would interpret the Glucerna label as making any claim about that subject.

On top of that, however, Plaintiffs' health-related contentions are ***also*** not plausibly supported by the studies they reference.  Plaintiffs pile inference upon inference to suggest that the challenged ingredients are causally linked to adverse health outcomes.  But none of the studies they rely upon establishes any such link.  In a series of cases pertaining to diet soft drinks, the courts rejected plaintiffs' similar theory of a link between diet soft drinks and adverse health effects.  As several courts concluded, "the studies point[ed] only to a non-causal association between NNS consumption and weight gain (or related health problems)" and many even "[e]xpressly disclaim[ed] any generalizable causal conclusion."  *Manuel v. Pepsi-Cola Co.*, 2018

WL 2269247, at \*10 (S.D.N.Y. May 17, 2018), *aff'd*, 763 Fed. App'x 108 (2d Cir. 2019); *see also, e.g.*, *Geffner v. Coca-Cola Co.*, 343 F. Supp. 3d 246, 253–54 (S.D.N.Y. 2018) ("Nor do the studies cited in the FAC, taken in the light most favorable to the plaintiffs, show that consumption of aspartame **increases the risk** that a consumer will gain weight or develop hyperglycemia" because none "show a causal link between the aspartame in Diet Coke and risk of weight gain or health problems; indeed, many caution against a finding of causality." (emphasis in original)); *Becerra v. Dr Pepper/Seven Up, Inc.*, 2018 WL 1569697, at \*6 (N.D. Cal. Mar. 30, 2018) (finding studies cited in complaint "do not allege causation at all—at best, they support merely a correlation or relationship between artificial sweeteners and weight gain, or risk of weight gain" but "correlation is not causation, neither for purposes of science nor the law"). So too here, Plaintiffs have failed to allege a causal link between the challenged ingredients and any undesirable health outcome.

\*\*\*

The Glucerna labeling accurately highlights one discrete, short-term benefit to blood sugar management as compared with high glycemic alternatives. No reasonable consumer would interpret the label as promising anything more. And Plaintiffs do not allege that Glucerna failed to deliver on that promise. Instead, they base their Amended Complaint on ingredient- and health-related representations that no reasonable consumer would take away from the Glucerna labeling. They take Glucerna to task for failing to deliver diffuse health benefits that the labeling does not promise. And even that inapposite claim is based on a flawed and implausible interpretation of the scientific literature. These fatal defects warrant dismissal of the Amended Complaint.

## II.   Plaintiffs Lack Standing to Seek Injunctive Relief

Plaintiffs' Amended Complaint should be dismissed in its entirety for failure to state a claim. In addition, Plaintiffs lack standing to seek injunctive relief because they cannot allege a "real or immediate threat that [they] will be wronged again" in a similar way. *Urban v. Tesla, Inc.*, 2023 WL 6796021, at \*5 (N.D. Cal. Oct. 13, 2023) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…if unaccompanied by any continuing, present adverse effects." *Id.*

1   (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).  In product-labeling cases such as this,

2   a plaintiff seeking injunctive relief must therefore establish that (1) she wishes to buy the product

3   again if it is improved to conform to its label; but (2) without an injunction, she has "no way of

4   knowing" whether the improvement has occurred, because she cannot "rely on [the defendant's]

5   representations of its product."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 972 (9th Cir.

6   2018).  Thus, in *Davidson*, the plaintiff alleged that she wanted to resume buying the defendant's

7   wipes if they were one day reformulated to be truly "flushable," as their label claimed.  But without

8   an injunction, she lacked any way of "determin[ing] prior to purchase" whether this improvement

9   had occurred.

10          Plaintiffs here are not in that situation.  Indeed, they do not even allege that they wish to

11   buy Glucerna if it is improved in the future.  They explain instead that they wish to buy Glucerna

12   in the future if they can "be sure that the [product labels] are truthful and compliant with California

13   and federal consumer protection law."  AC ¶¶ 21-23. In other words, they would resume buying

14   Glucerna even without any changes to the products, if only they could be confident that the

15   products' labels were truthful and "compliant" with consumer protection law.  The Ninth Circuit

16   has held that this sort of "abstract interest in compliance with labeling requirements" cannot confer

17   standing to seek injunctive relief.  *See In re Coca-Cola Prod. Mktg. & Sales Practices. Litig. (No.*

18   *II)*, 2021 WL 3878654, at *1–2 (9th Cir. Aug. 31, 2021).  The court thus held that the plaintiffs in

19   *Coca-Cola*, who averred that they wished to purchase the product in question if they could be

20   assured it was "properly labeled," lacked standing to seek injunctive relief.  This Court should

21   reach the same result.

