**CLARKSON LAW FIRM, P.C.**
Shireen M. Clarkson (SBN 237882)
*sclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
Kelsey J. Elling (SBN 337915)
*kelling@clarksonlawfirm.com*
Ryan D. Ardi (SBN 348738)
*rardi@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN PRESCOTT, MARLEEN VILLARREAL, OMAR MASRY individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ABBOTT LABORATORIES,<br><br>Defendant. | Case No.  5:23-cv-04348-PCP<br><br>CLASS ACTION<br><br>Assigned to Hon. P. Casey Pitts<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Hearing Information<br>Date:   May 23, 2024<br>Time:   10:00 a.m.<br>Ctrm:   8, 4th Floor<br><br>Compl. Filed:  August 24, 2023<br>FAC Filed:      December 22, 2023 |

Plaintiffs Steven Prescott, Marleen Villarreal, and Omar Masry ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their counsel Shireen M. Clarkson, Bahar Sodaify, Kelsey J. Elling, and Ryan Ardi of Clarkson Law Firm, P.C., hereby submit the following memorandum in opposition to Defendant Abbott Laboratories' ("Defendant") Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") ("Motion").

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

# <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................. 2

    A.   The False and Deceptive Health Claims are Material to Consumers' Purchasing Decisions............................................................................................................ 2

    B.   Plaintiffs Reasonably Relied on the Products' False and Deceptive Health Claims....................................................................................................... 3

III. LEGAL STANDARD ........................................................................................ 4

IV.  ARGUMENT ...................................................................................................... 5

    A.   Reasonable Consumers Are Deceived by the Products' Health Claims ................. 5

        1.   The Reasonable Consumer Standard ............................................. 6

        2.   The Health Claims Deceive Reasonable Consumers to Believe the Products are Suitable for Diabetics and Can Help Manage Blood  Sugar .. 7

        3.   Defendant's Interpretation of the Products' Labels is Legally and Factually Incorrect ..................................................................... 9

            i.    Whether Consumers Read the Disclaimer is a Fact Question ......... 9

            ii.   Defendant's Interpretation of the Labels Does Not Control .......... 10

            iii.  Consumers are Not Required or Expected to Read Side/Back Labels ....................................................................................... 11

            iv.   Defendant's Interpretation of the Labels Is Factually Flawed ....... 13

    B.   Plaintiffs' Claims Are Plausible ......................................................... 15

        1.   Plaintiffs' Allegations Satisfy Rule 9(b) ................................... 15

        2.   Plaintiffs' Studies Support Their Allegations that Defendant's Health Claims Are False, Deceptive, and Misleading ............................ 15

    C.   Plaintiffs Have Standing to Seek Injunctive Relief.................................. 19

    D.   Plaintiffs Plausibly Allege Breach of Warranty and Unjust Enrichment.............. 23

V.   DEFENDANT'S REQUEST FOR JUDICIAL NOTICE SHOULD BE DENIED ......... 24

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

VI.    CONCLUSION ................................................................................................. 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

1

## TABLE OF AUTHORITIES

2

Page No.

**Cases**

*Anthony v. Pharmavite*,
    No. 18-cv-02636-EMC,
    2019 WL 109446 (N.D. Cal. Jan. 4, 2019)......................................................9, 10

*Arthur v. United Idus. Corp.*,
    No. 2:17-cv-06983-CAS(SKx),
    2018 WL 1472500 (C.D. Cal. Mar. 23, 2018) ...................................................... 11

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 868 (2009).....................................4, 5, 16

*Becerra v. Dr Pepper/Seven Up, Inc.*,
    No. 17-cv-05291-WHO,
    2018 WL 1569697 (N.D. Cal. Mar. 30, 2018) ..................................................... 19

*Becerra v. Dr. Pepper/Seven-Up, Inc.*,
    No. 17-cv-05921-WHO,
    2018 WL 3995832 (N.D. Cal. Aug. 21, 2018) ..................................................... 14

*Becerra v. Gen. Motors LLC*,
    241 F. Supp. 3d 1094 (S.D. Cal. 2017) ............................................................... 24

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)....................................... 5

*Brady v. Bayer Corp.*,
    26 Cal. App. 5th 1156 (2018)............................................................................... 12

*Branca v. Bai Brands, Ltd. Liab. Co.*,
    No. 3:18-cv-00757-BEN-KSC,
    2019 WL 1082562 (S.D. Cal. Mar. 7, 2019) ....................................................... 20

*Brod v. Sioux Honey Ass'n, Co-op*,
    927 F. Supp. 2d 811 (N.D. Cal. 2013) .................................................. 6, 13, 14, 15

*Brown v. Food for Life Baking Co.*,
    No. 21-cv-10054-TLT,
    2023 WL 2637407 (N.D. Cal. Feb. 28, 2023) ..................................................... 22

*Brown v. Hain Celestial Group, Inc.*,
    913 F. Supp. 2d 881 (N.D. Cal. 2012) ................................................................. 24

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

*Brown v. Van's Int'l Foods, Inc.*,
No. 22-cv-00001-WHO,
2022 WL 1471454 (N.D. Cal. May 10, 2022) ........................................ 21

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) ..................................................................... 4

*Cooper v. Curallux LLC*,
No. 20-cv-02455-PJH,
2020 WL 4732193 (N.D. Cal. Aug. 14, 2020) ...................................... 16

*Corbett v. PharmaCare U.S., Inc.*,
567 F. Supp. 3d 1172 (S.D. Cal. 2021) .................................................. 5

*Davidson v. Kimberly-Clark Corp.*,
873 F.3d 1103 (9th Cir. 2017) ..................................................... 20, 21, 22

*Donaldson v. Read Magazine*,
333 U.S. 178, 68 S. Ct. 591, 92 L. Ed. 628 (1948) .............................. 13

*Erickson v. Pardus*,
551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)...................... 4

*Fernandez v. Atkins Nutritionals, Inc.*,
No. 3:17-cv-01628-GPC-WVG,
2018 WL 280028 (S.D. Cal. Jan. 3, 2018) ............................................ 15

*Gagetta v. Walmart, Inc.*,
646 F. Supp. 3d 1164 (N.D. Cal. 2022) ................................................ 19

*Garrison v. Whole Foods Market Group, Inc.*,
No. 13-cv-05222-VC,
2014 WL 2451290 (N.D. Cal. June 2, 2014) .......................................... 7

*Gasser v. Kiss My Face*,
No. 17-cv-01675-JSC,
2018 WL 4847071 (N.D. Cal. Apr. 4, 2018)..................................... 22, 23

*Geffner v. Coca-Cola Co.*,
343 F. Supp. 3d 246 (S.D.N.Y. 2018) ................................................... 19

*Geffner v. Coca-Cola*,
928 F.3d 198 (2d Cir. 2019).................................................................... 14

*Hesse v. Godiva Chocolatier, Inc.*,
463 F. Supp. 3d 453 (S.D.N.Y. 2020) ................................................... 24

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Horti v. Nestle Healthcare Nutrition, Inc.*,
    No. 22-16832,
    2023 WL 8613601 (9th Cir. Dec. 13, 2023)..................................................................*passim*

*Ibarra v. Pharmagenics LLC*,
    670 F. Supp. 3d 991, 995 (C.D. Cal. 2023)......................................................... 16, 18

*In re Coca-Cola Prods. Mktg. & Sales Practices Litig. (No. II)*,
    No. 20-15742,
    2021 WL 3878654 (9th Cir. Aug. 31, 2021) ..................................................... 21, 22

*Johnson-Jack v. Health-Ade LLC*,
    587 F. Supp. 3d 957 (N.D. Cal. 2022)...................................................................... 7

*Jones v. Nutivia, Inc.*,
    No. 16-cv-00711-HSG,
    2016 WL 5210935 (N.D. Cal. Sept. 22, 2016)......................................................... 23

*Joslin v. Clif Bar & Co.*,
    No. 4:18-cv-04941-JSW,
    2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) ......................................................... 20

*Jou v. Kimberly-Clark Corp.*,
    No. C-13-03075 JSC,
    2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ......................................................... 11

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002) ............................................................................................ 7

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018)................................................................................ 5, 6

*Kochar v. Walmart, Inc.*,
    No. 21-cv-02343-JD,
    2022 U.S. Dist. LEXIS 74788 (N.D. Cal. Apr. 25, 2022)...................................... 21

*Krommenhock v. Post Foods, LLC*,
    255 F. Supp. 3d 938 (N.D. Cal. 2017) .................................................................. 12

*Kutza v. Williams-Sonoma, Inc.*,
    No. 18-cv-03534-RS,
    2018 WL 5886611 (N.D. Cal. Nov. 9, 2018)................................................ 6, 7, 10

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
    95 F. Supp. 3d 284 (D. Conn. 2015)..................................................................... 12

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003)................................................................................. 6

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

*Lee v. City of L.A.*,
  250 F.3d 668 (9th Cir. 2001) ............................................................ 5

*Locklin v. Strivectin Operating Co., Inc.*,
  No. 21-cv-07967-VC,
  2022 WL 867248 (N.D. Cal. Mar. 23, 2022) ...................... 7, 15, 16, 18

