UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN PRESCOTT, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES,<br><br>    Defendant. | Case No. 23-cv-04348-PCP<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 29 |

In this putative consumer fraud class action, plaintiffs challenge the labeling of defendant Abbott Laboratories's Glucerna line of powders and shakes, which are marketed as scientifically designed for people with diabetes to help manage blood sugar. Plaintiffs allege that because the products contain sucralose and other additives, the products do not provide the promised health benefits. For the reasons set forth in more detail below, Abbott's motion to dismiss these claims is denied except as to plaintiffs' claims for injunctive relief.

**I.    Background**

The following facts from the complaint are taken as true in resolving this motion.

Abbott sells a line of "Glucerna" branded shakes and powders that are marketed to diabetic, prediabetic, and health-conscious consumers for personal consumption. These products are represented to be specifically formulated for people with diabetes. As the example below illustrates, the front labels on Glucerna products state that the products are made "to help manage blood sugar," are the "#1 doctor recommended brand," and are "scientifically designed for people with diabetes." In addition, the side label (on the shakes at least) states that the beverages are "designed to help minimize blood sugar spikes in people with diabetes compared to high glycemic carbohydrates."



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19  Complaint, Dkt. No. 24, at 10 ("Exhibit 3: Glucerna Protein Smart Shakes") (red labels added).
20       Diabetes is characterized by high blood sugar that results from inability to produce insulin
21  (a hormone that allows sugar to be removed from blood and is used by cells in the pancreas). Type
22  2 diabetes (the most common form) results from pancreatic cells that are resistant to insulin,
23  usually as a result of diet and lifestyle. All treatments for diabetes generally aim to manage blood
24  sugar levels. Although medications are available, people with type 2 diabetes generally manage
25  the disease through diet and exercise, seeking foods that can help manage their blood sugar.
26       Online and in stores, Glucerna shakes and powders are placed with health and nutritional
27  supplements near diabetes diagnostic equipment and blood glucose tests. One retailer specifically
28  categorizes Glucerna products as "Diabetes Management" on its website.

2

1    Glucerna shakes and powders are made with sucralose, an artificial sweetener. Some of the
2 products also contain carrageenan and maltodextrin. According to the plaintiffs, although
3 sucralose is approved by the FDA as a general-purpose food sweetener, more recent scientific
4 studies have identified potential health risks associated with sucralose and other Glucerna
5 ingredients. For example, studies have suggested that sucralose is associated with obesity, type 2
6 diabetes (as well as its precursor condition, metabolic syndrome), hypertension, and
7 cardiovascular disease; that sucralose can deregulate blood sugar by disrupting the gut microbiome
8 and killing pancreatic cells that release insulin; and that sucralose can cause cells to become
9 resistant to insulin, which can lead to type 2 diabetes or obesity. In addition, several organizations,
10 including the World Health Organization, have advised against consuming sucralose and other
11 artificial sweeteners. Plaintiffs also cite similar scientific findings for maltodextrin and
12 carrageenan.
13    Plaintiffs allege that they were misled by the Glucerna labels. They say they understood
14 the claim that Glucerna is the "#1 doctor recommended brand" and is "scientifically designed for
15 people with diabetes" to mean that Glucerna products "aid in managing blood sugar generally"
16 and are "scientifically capable of the treatment of diabetes or other health conditions." They also
17 say they understood these claims to mean that Glucerna products are "uniquely healthy." Plaintiffs
18 assert that they understood "scientifically designed for people with diabetes" to mean that
19 Glucerna products "have some mechanism of action that provides a therapeutic benefit regarding
20 diabetes/prediabetes and blood sugar regulation generally." Plaintiffs assert that the claims on the
21 Glucerna labels are false and deceptive because the products do not provide the advertised
22 benefits. They also assert that they relied on the identified claims in deciding to purchase Glucerna
23 products, that they would not have purchased the products at the listed prices (which plaintiffs
24 argue included an unjustified premium) if they had known the labels were false or misleading, and
25 that they lack an adequate remedy at law to address the harm they suffered.
26    Plaintiffs assert five claims under California consumer fraud statutes and common law on
27 behalf of putative nationwide and California classes of people who purchased Glucerna products
28 for purposes other than resale. Abbott has moved to dismiss the operative amended complaint.

3

## II. Legal Standard

Under Rule 8, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief" with allegations that are "simple, concise, and direct." Rule 9(b) sets a higher standard for certain claims: A party "alleging fraud or mistake … must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The pleading must be "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Rule 12(b)(6) governs dismissal for "failure to state a claim upon which relief can be granted." A complaint must "plausibly suggest" that the plaintiff is entitled to relief, meaning the pleaded "factual content … allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009).