22          This deficiency in Plaintiffs' Amended Complaint is incurable.  Even if they tried,

23   Plaintiffs could not plausibly allege that they are at risk of the ongoing informational injury

24   identified in *Davidson*.  Unlike that plaintiff, they already have an easy way of "determin[ing]

25   prior to purchase" whether Glucerna has been improved to remove the offending ingredients,

26   because those ingredients are all disclosed on the product's back-panel ingredient list.  Therefore,

27

28

with or without an injunction, Plaintiffs are not experiencing any ongoing deprivation of information relevant to their purchasing decision.

Indeed, for this reason, courts in this Circuit routinely reject claims for injunctive relief from plaintiffs who can educate themselves about the disputed product feature by reading the product label. *See Martinez v. Mead Johnson & Co., LLC,* 2022 WL 15053334, at *8 (C.D. Cal. Oct. 22, 2022) (finding plaintiff lacked standing to seek injunctive relief because she "now knows" that she can look at the product's ingredient list to "dispel any confusion."); *Matic v. U.S. Nutrition, Inc.*, 2019 WL 3084335, at *7–8 (C.D. Cal. Mar. 27, 2019) (finding plaintiff lacked standing for injunctive relief because "[w]hile he complains that the size and location of the weight information make it difficult for unsuspecting consumers to find and read, it is clear that *he* knows precisely where to find it" and he is unlikely "to be deceived by the size of the protein powder containers in the future"). This Court should reach the same result. Plaintiffs' claims for injunctive relief should be dismissed.

### III.   Plaintiffs' Ancillary Claims Also Fail

Finally, Plaintiffs' claims for breach of warranty and unjust enrichment are likewise defective. "A plaintiff asserting a breach of warranty claim must allege facts sufficient to show that: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Mattero v. Costco Wholesale Corp.*, 336 F. Supp. 3d 1109, 1115 (N.D. Cal. 2018). In false advertising matters, courts often analyze express warranty claims the same as California consumer protection claims, including whether plaintiff met the reasonable consumer test. *See Legrand v. Abbott Labs.*, 655 F.Supp.3d 871, 896 (N.D. Cal. 2023) (citing collection of cases). Plaintiffs' express warranty claim should be dismissed for the same reasons as their California statutory claims.

Plaintiffs' unjust enrichment claims suffer from similar defects. Unjust enrichment claims that are merely derivative of deficient claims under the CLRA, UCL, and FAL are routinely dismissed. *See, e.g.*, *Choon's Design, LLC v. ContextLogic Inc.*, 2020 WL 6891824, at *5 n.4

1   (N.D. Cal. Nov. 24, 2020) ("Plaintiff's unjust enrichment claim also fails because it is a derivative

2   cause of action."); *Frison v. Accredited Home Lenders, Inc.*, 2011 WL 2729241, at *5 (S.D. Cal.

3   July 13, 2011) ("Because all other claims . . . are dismissed, Plaintiff's claim for unjust enrichment

4   is also dismissed . . . ."). Plaintiffs' unjust enrichment claim fails as derivative of their California

5   Claims, which should be dismissed for the reasons discussed above.

6         Furthermore, Rule 9(b) applies to "unjust enrichment claims based in fraud." *Mack v. LLR,*

7   *Inc.*, 2019 WL 1873294, at *9 (C.D. Cal. Feb. 6, 2019). Plaintiffs' unjust enrichment claim relies

8   on Abbott having obtained a benefit through alleged "fraudulent, misleading, and deceptive

9   representations," *see* AC ¶ 161. It must therefore comply with Rule 9(b), but Plaintiffs failed to

10  allege the underlying circumstances of fraud "with particularity." *See Mack v. LLR, Inc.*, 2018

11  WL 6927860, at *6, *14–15 (C.D. Cal. Aug. 15, 2018) (dismissing unjust enrichment claim where

12  plaintiffs "failed to plead the when, what, and who of the alleged misrepresentations"). For this

13  reason too, Plaintiffs' unjust enrichment claim fails.

14        Finally, if Plaintiffs' breach of express warranty claim is not dismissed, Plaintiffs' unjust

15  enrichment claim should be dismissed because a plaintiff cannot invoke "state law to assert an

16  unjust enrichment claim while also alleging an express contract." *Roper v. Big Heart Pet Brands*,

17  510 F. Supp. 3d 903, 924 (E.D. Cal. 2020) (citations omitted). A breach of an express warranty

18  claim is the equivalent of an express contract. *See id.* at 924–25. If Plaintiffs' express warranty

19  claim survives dismissal, Plaintiffs' unjust enrichment claim should be dismissed.

20                                 **CONCLUSION**

21        For the foregoing reasons, Abbott respectfully requests that the Court dismiss the Amended

22  Complaint with prejudice.

23

24

25

26

27

28

Respectfully submitted,

Dated: March 6, 2024                    By: */s/ Matthew D. Powers*

Matthew D. Powers
O'MELVENY & MYERS LLP

William F. Cavanaugh, Jr.
Jane Metcalf (*pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP

*Attorneys for Defendant Abbott Laboratories*

DEF. ABBOTT'S MOTION TO DISMISS AC (CASE NO.: 5:23-CV-04348-PCP)