*Longest v. Green Tree Servicing LLC*,
  74 F. Supp. 3d 1289 (C.D. Cal. 2015) ............................................ 24

*Madenlian v. Flax USA, Inc.*,
  No. SAVC 13-01748 JVS (JPRx),
  2014 WL 7723578 (C.D. Cal. Mar. 31, 2014) ................................. 10

*Manuel v. Pepsi-Cola Co.*,
  No. 17 Civ. 7955 (PAE),
  2018 WL 2269247 (S.D.N.Y. May 17, 2018) .................................. 18

*Martin v. Tradewinds Bev. Co.*,
  No. CV16-9249 PSG (MRWx),
  2017 WL 1712533 (C.D. Cal. Apr. 27, 2017) ................................. 23

*Martinez v. Mead Johnson & Co., LLC*,
  No. 5:22-cv-00213-JWH-SHK,
  2022 WL 15053334 (C.D. Cal. Oct. 22, 2022) ............................... 22

*Matic v. United States Nutrition, Inc.*,
  No. CV 18-9592 PSG (AFMx),
  2019 WL 3084335 (C.D. Cal. Mar. 27, 2019) ................................. 22

*Mattero v. Costco Wholesale Corp.*,
  336 F. Supp. 3d 1109 (N.D. Cal. 2018) .......................................... 23

*Milan v. Clif Bar & Co.*,
  489 F. Supp. 3d 1004 (N.D. Cal. 2020) .............................. 11, 19, 22

*Nacarino v. Chobani, LLC*,
  668 F. Supp. 3d 881 (N.D. Cal. 2022) ............................................ 22

*Nacarino v. Del Monte Foods, Inc.*,
  No. 22-cv-00892-JST,
  2024 WL 847925 (N.D. Cal. Feb. 28, 2024) ................................... 10

*Olmos v. T. Marzetti Co.*,
  No. LA CV21-03159 JAK (MRWx),
  2022 WL 18358950 (C.D. Cal. Oct. 11, 2022) ............................... 19

*Parks Sch. of Bus., Inc. v. Symington*,
  51 F.3d 1480 (9th Cir. 1995) ............................................................ 4

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

*Paschoal v. Campbell Soup Co.*,
    No. 21-cv-07029-HSG,
    2022 WL 4280645 (N.D. Cal. Sept. 15, 2022) .................................................................... 22

*Pearson v. Target Corp.*,
    No. 11 CV 7972,
    2012 WL 7761986 (N.D. Ill. Nov. 9, 2012) ........................................................................ 18

*Pino v. Birch Benders, LLC*,
    No. 22-cv-02194-TSH,
    2022 WL 4913320 (N.D. Cal. Oct. 3, 2022) ....................................................................... 21

*Prescott v. Bayer HealthCare LLC*,
    No. 20-cv-00102-NC,
    2020 WL 4430958 (N.D. Cal. Jul. 31, 2020) ....................................................................... 7

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2023) ................................................................................ 18

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015) .............................................................................................. 11

*Ries v. Ariz. Bevs. USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012) .................................................................................. 11, 23

*Salazar v. Target Corp.*,
    83 Cal. App. 5th 571 (2022) ................................................................................................. 8

*Scheibe v. Esupplements, LLC*,
    No. 3:22-cv-07165-BEN-MSB,
    2023 WL 7926801 (S.D. Cal. Nov. 16, 2023) .................................................................... 22

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985) .............................................................................................. 15

*Shalikar v. Asahi Beer U.S.A., Inc.*,
    No. LA CV17-02713 JAK (JPRx),
    2017 WL 9362139 (C.D. Cal. Oct. 16, 2017) .................................................................... 10

*Shank v. Presidio Brands, Inc.*,
    No. 17-cv-00232-DMR,
    2018 WL 1948830 (N.D. Cal. 2018) .................................................................................. 23

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) .............................................................................................. 4

*Sinatro v. Barilla Am. Inc.*,
    635 F. Supp. 3d 858 (N.D. Cal. 2022) ...................................................................... 11, 12, 24

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

*Skinner v. Ken's Foods, Inc.*,
   53 Cal. App. 5th 938 (2020) ................................................................. 22

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) .............................................................. 13

*Steinberg v. Icelandic Provisions, Inc.*,
   No. 21-cv-05568-EMC,
   2022 WL 220641 (N.D. Cal. Jan. 25, 2022) ........................................ 11

*Strumlauf v. Starbucks Corp.*,
   192 F. Supp. 3d 1025 (N.D. Cal. 2016) ............................................... 11

*Sultains v. Champion Petfoods United States Inc.*,
   No. 21-cv-00162-EMC,
   2021 WL 3373934, at *10 (N.D. Cal. Aug. 3, 2021) ........................... 10

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ............................................................... 15

*Tucker v. Post Consumer Brands, LLC*,
   No. 19-cv-03993-YGR,
   2020 WL 1929368 (N.D. Cal. Apr. 21, 2020) ................................... 6, 8

*Vasic v. Pat. Health, LLC.*,
   No. 23cv849 AJB (MDD),
   2014 WL 940323 (S.D. Cal. Mar. 10, 2014) ....................................... 16

*Vizcarra v. Michaels Stores, Inc.*,
   No. 23-cv-00468-PCP,
   2024 WL 64747 (N.D. Cal. Jan. 5, 2024) .............................................. 7

*Weinstat v. Detsply Int'l Inc.*,
   180 Cal. App. 4th 1213 (2010) ........................................................... 23

*Weizman v. Talkspace, Inc.*,
   No. 23-cv-00912-PCP,
   2023 WL 8461173 (N.D. Cal. Dec. 6, 2023) .................................. 5, 16

*White v. Kroger Co.*,
   No. 21-cv-08004-RS,
   2022 WL 888657 (N.D. Cal. Mar. 25, 2022) ................................. 16, 24

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) .....................................................*passim*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Woodard v. Labrada,*
    No. EDCV 16-00189 JGB (SPx),
    2017 WL 3309765 (C.D. Cal. Jul. 31, 2017) .......................................................................... 12

*Yumul v. Smart Balance, Inc.,*
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) .................................................................................. 7


## Federal Statutes

21 C.F.R. § 101.14 ............................................................................................................................ 7

21 C.F.R. § 105.3 ............................................................................................................................ 14

Fed. R. Civ. P. 8 ............................................................................................................................ 24

Fed. R. Civ. P. 9 ............................................................................................................................ 15

Fed. R. Civ. P. 12 .................................................................................................................... 3, 5, 7

Fed. R. Evid. 106 ............................................................................................................................ 24

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

## I.     INTRODUCTION

2      Defendant's Glucerna Products are labeled as "scientifically designed for people with

3  diabetes," purportedly the "#1 doctor recommended brand," and promises to "help[] manage blood

4  sugar." The problem the Glucerna Products contain three ingredients (sucralose, carrageenan, and

5  maltodextrin) shown to contribute not only to the exacerbation of diabetes but also to its onset. To

6  combat diabetes, the World Health Organization even specifically recommends against consuming

7  sucralose. Science also shows that the challenged ingredients in the Glucerna Products do not

8  manage blood sugar. They spike it.

9      This case is virtually indistinguishable from the health claims at issue in *Horti v. Nestle*

10 *Healthcare Nutrition, Inc*., where the Ninth Circuit reversed a dismissal of false advertising claims.

11 2023 WL 8613601 (9th Cir. Dec. 13, 2023). Defendant's response to *Horti* is to distort it, claiming

12 it means only that consumers can expect just "some benefit" to diabetic conditions and blood sugar

13 levels based on the at-issue health claims. The Ninth Circuit, however, said reasonable consumers

14 could expect a "positive effect." The challenged ingredients in the Glucerna Products, based on

15 studies detailed in the FAC, have a negative effect. Defendant naturally takes issue with these

16 studies, but its reading cannot be conclusively credited on a motion to dismiss. Defendant will be

17 free to cast its current aspersions (which could be levied at any study) and introduce competing

18 studies, if any exist, during the merits phase.

19      The premise of Defendant's motion also fails for other reasons. Based on an image of half a

20 clock on the front label and a side-label statement—"designed to help minimize blood sugar spikes

21 in people with diabetes compared to high glycemic carbohydrates"—Defendant asserts consumers

22 necessarily would understand the *duration* of the single supposedly positive benefit is limited, that

23 in effect, it promises only to manage blood sugar "spikes" in the short term (with no regard for

24 harmful effects in the long-term). The primary problem for Defendant is that on a motion to dismiss,

25 it cannot be conclusively determined whether reasonable consumers would even read the fine-print,

26 side-label statement, much less how they would understand it in relation to the more prominent

27 promises on the front label. Even if it were proper to conclude on the pleadings that consumers

28 necessarily read it, the FAC specifically alleges this statement is likewise false serving only to

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

further the deception. That's because ingredients in the Products are also shown to "spike" blood sugar—in the short term. Defendant's "duration" argument overlooks these allegations altogether.