There are two exceptions to the general rule that "courts may not consider material outside the pleadings when assessing the sufficiency of a complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). First, Federal Rule of Evidence 201 permits judicial notice of "a fact that is not subject to reasonable dispute" because the fact is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Second, the doctrine of incorporation by reference permits a court to treat an extrinsic document as if it were part of the complaint if the pleading "refers extensively to the document" or if "the document forms the basis" of a claim. *Khoja*, 899 F.3d at 1002. This can be proper "when assessing the sufficiency of a claim requires that the document at issue be reviewed," but is not warranted when "the document merely creates a defense to the well-ple[aded] allegations." *Id.*

## III. Analysis

### A. Statutory Claims

Plaintiffs assert claims under California's Consumer Legal Remedies Act (CLRA), False Advertising Law (FAL), and Unfair Competition Law (UCL).

The FAL broadly prohibits knowingly or negligently making "untrue or misleading" statements in conjunction with the intentional sale of goods or services. Cal. Bus. & Prof. Code § 17500. The UCL similarly prohibits "unfair, deceptive, untrue or misleading advertising," as well as any other "unlawful, unfair or fraudulent business act or practice." *Id.* § 17200. The UCL also specifically incorporates the FAL, meaning that "any violation of the [FAL] necessarily violates the UCL." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002) (cleaned up). Finally, the CLRA prohibits a wide range of "unfair methods of competition and unfair or deceptive acts or practices," including: "Representing that goods .. have … characteristics …, uses, [or] benefits… that they do not have"; "Representing that goods . are of a particular standard, quality, or grade … if they are of another"; and "Advertising goods or services with intent not to sell them as advertised." Cal. Civ. Code § 1770(a)(5), (a)(7), (a)(9). As its name suggests, the CLRA authorizes consumers to bring an action for damages and injunctive relief, provided they comply with certain notice requirements when seeking damages. *Id.* §§ 1780, 1782.

The UCL, FAL, and CLRA "prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Kasky*, 27 Cal. 4th at 951. Plaintiffs' claims under all three statutes "are governed by the 'reasonable consumer' standard." *McGinity v. Procter & Gamble Co.,* 69 F.4th 1093, 1097 (9th Cir. 2023). To ultimately prevail under the reasonable consumer standard, plaintiffs must show not just the "mere possibility that the label might conceivably be misunderstood by … consumers viewing it in an unreasonable manner," but "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *McGinity*, 69 F.4th at 1097. Whether an ad is deceptive is a "question of fact" that is "not appropriate" for resolution at the pleading stage except in "rare situation[s]." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008).

5

On a motion to dismiss, the question is whether a plaintiff "could plausibly prove that a reasonable consumer would be deceived." *Id.* at 940. Only if "no reasonable consumer" could plausibly be misled based on the allegations in the complaint can reasonable-consumer-test claims be dismissed at the pleading stage as a matter of law. *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019). Plaintiffs do not dispute that their FAL, UCL, and CLRA claims must meet the Rule 9(b) pleading standard.

With these standards in mind, the Court considers the factual allegations in the complaint to determine whether they suggest that plaintiffs could plausibly prove that a reasonable consumer would be deceived or misled by the labels on Glucerna products—labels which state that the products are the "#1 doctor recommended brand," are "scientifically designed for people with diabetes," and are formulated "to help manage blood sugar."

Plaintiffs' claims raise three questions: First, what might reasonable consumers interpret Glucerna labels to suggest about how the products work? Second, what do the products actually do? And third, is there any disparity between what the labels could be understood to promise and what the products actually do, such that the labels are false, misleading, confusing, or deceptive? Plaintiffs' answers are, first, that Glucerna's labels suggest that the products are suitable for diabetics and can help generally manage blood sugar; second, that Glucerna products in fact contain ingredients that can deregulate blood sugar and pose other health harms to diabetics; and third, that this disparity between Glucerna products' promised and actual effects renders the labels misleading. At this stage, the Court must determine whether these assertions are plausibly pleaded.