Based on the same single side-label statement, Defendant also claims all consumers necessarily would understand that the front label's promises are "relative" to apparently any other "high glycemic carbohydrate" product on the market. But this is just another nuanced understanding that cannot be ascribed conclusively to all consumers on a motion to dismiss. It is also unpersuasive on its face. To credit it would mean *any* "lower" sugar or sugar-free product with carbohydrates could slap a "specifically designed for people with diabetes" to "manage blood sugar" on its front label. Consumers here reasonably expected more. They certainly did not expect a product full of ingredients unsuitable for diabetics and antithetical to the management of blood sugar generally. Defendant's arguments ultimately rise and fall on questions of fact unsuitable for resolution on a motion to dismiss. The motion should therefore be denied in its entirety.

## II.   FACTUAL BACKGROUND

### A.   The False and Deceptive Health Claims are Material to Consumers' Purchasing Decisions

Consumers are increasingly choosing healthier options, fueling the rise of non-nutritive sweeteners (NNS), driven by concerns over obesity, diabetes, and metabolic syndrome, and a preference for lower-calorie, sweeter options. ECF 24 at ¶¶ 26, 27. Sucralose is one such NNS. *Id.* at ¶¶ 26, 27. As awareness regarding the impact of food on health grows, consumers, including the roughly 37.3 million Americans with diabetes, are opting for what they believe are healthier alternatives that assist with blood sugar regulation and diabetes management. *Id.* at ¶ 27. Responding to consumer demand, Defendant prominently labels and advertises the Products[1] with the following Health Claims: "To Help Manage Blood Sugar," "Scientifically Designed for People With Diabetes," and "#1 Doctor Recommended Brand." *Id.* at ¶ 29. These front label Health Claims lead reasonable consumers to mistakenly believe the Products benefit diabetics and manage blood sugar

---

[1] ECF 24 at ¶ 14 ("Products" include: (1) Glucerna Original Shakes in Cream Strawberry, Homemade Vanilla, Rich Chocolate, Chocolate Caramel, and Classic Butter Pecan; (2) Glucerna Hunger Smart Shakes; (3) Glucerna protein Smart Shakes; (4) Glucerna Original Snack Shakes in Homemade Vanilla and Rich Chocolate; and (5) Glucerna Hunger Smart Powder.)

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

levels. *Id.* at ¶¶ 6, 9. These representations amount to express health claims because the Products' labeling claims make a distinct link between the Products and a disease (diabetes) and/or treatment for a disease (manages blood sugar). *Id.* They are also implied health claims to all consumers, including non-diabetics, who seek a product that regulates blood sugar levels and are suitable for those concerned about developing diabetes. *Id.*

Despite the Health Claims, the Products contain surculose, carrageenan, and maltodextrin. *Id.* at ¶¶ 30, 44. Surculose can induce and worsen metabolic syndrome, obesity, and Type II Diabetes, as well as cause blood sugar destabilization (e.g., raising blood sugar). *Id.* at ¶¶ 30-43, 46-50 (citing studies). Specifically, ingestion of sucralose causes blood sugar destabilization by triggering an abnormally high reaction to glucose and causes insulin resistance, which causes high blood sugar and diabetes (or pre-diabetic conditions). *Id.* at ¶¶ 30, 33. Carrageenan is an additive that impairs insulin signaling*,* and maltodextrin is a carbohydrate that negatively influences the gut microbiome and has a glycemic index superseding that of table sugar. *Id.* at ¶¶ 44, 45. In fact, the WHO advises consumers *against* the consumption of sucralose to reduce the risk of noncommunicable diseases such as diabetes. *Id.* at ¶ 46. The Center for Science in the Public Interest ("CSPI") likewise advises against the consumption of sucralose because it is linked to significant health issues including a negative effect on blood sugar, gastrointestinal disorders, leukemia, and other blood cancers. *Id.* at ¶ 47.

Nonetheless, Defendant prominently advertises and labels the Products with Health Claims to target diabetics and those who seek to regulate blood sugar levels. *Id.* at ¶¶ 6, 9, 11, 60, 73. Reasonable consumers, including Plaintiffs, are deceived by the Products' Health Claims to believe it can help them in managing their blood sugar and/or are suitable for their diabetes. *Id.* at ¶ 64.

**B.    Plaintiffs Reasonably Relied on the Products' False and Deceptive Health Claims**

Plaintiff Steven Prescott, a diabetic, purchased the Glucerna Original Shake Homemade Vanilla and Glucerna Original Shake Creamy Strawberry Products, from a Rite Aid in Santa Cruz, California in or around September 2021. *Id.* ¶ at 21. Plaintiff Marleen Villarreal, a diabetic, purchased the Glucerna Original Snack Shake in Homemade Vanilla and Rich Chocolate and the Glucerna Protein Smart Shake in Vanilla and Rich Chocolate, from a Stater Brothers in Colton,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

California on multiple occasions between 2021 and 2023. *Id.* ¶ at 22. Plaintiffs Prescott and Villarreal both relied on the Health Claims when purchasing the Products, desiring products that would be suitable for them as diabetics and would help them in managing their blood sugar levels when consuming the Products. *Id.* ¶¶ 21, 22. Plaintiff Omar Masry purchased the Glucerna Original Shake in various flavors and the Glucerna Smart Shake in carious flavors, from a Target (and other various convenience stores) in Oakland, California on multiple occasions between 2021 and 2022. *Id.* ¶ at 23. Plaintiff Marsy is a non-diabetic concerned about developing diabetes and relied on the Health Claims when making his purchases because he desired a product that would help manage his blood sugar levels. *Id.*

In making their decision to purchase the Products, Plaintiffs relied upon the Health Claims because they reasonably, but incorrectly, believed the Products could help manage blood sugar and/or are suitable for those with diabetic or pre-diabetic conditions, and paid a premium for these benefits. *Id.* at ¶¶ 21-24. But Plaintiffs received Products that do not deliver the advertised benefits and incurred a concrete economic injury because of Defendant's deceptive actions. *Id.* at ¶¶ 21-23, 75 (Plaintiffs and consumers paid a price premium). Plaintiffs would not have purchased the Products, or would have paid less for them, had they known the truth. *Id.* Plaintiffs would also like to purchase the Products in the future but cannot be sure if the Products can and will provide the advertised benefits, including because Plaintiffs are average consumers who are not sophisticated in the ingredients that go into making the Products. *Id.* at ¶ 24.

## III.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Under Rule 12(b)(6), a court must accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A court may dismiss a claim "only where there is no cognizable legal theory" or it lacks "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)). "A claim has facial

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

1   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

2   inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing

3   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Simply put, a complaint is not subject to

4   dismissal so long as it articulates "enough facts to state a claim to relief that is plausible on its face."

5   *Twombly*, 550 U.S. at 570. It is the defendant's burden to demonstrate that the plaintiff has failed to

6   state a claim. *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1194 (S.D. Cal. 2021).

7       Generally, a court does not consider "any material beyond the pleadings" when ruling on a

8   Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001) (overruled on other

9   grounds). A motion to dismiss is "not a procedure for resolving a contest between the parties about

10   the facts and substantive merits of the plaintiff's case" because whether a business practice is

11   deceptive is a question of fact not appropriate for decision on the pleadings. *Williams v. Gerber*

12   *Prods. Co.*, 552 F. 3d 934, 938-39 (9th Cir. 2008); *see also Weizman v. Talkspace, Inc.*, 2023 WL

13   8461173, at *2 (N.D. Cal. Dec. 6, 2023) (on a motion to dismiss, "the Court must take the factual

14   allegations in the complaint as true without considering competing factual allegations presented by

15   the other party"). As the Ninth Circuit has aptly stated, "[i]f defendants are permitted to present their

16   own version of the facts at the pleading stage—and district courts accept those facts as

17   uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to

18   demonstrate a sufficiently 'plausible' claim for relief." *Khoja v. Orexigen Therapeutics, Inc.*, 899

19   F.3d 988, 998-99 (9th Cir. 2018).

20   **IV.   ARGUMENT**

21       **A.   Reasonable Consumers Are Deceived by the Products' Health Claims**

22       Defendant asserts that reasonable consumers are not deceived by the Products' labeling

23   because a front label image of half a clock and a claim on the side label that the Products are

24   "Designed to help minimize blood sugar spikes in people with diabetes compared to high glycemic

25   carbohydrates," supposedly informs consumers that the Products will only deliver a temporary

26   benefit. ECF 29 at 11:9-18.  Defendant's counter assertion is both legally and factually flawed. At

27   the dismissal stage, it is premature to assume consumers would interpret or even notice the side

28   label claim as Defendant suggests, especially given its contradiction by the prominent Health Claims

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

on the front. *Horti*, 2023 WL 8613601, at *1 (in a nearly identical case, defendant "offers contrary interpretations of the product labels, but that disagreement is not appropriate for resolution of a motion to dismiss"); *Williams*, 552 F.3d at 938 (whether a business practice is deceptive is a question of fact). Even if consumers understood this claim as Defendant purports, Plaintiffs' well-pled allegations supported by scientific studies shows the Products ingredients can actually cause short-term blood sugar spikes, a fact that Defendant ignores. ECF 24 at ¶¶ 30, 41. Likewise flawed, is Defendant's assertion that this side label claim would make all consumers realize its front label's promises are only "relative" to any "high glycemic carbohydrate" product. ECF 29 at 13:3-14:4 However, Defendant's own strained interpretation of the reasonable consumer's understanding of the Products' labels (or the FAC) does not control, especially not at the dismissal stage. *Khoja*, 899 F.3d at 998-99 (defendants cannot present their own version of facts); *Kutza v. Williams-Sonoma, Inc.*, 2018 WL 5886611, at *4 (N.D. Cal. Nov. 9, 2018) (finding that the defendant "asks too much, however, when it seeks a determination as a matter of law on the pleadings … that no reasonable consumer would be misled by the cumulative effects of the labeling and marketing alleged in the compliant"). Defendant also ignores Plaintiffs' well-pled allegations that the Products contain ingredients that render the Health Claims false and deceptive, misleading reasonable consumers. Defendant's flawed arguments justify denial of the motion.