With respect to the first question—how reasonable consumers might interpret Glucerna labels—the scope of the labels' claims is important because it determines the baseline against which the products' actual effects must be measured. Plaintiffs argue that the labels' claims are broad: They allege that they understood the labels to represent that Glucerna products "are healthy sugar-alternative drinks and powders that are suitable for, or can aid in, the management of blood sugar generally and for those with diabetes specifically." Compl. ¶ 10. They claim that the labels suggest that Glucerna products "are over-the-counter aids to help manage diabetes and blood sugar generally" and "can be used to regulate, achieve, and manage normal and healthy blood sugar

6

levels." Compl. ¶ 67 (cleaned up). Abbott counters that the Glucerna labels suggest that the products' benefits are more limited: The drinks are intended as a "snack or meal replacement" formulated "to help minimize blood sugar spikes in people with diabetes compared to high glycemic carbohydrates." Compl. Ex. 1 & ¶ 63. In other words, Glucerna products will manage short-term blood sugar changes only as compared to food with high glycemic carbohydrates.

The reasonable consumer standard assumes that consumers read labels in context. If a "front label is ambiguous, the ambiguity can be resolved by reference to the back label." *McGinity*, 69 F.4th at 1099. Consumers are also expected to draw "contextual inferences regarding the product itself and its packaging." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021).

Whether a reasonable consumer would interpret the labels as plaintiffs or as Abbott suggest is ultimately a factual question. At the pleading stage, the Court must take plaintiffs' factual assertions as true and draw every reasonable inference in their favor. Abbott's main argument for its narrower interpretation is that there is an explanation on the side label that Glucerna products are "[d]esigned to help minimize blood sugar spikes in people with diabetes compared to high glycemic carbohydrates." A symbol next to the "help manage blood sugar" claim on the front label refers consumers to this side-label clarification. But even assuming consumers read this clarification, the Court cannot conclude at this stage that a reasonable consumer would necessarily understand the side-label clarification to limit the scope of the front label's blood sugar claims in the way that Abbott suggests. And regardless of the scope of the front-label "helps manage blood sugar" claims, plaintiffs have also plausibly alleged that the other claims on the front label—that Glucerna products are recommended by doctors and scientifically designed for diabetics—make more sweeping representations about how the products work.

The Ninth Circuit cases on which Abbott relies do not suggest a different result. Both *McGinity* and *Moore* involved potentially ambiguous front-label representations about a product's ingredients—ambiguities that could be easily cleared up by looking at the ingredients list on the back. Here, by contrast, plaintiffs allege that they understood the front labels to be making claims about the overall health effects of Glucerna products, not just the specific ingredients they contain. This is not the sort of ambiguity that can be definitively resolved by reference to a back label.

7

Accordingly, plaintiffs have plausibly alleged that a reasonable consumer might understand Glucerna labels in full context to claim that the products can help manage blood sugar and diabetes generally, not just in comparison to foods with high glycemic carbohydrates.

The second question is what Glucerna shakes and powders actually do. Glucerna products are made with sucralose and other additives, including maltodextrin and carrageenan. The parties do not dispute the actual contents of Glucerna products, and plaintiffs recognize that these ingredients (and the others) are disclosed in the labels' ingredients list.[1] Instead, this dispute centers on whether sucralose or the other additives cause health harms that contradict the labels' claims. Plaintiffs cite several scientific studies that they claim show that sucralose can deregulate blood sugar and worsen or even cause diabetes, among other harms. Abbott counters that sucralose is safe, not only in its view but also in the FDA's. Abbott disagrees with plaintiffs' interpretation of the scientific literature, arguing that plaintiffs' "lay interpretation" of the science requires a series of inferences to suggest that sucralose negatively affects blood sugar management.

This is again a factual dispute. Abbott asks the Court to incorporate by reference the full studies that plaintiffs cite. This request is granted. The complaint refers extensively to these studies, which are central to plaintiffs' claims. Even incorporating these studies, though, the Court cannot substitute its own interpretation of the studies for the allegations in the complaint. Abbott argues that plaintiffs have layered their own inferences on top of the cited studies, which Abbott claims do not establish a causal link between sucralose and long-term health effects. Maybe so. But even if plaintiffs' allegations go beyond the cited studies, at this stage the allegations must be taken as true. (If the allegations directly *contradicted* the cited studies plaintiffs' allegations might fairly be deemed implausible, but that is not the case here.) Plaintiffs allege that the additives in Glucerna products cause a range of health harms, including blood sugar spikes, metabolic syndrome, and even type 2 diabetes. They cite studies that are plausibly consistent with these

---

[1] At Abbott's request, the Court takes judicial notice of the fact that Abbott's webpage for each of its Glucerna products includes an ingredients list. *See, e.g.*, perma.cc/7GX9-FPTU. Although the Court cannot conclude from these websites alone that identical ingredients lists in fact appeared on Glucerna products' physical labels, the parties agree that the labels did include such a list.

claims, even if the studies do not definitively reach those conclusions. At this stage the Court must assume plaintiffs are correct.