### 1.    *The Reasonable Consumer Standard*

Courts apply the "reasonable consumer" standard to determine whether an advertising claim is false or misleading under the UCL, FAL, and CLRA. *Williams*, 552 F.3d at 938. "Under the reasonable consumer standard, [plaintiffs] must show that members of the public are likely to be deceived." *Id.* "[T]he reasonable consumer standard adopts the perspective of the 'ordinary consumer acting reasonably under the circumstances.'" *Brod v. Sioux Honey Ass'n, Co-op*, 927 F. Supp. 2d 811, 828 (N.D. Cal. 2013) (citing to *Lavie Procter & Gamble Co.*, 105 Cal. App. 4th 496, 512 (2003)). Courts consider the challenged representation in the context of the advertisement, labels, or packaging. *Williams*, 552 F.3d at 939-940; *Tucker v. Post Consumer Brands, LLC*, 2020 WL 1929368, at *5 (N.D. Cal. Apr. 21, 2020). California consumer protection laws, "prohibit not only advertising, which is false, but also advertising which, although true, is either actually

misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Vizcarra v. Michaels Stores, Inc.*, 2024 WL 64747, at * 6 (N.D. Cal. Jan. 5, 2024); *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002). "[T]he Court must accept Plaintiffs' view of the reasonable consumer's understanding," not the defendants' attempt to recast it in an unpled manner. *Prescott v. Bayer HealthCare LLC*, 2020 WL 4430958, at *8 (N.D. Cal. Jul. 31, 2020).

Whether reasonable consumers are misled by the Health Claims is a determination that should be resolved on the evidence and not the pleadings. *Vizcarra*, 2024 WL 64747, at *6; *Kutza*, 2018 WL 5886611, at *4. At this juncture, dismissal is appropriate only if, "[v]iewing the facts in the light most favorable to plaintiff," it is "impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1129 (C.D. Cal. 2010) (internal citations and quotations omitted). Notably, cases deciding that no reasonable consumers could be deceived as a matter of law are rare. *Williams*, 552 F. 3d at 939 (dismissal under Rule 12(b)(6) "appropriate" in "rare situation[s]"); *Garrison v. Whole Foods Market Group, Inc.*, 2014 WL 2451290, at *2 (N.D. Cal. June 2, 2014); *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 964 (N.D. Cal. 2022). This is not one of those cases.

### 2. The Health Claims Deceive Reasonable Consumers to Believe the Products are Suitable for Diabetics and Can Help Manage Blood Sugar

As sufficiently alleged, the Products' Health Claims mislead reasonable consumers (with or without diabetic and pre-diabetic conditions) to believe the Products can aid in managing their blood sugar and/or are suitable for their diabetic condition. ECF 24 at ¶ 10 ("reasonable consumers understand the Challenged Health Claims to mean the Products are healthy sugar-alternative drinks and powders that are suitable for, or can aid in, the management of blood sugar generally and for those with diabetes specifically"); *see also id.* at ¶¶ 60-68; *Horti*, 2023 WL 8613601, at *1 (holding that virtually identical health claims mislead reasonable consumers). Yet, the Products include sucralose, carrageenan, and maltodextrin—ingredients unsuitable for diabetics and ineffective in aiding blood sugar management as labeled and advertised. ECF 24 at ¶¶ 30-50, 66 (citing to studies and journals that support Plaintiffs' allegations); *see infra* IV.B.2 (explaining in detail studies cited in Plaintiffs' complaint that support their allegations); *Locklin v. StriVectin Operating Co., Inc.*, 2022 WL 867248, at *4 (N.D. Cal. Mar. 23, 2022) (finding that the plaintiff cited to studies that

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

supported their allegations was enough and that plaintiff did not need to prove anything at the pleadings stage); *Williams*, 552 F. 3d at 939 (this is not a rare situation where dismissal on the pleadings is appropriate). As a result, the Products' Health Claims mislead Plaintiffs and other reasonable consumers into purchasing Products that fail to provide the advertised benefits. *Salazar v. Target Corp.,* 83 Cal. App. 5th 571, 573 (2022) ("[w]hat matters … is how consumers actually behave—how they perceive advertising and how they make decisions") (internal citations omitted); *Tucker*, 2020 WL 1929368, at *5.

Moreover, the Products' misleading Health Claims are precisely what 21 C.F.R. § 101.14 aims to prohibit. Defendant expressly (and by implication) tie the Products to a specific disease (diabetes) and to the control and management of blood sugar levels (a treatment of diabetes). ECF 24 at ¶ 29; 21 C.F.R. § 101.14. Through its labels, Defendant affirmatively states that its Products "help[s] manage blood sugar" and is "formulated specifically for diabetics." ECF 24 at ¶ 6. The Ninth Circuit recently held almost identical health claims, which "specifically reference" diabetes and/or claims to help consumers manage blood sugar, "are sufficient to show that a reasonable consumer could expect the product to exert some benefit on the control and regulation of blood sugar" and have a positive effect on diabetes. *Horti II*, 2023 WL 8613601, at *1. In *Horti*, the Court noted that positioning the products with health and nutritional supplements online and in stores contributed to misleading consumers into believing they were designed for diabetes and blood sugar management. *Horti*, 2023 WL 8613601, at *2. Similarly, Plaintiffs have alleged that the placement of the Products alongside genuine diabetes treatments and supplements reinforces the consumer deception. ECF 24 at ¶ 65 (on websites the Products are categorized under "diabetes management" and "the Products are sold physically in stores placed in the health and nutritional supplement sections adjoining aisles selling diabetes diagnostic equipment and blood glucose tests.")

Defendant tries but cannot distinguish *Horti*. ECF 29, at 14:6-15:17. In *Horti*, the plaintiffs brought a class action against the defendant for deceptively labeling certain of its Nestle Brand Glucose Shakes with the following representations: "Glucose Control," "designed for people with diabetes," and "helps manage blood sugar." *Horti*, 2023 WL 8613601, at *1. The court in *Horti* held that "[a] reasonable consumer could understand these representations to indicate that the product

will have a positive effect on diabetes and blood sugar levels." *Horti*, 2023 WL 8613601, at *1.
Because like, here, the labels in *Horti*, specifically "reference the disease of diabetes and claim to
help consumers … 'manage' blood sugar." *Id.* Even if this Court were to read *Horti* as narrowly as
Defendant improperly does, the Products here do not even provide "some" benefits to consumers.
*Id.* Instead, Plaintiffs have sufficiently alleged that the Products *do not provide any* benefits, even
in the short term. ECF 24 at ¶ 30, fn 16 (consumption of sucralose "causes blood sugar
destabilization by triggering an abnormally high reaction to glucose, causing it to irrationally spike
after consuming a normal meal); *Id.* at ¶ 41 (Plaintiffs cited a study that states that individuals who
consume sucralose have blood sugar and insulin spikes – even in the short term); *see also infra*
IV.A.4 (Plaintiffs explain in detail how Defendant's interpretation of the labels are contrived and
unreasonable); *see infra* IV.B.2 (Plaintiffs explain in detail how they sufficiently alleged the
Products do not provide any of the advertised benefits).

###     3.      *Defendant's Interpretation of the Products' Labels is Legally and Factually Incorrect*

Defendant argues that based on several elements on its Products' labels—such as a distorted
clock symbol on the Products' front label, the term "replacement" alongside a "plus" symbol (which
they call an asterisk), the side label claim "Designed to help minimize blood sugar spikes in people
with diabetes compared to high glycemic carbohydrates," and a nutritional list on the back label—
leads reasonable consumers to believe that the Products provide only short term benefits. ECF 29 at
11:21-22, 13:2-16, 14:1-4; *see supra* IV.A.3. Defendant's argument strains credulity and fails for
the following reasons.

###           i.      Whether Consumers Read the Disclaimer is a Fact Question

As a preliminary matter, Defendant's argument overlooks that the presence of a miniscule
plus sign (or asterisk) and a disclaimer on the side label of the Products' packaging leads to
unresolved factual issues already deemed by courts as too premature for determination as a matter
of law at the pleadings stage. *Anthony v. Pharmavite*, 2019 WL 109446, at *4 (N.D. Cal. Jan. 4,
2019) (whether consumers notice asterisks and/or read disclaimers are questions of fact).
Accordingly, it is a question of fact whether a reasonable consumer would notice the plus sign and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

be led to the disclaimer. *Id.* ("As for the asterisk directing consumers to the disclaimer about biotin deficiency, there are two problems. [T]here is a question of fact whether a reasonable consumer would notice it and follow it to the disclaimer"); *Madenlian v.Flax USA Inc.*, 2014 WL 7723578, at *3, n.3 (C.D. Cal. Mar. 31, 2014) ("the extent to which [an asterisk and] additional language clarifies the ambiguity of the [challenged] representation is a fact question not suitable for resolution" at the pleadings stage).