Abbott also argues that plaintiffs do not specifically allege that they ever consumed the products they purchased, nor do they identify how the products impacted their blood sugar or otherwise affected their health. But such allegations are not required. If Glucerna products' labels are misleading, plaintiffs can be harmed simply by having a purchased a product that was not what it purported to be. Here, the complaint asserts that each named plaintiff either has or is worried about developing diabetes, that each plaintiff purchased a Glucerna product and believed the product would either be suitable for people with diabetes or could help prevent diabetes, and that the purchased products did not work as promised. While plaintiffs could also certainly be harmed if they actually experienced harmful health effects, they need not have actually suffered health harms in order to plead that the labels were misleading with respect to the alleged effects.

That leaves the third question: whether Glucerna products' labels are false, deceptive, misleading, or confusing in light of the way the products are alleged to work. At this stage the answer is simple. Plaintiffs plausibly allege that a reasonable consumer would understand Glucerna's labels to suggest that the shakes and powders can help manage blood sugar and diabetes generally. Plaintiffs also allege that the sucralose and other ingredients in Glucerna products lead to negative health effects (including that sucralose can lead to blood sugar spikes and insulin resistance syndrome), at least some of which seem to directly contradict these claims. Plaintiffs have therefore plausibly asserted that a reasonable consumer could be deceived by the labels on Glucerna products. This is sufficient to state a claim under the UCL, FAL, and CLRA.

Abbott also challenges plaintiffs' claims for injunctive relief. Plaintiffs allege that they would like to and intend to purchase Glucerna products again in the future if they can be sure the products will provide the promised benefits. Abbott argues that plaintiffs have not established that they need an injunction to prevent future harm because they can easily determine based on the ingredients list whether Glucerna has been reformulated without the ingredients at issue here.

"[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was

9

1  false at the time of the original purchase," because knowing "that the advertisement or label was
2  false in the past does not equate to knowledge that it will remain false in the future." *Davidson v.*
3  *Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018). The Ninth Circuit has suggested two
4  kinds of future harm that could warrant injunctions in product labeling cases: first, that consumers
5  will be unable to rely on the product's labeling in the future and therefore will not purchase the
6  product even if they would like to, and second, that consumers will reasonably but wrongly
7  assume that the product has been improved and will therefore purchase the product again in the
8  future, suffering the same injury as before. *Id.*

9  In this case, however, plaintiffs' allegations do not suggest that they face a risk of either of
10 these forms of future harm. Plaintiffs' allegations are all premised on specific ingredients in
11 Glucerna products. Plaintiffs clearly know that these ingredients are currently included in
12 Glucerna products, and the complaint demonstrates that plaintiffs are now aware of the alleged
13 health risks that are associated with those ingredients. This is therefore not the kind of labeling
14 case where plaintiffs must rely in the future on the manufacturer's ongoing representations about
15 the product. Instead, they can simply check the ingredients list do determine whether Glucerna
16 continues to include sucralose and the other ingredients at issue. For this reason, Plaintiffs have
17 failed to allege any "real and immediate threat of repeated injury" that can be prevented only
18 through an injunction. *See Davidson*, 889 F.3d at 967. They therefore lack standing to pursue this
19 form of relief.

20 Abbott's motion to dismiss the claims for an injunction under the CLRA and UCL is
21 therefore granted with leave to amend. Abbott's motion to dismiss the CLRA, FAL, and UCL
22 claims is otherwise denied.

23 **B.    Common Law Claims**

24 Abbott argues that plaintiffs' warranty breach claim should be analyzed under the same
25 reasonable consumer standard as the statutory claims and dismissed for the same reasons. Abbott
26 also argues that the unjust enrichment claim is merely derivative of the statutory claims and should
27 be dismissed for identical reasons. Because the Court has rejected Abbott's arguments against the
28 statutory claims, its motion to dismiss the common law claims on the same basis is also denied.

## IV. Conclusion

For the reasons set forth above, Abbott's motion to dismiss is granted as to the claims for injunctive relief but otherwise denied. Any amended complaint will be due June 27, 2024. If plaintiffs do not file an amended complaint, Abbott's response will be due July 11, 2024.

**IT IS SO ORDERED.**

Dated: June 5, 2024

P. Casey Pitts
United States District Judge