Even if reasonable consumers checked the side or back panel, the issue of whether they would even notice the disclaimer, presented in smaller font and a less noticeable color, also constitutes a fact question. *Nacarino v. Del Monte Foods, Inc.*, 2024 WL 847925, at * 1 (N.D. Cal. Feb. 28, 2024) ("[T]here is a question of fact as to whether a reasonable consumer would have noticed the disclaimer because it appears on the side panel, in a much smaller font, and in a different less visible color"); *Madenlian*, 2014 WL 7723578, at *1, 3 n.3 (holding that a front label disclaimer followed by an asterisk, which corresponds to fine print at the bottom of the label is much less noticeable that the challenged representation on the front of packaging).

Also, a fact question is the effect of the disclaimer, if any, on consumer understanding. *Sultains v. Champion Petfoods United States Inc.*, 2021 WL 3373934, at *10 (N.D. Cal. Aug. 3, 2021) ("whether a reasonable consumer read the inconspicuous disclaimers that" clarify where the ingredients were sourced from (the main issue) "is, at the very least, a question of fact"). Accordingly, even if a reasonable consumer read the disclaimer identified by Defendant, "it cannot be concluded as a matter of law that the substance of the disclaimer would be sufficient to disabuse the consumer of any misconceptions engendered by the" front label representations. *Id.* at 11 (quoting *Anthony*, 2019 WL 109446, at *4); *Shalikar v. Asahi Beer U.S.A., Inc.*, 2017 WL 9362139, at *3, 8 (C.D. Cal. Oct. 16, 2017) (finding clarifying language on the bottleneck of the beer products did not dispel the front labels misrepresentations).

### ii. Defendant's Interpretation of the Labels Does Not Control

Defendant's own interpretation of the Products' labels does not control and is an improper counter assertion that should be disregarded at the pleadings stage. *Horti*, 2023 WL 8613601, at *1 (defendant "offers contrary interpretations of the product labels, but that disagreement is not

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

appropriate for resolution on a motion to dismiss"); *Kutza*, 2018 WL 5886611, at *4 (finding that the defendant "asks too much, however, when it seeks a determination as a matter of law on the pleadings … that no reasonable consumer would be misled by the cumulative effects of the labeling and marketing alleged in the compliant"). Because when "there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *Steinberg v. Icelandic Provisions, Inc.*, 2022 WL 220641, at *5 (N.D. Cal. Jan. 25, 2022); *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1034 (N.D. Cal. 2016); *Arthur v. United Idus. Corp.*, 2018 WL 1472500, at *6-7 (C.D. Cal. Mar. 23, 2018); *Sinatro v. Barilla Am. Inc.*, 635 F. Supp. 3d 858, 878 (N.D. Cal. 2022) (declining to find as a matter of law that the challenged representations could only mean what the defendant proffered because the plaintiffs sufficiently alleged facts that a reasonable consumer could be misled by the challenged representations); *see also* IV.A.3.iv (even if this Court considers Defendant's interpretation, it is not plausible).

       **iii.**      **Consumers are Not Required or Expected to Read Side/Back Labels**

Defendant wrongly assumes consumers check side and back labels, ignoring Plaintiffs' allegations and Ninth Circuit precedent that consumers are not expected to look past front labels to confirm their accuracy. ECF 29 at 16:3-11; 12:9-13:27; *Williams*, 552 F.3d at 939 ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. . . . We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception."); *Milan v. Clif Bar & Co.*, 489 F. Supp. 3d 1004, 1007 (N.D. Cal. Sept. 28, 2020) (ingredient list does not dispel misleading nature of contradictory front label health and wellness claims); *Sinatro*, 635 F. Supp. 3d at 879 (rejecting defendant's argument that there was a disclaimer on the side of the products' packaging clarifying any confusion on the front label); *Reid v. Johnson & Johnson*, 780 F.3d 952, 958-59 (9th Cir. 2015) (denying dismissal of consumer's challenge to "no trans fat" claim despite the disclosure of partially hydrogenated vegetable oil in the ingredient list); *Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

(N.D. Cal. 2012) (ingredient list revealing synthetic citric acid and high fructose corn syrup does not dispel misleading nature of front label "All Natural" claims); *Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158, at *9 (N.D. Cal. Dec. 10, 2013) ("[U]nder *Williams*, Defendant cannot rely on disclosures on the back or side panels of the packaging to contend that any misrepresentation on the front of the packaging is excused.").

As alleged, reasonable consumers spend roughly 13 seconds to make a purchasing decision and that decision is heavily dependent on a product's front label. ECF 24¶ 64.  In fact, reasonable consumers, including Plaintiffs, do not read the side or back labels when making their purchase decisions, and are not obligated or expected to. *Id*.  They also do not expect the side or back label to contain information that contradicts front label claims. *Id*.; *Sinatro*, 635 F. Supp. 3d at 879  (side label disclaimers did not dispel any deception on the front label); *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 964 (N.D. Cal. 2017) (defendant made health claims and argued that consumers are expected to look at the nutritional facts to dispel any confusion regarding the labels, however, the court rejected this argument "[b]ecause the 'features' on the front of the package could deceive a reasonable consumer, that the actual ingredients were disclosed on the back in the Panel did not defeat the claim on a motion to dismiss") (internal citations omitted); *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156 (2018) ("a back label that did not *confirm* what was on the front label could not defeat a pleading stage challenge to the plaintiff's UCL, CLRA, [FAL,] and warranty claims") (citing *Williams*, 552 F.3d at 939-940); *Woodard v. Labrada*, 2017 WL 3309765, *12 (C.D. Cal. Jul. 31, 2017) (rejecting defendant's argument that the front label statement cannot mislead reasonable consumers because of the list of ingredients contained on the label).

Even if Plaintiffs and other reasonable consumers read the Products' side and back label, they would not possibly know that sucralose, carrageenan, and maltodextrin render the Health Claims false (e.g., the Products cannot manage blood sugar and are not suitable for diabetics). ECF 24 at ¶¶ 16, 29, 59, 60-68; *Krommenhock*, 255 F. Supp. 3d at 964; *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 95 F. Supp. 3d 284, 289 (D. Conn. 2015) (simply listing names of ingredients on the back, without specifying the purpose (or source), does not actually educate consumers what is in the product or clarifies the front label); *Williams*, 552 F.3d at 939-40 (ingredient lists/nutritional

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

facts are to confirm other representations on the packaging, not contradict them). Certainly, nowhere on the front of the Products' labels does Defendant include additional information refuting or narrowing the Health Claims. ECF 24 ¶ 64.  Plaintiffs and other reasonable consumers are also not experts, and they lack the requisite knowledge to know the impact of sucralose, carrageenan, and maltodextrin in the Products. *Id.* at ¶¶ 21-24.  To conclusively credit all consumers with knowledge of the scientific evidence detailed in the FAC on a motion to dismiss would be improper. *Brod*, 927 F. Supp. 2d at 828 (the reasonable consumer standard employs the perspective of an ordinary consumer); *Donaldson v. Read Magazine*, 333 U.S. 178, 189 (1948) (the reasonable consumer does not need to be "exceptionally acute and sophisticated"). Additionally, contrary to Defendant's assertion, Plaintiffs are not alleging that the Products are free from the challenged ingredients, but instead that the Health Claims are false and deceptive due to the inclusion of these ingredients. ECF 29 at 16: 7-11; ECF 24 at ¶ 16.

### iv. Defendant's Interpretation of the Labels Is Factually Flawed

Defendant's interpretation of the labels—that the Products offer only short-term benefits compared to other high glycemic carbohydrate products—is also otherwise flawed and implausible. It unrealistically expects that a reasonable consumer would piece together various ambiguous cues, including a partial clock image, a plus sign leading to a side label disclaimer about minimizing blood sugar spikes in diabetics compared to high glycemic carbohydrates, a nutritional list on the back, and the term "replacement," to somehow deduce the Products' offer only a single benefit, and even then, only in the short-term. But as alleged, to the extent consumers notice and read the disclaimer, it only furthers the consumer deception that the Products are specifically designed for diabetics to help manage blood sugar. ECF 24 at ¶ 63; *Starr*, 652 F.3d at 1216 (when there are two alternative explanations which bring up a question of fact, plaintiff's complaint survives). Defendant also overlooks specific factual allegations that render the statement, as Defendant understands it, false on its face. Plaintiffs pled that individuals who consume sucralose have blood sugar and insulin spikes even in the short term. ECF 24 at ¶¶ 30, 41. Defendant also does not explain how an image of a distorted clock would lead reasonable consumers to conclude the Products' health benefits are short-lived, rather than fast acting, for instance. *Starr*, 652 F.3d at 1216.

Defendant then incorrectly relies on *Geffner* and *Becerra* to argue that the Products deliver the advertised health benefits *relative* to other snacks and meal replacements. ECF 29 at 13:12-14-4. However, the courts held in those cases that the "diet" claims should be considered relative to the *regular* version of the same products, which is not applicable here. *See Geffner v. Coca-Cola,* 928 F.3d 198, 201 (2d Cir. 2019) (court found that "when applied to soft drinks, the label 'diet' carries a primarily relative (rather than absolute) meaning. In other words, it connotes simply that the 'diet' version of the drink is *lower* in calories than the 'non-diet' version of the drink" and because the plaintiffs do not dispute this, they have not plausibly alleged that the "diet" label is misleading.); *Becerra v. Dr. Pepper/Seven Up, Inc.,* 2018 WL 3995832, at *3 (N.D. Cal. Aug. 21, 2018) (holding that there were no facts/theories "to plausibly support that the label conveys *more* than that the drink has relatively less calories and sugar than normal soft drinks").

Defendant also overlooks the significance of the term "manages" blood sugar in the Health Claims, which suggests to reasonable consumers that the Products can help with long-term blood sugar management, contrary to Defendant's claim of only short-term benefits. ECF 24 at ¶ 9. Defendant's interpretation of the labels suggest illogically that the Products could be beneficial in the short term yet harmful over the long term. It is unreasonable to expect consumers to think a product, specifically marketed to diabetics, would be beneficial for a few days but detrimental by the end of the year. Indeed, the reasonable consumer standard "adopts the perspective of the 'ordinary consumer acting reasonably under the circumstances.'" *Brod*, 927 F. Supp. 2d at 828 ("questions of judgment calling for the perspective of a reasonable consumer are 'determined in the light of the effect [such a question] would most probably produce on ordinary minds.'") (internal citations omitted).

Furthermore, Defendant's claim that the FDA has sanctioned sucralose for blood sugar management and that the Products' Health Claims signal its inclusion to consumers is unfounded. ECF 29 at 15:26-16:2. In reality, 21 C.F.R. § 105.3(a)(2) does not endorse sucralose specifically for managing blood sugar but allows artificial sweeteners for dietary purposes, primarily to help reduce calorie and carbohydrate intake. Also, Defendant's suggestion that the Health Claims inform consumers about the presence of sucralose in the Products lacks support and fails to consider the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1  reasonable consumer standard. *Brod*, 927 F. Supp. 2d at 828 (reasonable consumers are ordinary

2  and not sophisticated).

3  **B.    Plaintiffs' Claims Are Plausible**

4  Defendant's assertion that the FAC does not plausibly allege the Products' Health Claims

5  are false and deceptive is without merit. ECF 29 at 17:13-18-11. Plaintiffs meet Rule 9(b)'s

6  requirements by detailing the "who, what, when, where, and how" of the alleged misrepresentations,

7  supported by studies showing that the Products' ingredients (sucralose, maltodextrin, and

8  carrageenan) render the Health Claims false and deceptive.

9  **1.    *Plaintiffs' Allegations Satisfy Rule 9(b)***

10  To satisfy Rule 9(b)'s heightened standard, the allegations need only be "specific enough to

11  give defendants notice of the particular misconduct which is alleged to constitute the fraud charged

12  so that they can defend against the charge and not just deny that they have done anything wrong."

13  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (internal citations omitted). Claims sounding

14  in fraud must allege "the time, place, and specific content of the false representations as well as the

15  identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th

16  Cir. 2007) (internal citations and quotations omitted); *Fernandez v. Atkins Nutritionals, Inc.*, 2018

17  WL 280028, at *12 (S.D. Cal. Jan. 3, 2018) (in false advertising cases a plaintiff simply has to

18  identify "the label claim at issue, where the statement was made, why it was fraudulent, and how it

19  affected the plaintiff"). Plaintiffs have more than cleared this hurdle. Plaintiffs have identified which

20  Products they purchased, when and where they purchased them, and what challenged

21  representations they relied upon when they purchased the Products. ECF 24 at ¶¶ 21-23. Plaintiffs

22  also sufficiently alleged that they would not have purchased the Products if they had known the

23  truth, and that they received something of lesser value than promised. *Id.* at ¶¶ 21-24.

24  **2.    *Plaintiffs' Studies Support Their Allegations that Defendant's Health Claims Are False, Deceptive, and Misleading***

25  Defendant's objection to Plaintiffs citing studies on artificial sweeteners that include but are

26  not limited to sucralose, or those specific to the ingredients in the Products but not the Products

27  themselves, is without basis. ECF 29 at 17:13-19; *Locklin*, 2022 WL 867248, at * 4. Courts have

28  found that product-specific or ingredient-specific studies are not exclusively required to survive a

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

motion to dismiss. *Cooper v. Curallux LLC*, 2020 WL 4732193, at *5 (N.D. Cal. Aug. 14, 2020) (finding that plaintiff's study adequately supported his claims even though it did not discuss defendant's product specifically); *Vasic v. Pat. Health, LLC.*, 2014 WL 940323, at *4 (S.D. Cal. Mar. 10, 2014) (rejecting argument that "Plaintiff's claims must be dismissed because the scientific evidence included in the FAC only evaluated the effectiveness of glucosamine and chondroitin (alone or in combination)" and "did not test the actual Products at issue," holding that plaintiff's studies are about the "primary ingredients of the Products" and therefore make the plaintiff's claims plausible).

Also unpersuasive is Defendant's argument that the studies cited by Plaintiffs purportedly do not support their claims or fail to prove causation. ECF 29 at 17:20-28. To be clear, "at the motion to dismiss stage, complaints need not 'show' or 'establish' anything." *Locklin*, 2022 WL 867248, at *4 (citing *Ashcroft*, 556 U.S. at 678); *White v. Kroger Co.*, 2022 WL 888657, at * (N.D. Cal. Mar. 25, 2022); *Locklin*, 2022 WL 867248, at *4 ("Whether the studies cited in the complaint definitively prove [plaintiff's] claims are not a dispute susceptible to resolution on a motion to dismiss. Indeed, the complaint would plausibly allege that the chemicals harm the reefs even if it had cited to no study—because the body of the complaint 'detail[s] the specific ingredients'" and how the products are mislabeled, which is enough to state a claim at this stage). Defendant's argument amounts to nothing more than a merits-based attack, disputing whether its Health Claims are false and misleading, which is not suitable at the motion to dismiss stage. *Weizman*, 2023 WL 8461173, at *2. And it is also simply beside the point—because Plaintiff need not prove anything, including causation at this stage. *Ibarra v. Pharmagenics LLC*, 670 F. Supp. 3d 991, 995 (C.D. Cal. 2023) (the studies cited sufficiently supported plaintiff's allegations and the fact that the studies are not directed directly towards the challenged representations is unavailing).

Plaintiffs have provided sufficient evidence, through cited studies, to support their allegations that the disputed ingredients are unsuitable for diabetics and ineffective in managing blood sugar, establishing that Defendant's Health Claims are false and deceptive. 670 F. Supp. 3d at 995; ECF 24 at ¶¶ 26, 27, 29-50, 60-68. Specifically, sucralose (and NNS in general), carrageenan, and maltodextrin can have harmful effects on individuals, including inducing and worsening Type

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    II diabetes. *Id*. at ¶ 46, fn 63 (the WHO urges against the consumption of sucralose because of the

2    impacts it has on obesity and increases the risk of diabetes); *Id*. at ¶ 30, fn 16 ("data from several

3    epidemiological studies have found that consumption of NNS … is associated with increased risk

4    to develop … type 2 diabetes"); *Id*. at ¶ 30, fn 18 (consumption of non-caloric sweeteners promotes

5    obesity and weight control is important for reducing the risk of diseases, including Type II diabetes);

6    *Id*. at ¶ 31, fn 19 ("Dietary sugars are associated with various health issues, including overweight,

7    obesity, cardiovascular diseases (CVDs), and Type 2 diabetes."); *Id*. at ¶ 32, fn 21 (the study showed

8    that consumption of NNS's poses health risks (namely, obesity and type 2 diabetes) and the

9    associations between non-caloric sweeteners "and obesity, type 2 diabetes … were backed by highly

10   suggestive evidence"); *Id*. at ¶ 44, fn 56 ("*elimination* of dietary ingestion of carrageenan  may help

11   in efforts to reduce the incidence of diabetes and its associated morbidities"); *Id*. at ¶ 45, fn 58

12   (maltodextrin negatively influences the gut microbiome).

13          Consumption of sucralose, carrageenan, and maltodextrin can also cause insulin resistance

14   in individuals, which can lead to high blood sugar and diabetes. *Id*. at ¶ 34, fn 25 ("regular

15   consumption of sucralose leads to insulin resistance in healthy normal-weight adults, insulin

16   resistance is a risk factor for the development of type 2 diabetes," findings that are consistent with

17   other similar studies); *Id*. at ¶ 34, fn 26 ("according to some studies, the prime reason for

18   development of diabetes mellitus is believed to be artificial sweeteners … increased intake of

19   artificial sweetened beverages increased the incidence of type-2 diabetes" and finding that the group

20   who consumed artificial sweetening agents did have higher insulin resistance); *Id*. at ¶ 44, fn 57

21   (exposure to carrageenan can lead to insulin resistance); *Id*. at ¶ 45, fn 60 (maltodextrin when

22   interacting with sucralose can impair insulin sensitivity) *Id*. at ¶ 34, fn 27 (the CDC explained

23   individuals who are insulin resistant can lead to higher blood sugar levels and type 2 diabetes).

24          Against this backdrop of facts, Plaintiffs have sufficiently alleged that the Products

25   containing sucralose, carrageenan, and maltodextrin do not help manage blood sugar levels as

26   claimed and are not suitable for individuals with diabetes or pre-diabetic conditions. Instead, the

27   challenged ingredients in the Products deregulate blood sugar and can lead to a prediabetic state. *Id*.

28   at ¶ 33, fn 22 ("In the present study sucralose has been indicated to create prediabetic state by

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

causing b cell destruction because of an attack by immune system in the presence of increased inflammatory response."); *Id.* at ¶ 33, fn 23; *Id.* at ¶ 44, fn 55 (consumption of carrageenan can lead to high blood glucose levels). The challenged ingredients also promote gut proteobacteria (*Id.* at ¶ 38, fn 40; *Id.* at ¶ 45, fn 59), which in turn promotes obesity and insulin resistance (*Id.* at ¶ 37, fn 38; *Id.* at ¶ 44, fn 57; *Id.* at ¶ 45, fn 60), which can lead to type 2 diabetes (*Id.* at ¶ 34, fn 27). In summary, Plaintiffs have pled sufficient facts to show that the challenged ingredients cause spiked blood sugars, insulin resistance, and are not suitable for individuals with diabetes, which is enough to show causation. *Ibarra*, 670 F. Supp. 3d at 995.

Defendant's positioning of certain studies as inconclusive as to causation or stating the need for more research do not conclusively defeat Plaintiffs' claims as a matter of law. ECF 29 at 6:11-21; *Locklin*, 2022 WL 867248, at *4 (a risk, even if ultimately ***uncertain***, "may well be enough to prove that the company's [] claim is false or misleading to a reasonable consumer[s]"); *Ibarra*, 670 F. Supp. 3d at 995 (plaintiff's provided at least some evidence and the court held that "it is indeed hard to imagine a scientific study ever saying that further studies would be unwarranted"); *see also Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2023) ("Whether or not the studies support plaintiff's proposition that it is 'biologically impossible' to rebuild cartilage is an issue of fact the Court cannot resolve on a motion to dismiss."); *Pearson v. Target Corp.*, 2012 WL 7761986, at *2 (N.D. Ill. Nov. 9, 2012) ("whether or not the proffered studies are applicable to [the glucosamine supplement at issue] is a question of fact that I do not decide at this stage. The fact that these studies looked at products that shared the same active ingredients …makes Plaintiff's claim facially plausible").

What Plaintiffs' studies, when taken in their totality, show is that the challenged ingredients induce and worsen metabolic syndrome (also known as insulin resistance, a contributing factor to the development and diagnosis of diabetes) and diabetes itself by interfering with the body's ability to control glucose homeostasis. ECF 24 at ¶¶ 30-50. The studies cited in the FAC support Plaintiffs' allegations that the Products' unauthorized Health Claims are deceptive and misleading, and ultimately harm reasonable consumers who relied upon them to manage their diabetes or blood sugar generally. Moreover, the cases cited by Defendant (all of which are "diet" cases, involving

different issues, labels, products, and ingredients, where the courts found the studies did not show causation) are not applicable. *Manuel v. Pepsi-Cola Co.*, 2018 WL 2269247, at *10 (S.D.N.Y. May 17, 2018) (the studies claim that plaintiff cited to did not claim that NNS consumption had a negative casual effect on "healthy weight management" as related to diet soda); *Geffner v. Coca-Cola Co.*, 343 F. Supp. 3d 246, 253–54 (S.D.N.Y. 2018) (the cited studies did not show that the consumption of the challenged ingredient (aspartame) causes the alleged negative health effects (gaining weight); *Becerra v. Dr Pepper/Seven Up, Inc.*, 2018 WL 1569697, at *6 (N.D. Cal. Mar. 30, 2018) (plaintiff's claims were dismissed for other reasons, but the court also found (in case plaintiff wanted to amend) that the cited studies did not allege causation between the artificial sweeteners and weight gain).

## C.    Plaintiffs Have Standing to Seek Injunctive Relief

Contrary to Defendant's assertions, Plaintiffs have standing to seek injunctive relief because they have sufficiently alleged their wish to purchase the Products again if the labels are truthful (i.e., they are improved in the future). ECF 24 at ¶¶ 17, 21-24, 74, 75, 150; *Milan*, 489 F. Supp. 3d at 1006 (allegations that the plaintiff "would likely purchase [the products] if they could trust that the health and wellness claims were not false or misleading" established standing) (internal citations omitted); *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1177 (N.D. Cal. 2022) (finding the plaintiffs pled "specifically what is required by binding Ninth Circuit authority: that they 'desire to purchase the Products from Defendant' in the future but cannot do so in an informed manner because they cannot rely on the labels going forward"); *Olmos v. T. Marzetti Co.*, 2022 WL 18358950, at *5 (C.D. Cal. Oct. 11, 2022) ("Given the alleged limitations of her knowledge, even if Plaintiff were now aware of one preservative ingredient, it is plausible that she will be unable to verify and rely on the 'No Preservatives' labeling in the future."); *Branca v. Bai Brands, Ltd. Liab. Co.*, 2019 WL 1082562, at *13 (S.D. Cal. Mar. 7, 2019) (finding that the plaintiff "pled future injury by stating 'He intends to, desires to and will purchase the Product again when he can do so with the assurance that the product's label … is lawful and consistent with the Product's ingredients.'").

Defendant's assertion that Plaintiffs, now purportedly "educated" about the Product contents, will not face future harm is an argument the courts have repeatedly rejected. ECF 29 at 20:3-5. For example, in *Davidson v. Kimberly-Clark Corp.*, the Ninth Circuit flatly rejected the

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

argument that a consumer's knowledge of a product's previously false advertisement precludes any plausible likelihood that she would suffer future harm. 873 F.3d 1103, 1115 (9th Cir. 2017). It reasoned a "previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id*. at 1115. As one court explained:

> The *Davidson* court provided two examples of how a previously deceived plaintiff could allege standing to seek injunctive relief. In the first instance, a plaintiff may allege they would want to purchase the product but they are unable to rely on the labels and so will refrain from purchasing a product they want. In the second example, a plaintiff might allege that they would purchase a product in the future, despite the fact it was once marred by false advertising or labeling, as [they] may reasonably, but incorrectly, assume the product was improved.

*Joslin v. Clif Bar & Co.*, 2019 WL 5690632, *2 (N.D. Cal. Aug. 26, 2019) (internal citations omitted). This case falls squarely within *Davidson*.

Furthermore, Defendant's "ingredient list defense" is fundamentally misguided and overlooks the core issue. Even assuming that consumers are obligated to scrutinize the back label in the future to verify if Defendant has eliminated ingredients unsuitable for diabetic care, they still cannot trust Defendant's representations that its products deliver the promised benefits without this Court's injunction to halt such claims unless proven true. This lack of confidence in future labeling underscores the exact injury *Davidson* aims to avert, highlighting the necessity for judicial intervention to ensure product claims are true before they are made. *Davidson*, 873 F.3d at 1115.

Just as in *Davidson*, Plaintiffs adequately pled that they face a threat of future harm because they desire to purchase the Products if they complied with their advertised benefits. ECF 24 at ¶ 24 ("Plaintiffs intend to purchase the Products in the future if they can be sure the Products can provide the advertised benefits. However, Plaintiffs are average consumers who are not sophisticated in, for example, the ingredients that go into making diabetic nutritional drinks and powders, similar to and including the Products, and they cannot determine if the Products can achieve their advertised benefits in the future, absent injunctive relief. Since Plaintiffs would like to purchase the Products again—despite the fact that the Products currently cannot achieve the advertised benefits—Plaintiffs

would likely and reasonably, but incorrectly, assume the Products can achieve the advertised benefits. Accordingly, Plaintiffs are at risk of reasonably, but incorrectly, assuming that Abbott Laboratories has fixed the Products such that Plaintiffs may buy them again, believing they can achieve the advertised benefits of diabetes and blood sugar management. In this regard, Plaintiffs are currently and, in the future, deprived of the ability to rely on the Products' labeling and packaging.").

Defendants argue that Plaintiffs' allegations fail under *In re Coca-Cola Prods. Mktg. & Sales Practices Litig. (No. II)*, 2021 WL 3878654 (9th Cir. Aug. 31, 2021), an unpublished opinion, because they do not wish to buy the Products if it is improved. ECF 29 at 19:10-21. Not so. Plaintiffs allege that they would purchase the products again if they could "be sure the Products … provide the advertised benefits." ECF 24 at ¶ 24. This is sufficient to establish Plaintiffs' intent to purchase the Products in the future if the Products actually were suitable for individuals with diabetes and could help consumers manage blood sugar, as Defendant advertises. *See Brown v. Van's Int'l Foods, Inc.*, 2022 WL 1471454, at *11 ("[b]ecause I can fairly interpret the complaint as alleging that Brown would purchase the products again in the future if they were not misleadingly labeled, Brown has sufficiently alleged standing to seek injunctive relief").

Moreover, Plaintiffs' inability to rely on the labeling is not "an abstract interest in compliance with labeling requirements." ECF 29 at 19:16. It is imminent, ongoing, and sufficient to confer standing. *See Kochar v. Walmart, Inc.*, 2022 U.S. Dist. LEXIS 74788, at *2 (N.D. Cal. Apr. 25, 2022) (plaintiffs had standing to seek injunctive relief where "they alleged that they would be willing to buy [the challenged products] again but would not be able to trust its marketing representations") (internal citations omitted); *Pino v. Birch Benders, LLC*, 2022 WL 4913320, at *2-3 (N.D. Cal. Oct. 3, 2022) (plaintiffs had standing to seek injunctive relief where they alleged they would like to purchase the product again in the future but were unable to rely on defendant's labels); *Gasser v. Kiss My Face*, 2018 WL 4847071, at *3 (N.D. Cal. Apr. 4, 2018) (finding allegations sufficiently established standing to pursue injunctive relief because the plaintiffs "shop where Defendant's products are sold; however, as the plaintiff in *Davidson*, given their past experience with Defendant, they cannot rely upon Defendant's labeling.") (internal citations

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

committed).

Notably, other courts in this District have observed limitations in applying *Coca-Cola*. *See Paschoal v. Campbell Soup Co.*, 2022 WL 4280645, at * 6, n.3 (N.D. Cal. Sept. 15, 2022) ("*In re Coca-Cola* obviously is not binding, and even if it is viewed as persuasive authority, the case does not support [defendant's] injunctive relief standing challenge. The allegations here are unlike those in *In re Coca-Cola*, where some plaintiffs alleged only that 'if [the product] were properly labeled, they would consider purchasing it' and others had 'no stated desire to purchase [the product] in the future.'"); *Brown v. Food for Life Baking Co.*, 2023 WL 2637407, at *6 (N.D. Cal. Feb. 28, 2023) (distinguishing *In re Coca-Cola* based on the plaintiffs allegations that they would purchase the product again); *Scheibe v. Esupplements, LLC*, 2023 WL 7926801, at 4-5 (S.D. Cal. Nov. 16, 2023) (same); *Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 899 (N.D. Cal. 2022) (same).

Defendant's other cases are also inapposite. *Martinez v. Mead Johnson & Co., LLC,* 2022 WL 15053334, at *8 (C.D. Cal. Oct. 22, 2022) (food case where specialized knowledge is not necessary to understand the ingredients are not primarily milk); *Matic v. United States Nutrition, Inc.*, 2019 WL 3084335, *1, 7-8 (C.D. Cal. Mar. 27, 2019) (or a slack-fill case with explicit and *known* weight disclaimers).

Lastly, Defendants argue that Plaintiffs face no threat of future injury because they are now aware of the truth of the Health Claims and can educate themselves by reading the Products' labels. ECF 29 at 20:3-13. The problem with this argument, chiefly, is it would impose an obligation inconsistent with Ninth Circuit precedent in *Williams*. Under *Williams*, consumers are not required to look to the back label ingredient list to dispel deception created by front-label misrepresentations. *Williams*, 552 F.3d at 936 ("[w]e do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations"); *Skinner v. Ken's Foods, Inc.*, 53 Cal. App. 5th 938, 949 (2020) ("In claiming that Respondents should have carefully examined the back labels' … [Defendant] requires too much."). And any cases to the contrary cited by Defendant are thus inconsistent with *Williams,* as courts in this District have acknowledged when *rejecting* the ingredient list as a basis on which to deny standing for injunctive relief. *See e.g.*, *Milan*, 489 F. Supp. 3d at 1006-07 (citing *Williams*;

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

finding the plaintiffs' allegations "called into plausible question all of [defendant's] health and nutrition representations," and that the plaintiffs sufficiently alleged likelihood of future harm); *Shank v. Presidio Brands, Inc.*, 2018 WL 1948830, at *10-14 (N.D. Cal. 2018) (citing *Williams*; finding standing to seek injunctive relief and suggesting "the Ninth Circuit would reject" the ingredient list defense); *Gasser*, 2018 WL 4847071, at *3 (citing *Williams*; holding consumers are not expected to "look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box") (internal quotations omitted).

Absent an order enjoining Defendant's unlawful advertising, Plaintiffs and consumers will continue to rely on Defendants' misrepresentations to their detriment, and the general public will be subjected to a persistent threat of future harm. ECF 24 ¶¶ 24, 76. If injunctive relief were not available to previously deceived plaintiffs, California's consumer protections laws would largely be rendered ineffective. *See Ries*, 287 F.R.D. at 533 ("were the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result.").

### D.   Plaintiffs Plausibly Allege Breach of Warranty and Unjust Enrichment

Contrary to Defendant's assertion, Plaintiffs' breach of warranty and unjust enrichment claims are sufficiently alleged. ECF 29 at 20:15-24. As described in detail *supra*, Plaintiffs plausibly alleged that they purchased the Products in reliance on the Health Claims and were unaware that these claims were false.  ECF 24 at ¶¶ 21-23, 64, 68, 70, 88, 137. Thus, Plaintiff has sufficiently alleged the content of the warranty—the Health Claims—necessary to plead a claim for breach of express warranty. *See Martin v. Tradewinds Bev. Co.*, 2017 WL 1712533, at *9 (C.D. Cal. Apr. 27, 2017) ("Defendant's labels represent their Iced Tea Products as '100% Natural' or made with '100% Natural Ingredients.' Plaintiff has thus sufficiently pleaded affirmations of fact to state a plausible claim for breach of express warranty."). In common law warranty claims, statements on a products' label are part of the bargain between the buyer and seller. *Weinstat v. Detsply Int'l Inc.*, 180 Cal. App. 4th 1213, 1227 (2010). Thus, courts routinely find labeling claims create warranties. *Mattero v. Costco Wholesale Corp.*, 336 F. Supp. 3d 1109, 1115-16 (N.D. Cal. 2018); *Brown v. Hain*

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 889-890 (N.D. Cal. 2012); *Jones v. Nutivia, Inc.*, 2016 WL 5210935, at *9 (N.D. Cal. Sept. 22, 2016). Moreover, courts also consistently find allegations sufficient to plead consumer deception under California's UCL, FAL, and CLRA are likewise sufficient common law breach of warranty. *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 469 (S.D.N.Y. 2020). Accordingly, this Court should deny Defendant's motion to dismiss Plaintiffs' claim for breach of warranty. Defendant's conclusory claim that Plaintiffs' unjust enrichment claims suffer from similar defects also fails because, as alleged in detail above, Plaintiffs' statutory claims do not fail as a matter of law.  ECF 29 at 20:25-21:5; *White*, 2022 WL 888657, at *2 ("where the viability of 'unjust enrichment' as a standalone claim remains as a matter of some dispute, there is no basis to dismiss it here where underlying claims remain.").

Lastly, Defendant's claim that if Plaintiffs' breach of express warranty claim survives, their unjust enrichment claim should be dismissed because they are duplicative fails. ECF 29 at 21: 14-19. At this stage, Plaintiffs are entitled to plead both claims in the alternative. Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *Becerra v. Gen. Motors LLC*, 241 F. Supp. 3d 1094, 1117 (S.D. Cal. 2017) ("Plaintiffs have pled their claim for unjust enrichment in the alternative to their breach of express warranty claim"); *Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1302 (C.D. Cal. 2015) ("the Court concludes that plaintiffs have pleaded their contract and unjust enrichment claims in the alternative, and declines to dismiss the unjust enrichment claims on these grounds.").

## V.    DEFENDANT'S REQUEST FOR JUDICIAL NOTICE SHOULD BE DENIED

Defendant appears to seek judicial notice of the Products' ingredient lists on the back labels through its website URLs, a method that is procedurally insufficient due to the website's complexity, with its many menus, pages, and lack of direct navigation to the relevant content or labels which are not readily visible anywhere on the site. *See* ECF 29 at 4, fn 1. In order to avail itself of judicial notice, Defendant is required to attach true and accurate copies of the documents for which it seeks judicial notice. *See* Fed. R. of Evid. 106; *Sinatro*, 635 F. Supp. 3d at 871 (the court declined to take judicial notice of screenshots of the products' side and back labels taken from third party websites because defendant failed to ask the court to take judicial notice of the actual

products and failed to provide a foundation of the third-party websites). Nevertheless, if the intent behind providing these links is to disclose the Products ingredients, as Defendant suggests, Plaintiffs do not contest that the ingredients are indeed listed on the back label.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court deny Defendant's Motion in its entirety.

Dated: April 9, 2024

**CLARKSON LAW FIRM, P.C.**

By: /s/ Kelsey J. Elling
Shireen M. Clarkson, Esq.
Bahar Sodaify, Esq.
Kelsey J. Elling, Esq.
Ryan D. Ardi, Esq.

*Attorneys for Plaintiffs*