1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CLARKSON LAW FIRM, P.C.**
Shireen M. Clarkson (SBN 237882)
*sclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
Alan Gudino (SBN 326738)
*agudino@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel.: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

OMAR MASRY, individually and on behalf of all others similarly situated,

          Plaintiff,

  v.

ABBOTT LABORATORIES,

          Defendant.

Case No. 5:23-cv-04348-NW

Compl. Filed:  August 24, 2023
FAC Filed:    December 22, 2023

*Assigned to Hon. Noël Wise*

**PLAINTIFF OMAR MASRY'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION AND IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION**

Date: March 25, 2026
Time: 9:00 a.m.
Courtroom: 3 – 5th Floor

# REDACTED—PUBLICLY FILED

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on March 25, 2026 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the Honorable Noël Wise, of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA 95113, Plaintiff Omar Masry ("Plaintiff"), on behalf of himself and all other similarly situated consumers, by and through his counsel of record, Clarkson Law Firm, P.C., will and hereby does move this Court for class certification pursuant to Fed. R. Civ. P. 23(b)(3).

Plaintiff moves this Honorable Court for an Order as follows:

1.      That this case is certified to proceed to the merits as a class action pursuant to Fed. R. Civ. P. 23(b)(3) on all causes of action set forth in Plaintiff's First Amended Class Action Complaint filed against Defendant Abbott Laboratories ("Defendant") on behalf of the following Class:

> All residents of California who, within four years prior to the filing of the Complaint (the "Class Period," which is August 24, 2019 to the present), purchased Glucerna shakes labeled with the statement "help manage blood sugar" for personal use and not for resale.

(the "Class").

2.      That Plaintiff Omar Masry be appointed as Class Representative.

3.      That Shireen M. Clarkson, Bahar Sodaify, and Alan Gudino of Clarkson Law Firm, P.C., be appointed as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

This motion is based upon this notice of motion, the concurrently filed memorandum of points and authorities, declarations, exhibits, and evidence submitted in support thereof, any written or oral arguments or evidence submitted in connection therewith, all relevant papers on file in this action, and upon such further arguments and evidence as may be presented in connection with the hearing of this matter.

Dated: August 12, 2025                              **CLARKSON LAW FIRM, P.C.**

By: */s/ Alan Gudino*
Shireen M. Clarkson
Bahar Sodaify
Alan Gudino
*Attorneys for Plaintiff*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION ................................................................................................ 1

II.     COMMON FACTS AND EVIDENCE SUPPORTING CLASS CERTIFICATION ........... 2

    A.    Defendant's "Help Manage Blood Sugar" Claim Appeared Uniformly on the
        Products' Front Label During the Class Period ........................................ 2

    B.    Defendant's Internal Documents Further Confirm That Blood Sugar Management
        Claims Are Material and Drive Consumer Purchases ................................... 3

    C.    The Products Cannot Deliver the Promised Blood Sugar Management Benefit ....... 4

III.    LEGAL STANDARD ............................................................................................ 6

IV.     ARGUMENT .................................................................................................... 7

    A.    The Class Is Adequately Defined ................................................................ 7

    B.    The Rule 23(a) Criteria Are Satisfied ......................................................... 8

        1.    Numerosity ............................................................................... 8

        2.    Commonality ............................................................................ 9

        3.    Typicality ................................................................................. 11

            i.    Plaintiff Relied on the "Help Manage Blood Sugar" Claim ........... 12

            ii.   Lack of Proof of Purchase Does Not Present a Unique Defense ..... 16

            iii.  Plaintiff's Medical Status Is Irrelevant to Typicality ...................... 16

            iv.   Plaintiff's Prior Litigation Does Not Render Him Atypical ........... 18

        4.    Adequacy ................................................................................. 19

V.      THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED ...................................... 20

    A.    Class Claims Will Be Resolved Through Objective Standards and Common
        Evidence That Apply Class-Wide ................................................................ 21

        1.    California's Consumer Protection Laws ......................................... 21

        2.    Breach of Express Warranty ....................................................... 25

        3.    Unjust Enrichment .................................................................... 25

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Case No. 5:23-cv-04348-NW                                 ii

PLAINTIFF'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS CERTIFICATION
AND IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

1      B.    The Class's Damages Model Is Capable of Measuring Class-wide Damages and Is

2            Consistent with the Class's Theory of Liability ........................................................ 26

3      C.    Superiority ............................................................................................................. 29

4   VI.   CONCLUSION ................................................................................................................. 30

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

PLAINTIFF'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS CERTIFICATION
AND IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

1

**TABLE OF AUTHORITIES**

2 **Cases**                                                                                **Page No.**

3  *Amchem Prods., Inc. v. Windsor*,
       521 U.S. 591 (1997) ............................................................................... 20
4
   *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
5      568 U.S. 455 (2013) ............................................................................... 22

6  *Armstrong v. Davis*,
       275 F.3d 849 (9th Cir. 2001) ................................................................. 11
7
   *Astiana v. Kashi Co.*,
8      291 F.R.D. 493 (S.D. Cal. 2013) .................................................... 7, 9, 25

9  *Backus v. ConAgra Foods, Inc.*,
       No. C 16-00454 WHA,
10     2016 WL 7406505 (N.D. Cal. Dec. 22, 2016) ...................................... 18

11 *Bailey v. Rite Aid Corp.*,
       338 F.R.D. 390 (N.D. Cal. Apr. 28, 2021). ............................................ 27
12
   *Beck-Ellman v. Kaz USA*,
13     283 F.R.D. 558 (S.D. Cal. 2012) ............................................................ 11

14 *Bradach v. Pharmavite, LLC*,
       735 F. App'x. 251 (9th Cir. 2018) ......................................................... 22
15
   *Briseno v. ConAgra Foods, Inc.*,
16     844 F.3d 1121 (9th Cir. 2017) .................................................................. 7

17 *Brod v. Sioux Honey Ass'n, Co-op.*,
       927 F. Supp. 2d 811 (N.D. Cal. 2013) ................................................... 16
18
   *Broomfield v. Craft Brew All., Inc.*,
19     No. 17-cv-01027-BLF,
       2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ......................... 10, 12, 17
20
   *Bruno v. Quten Research Inst., LLC*,
21     280 F.R.D. 524 (C.D. Cal. 2011) ........................................................... 18

22 *Capaci v. Sports Rsch. Corp.*,
       No. CV 19-3440 FMO (FFMx),
23     2022 WL 1133818 (C.D. Cal. Apr. 14, 2022) ........................................ 8

24 *Castro v. Paragon Indus., Inc.*,
       No. 1:19-cv-00755-DAD-SKO,
25     2020 WL 1984240 (E.D. Cal. Apr. 27, 2020) ...................................... 21

26 *Chinitz v. NRT W., Inc.*,
       No. 18-cv-06100-NC,
27     2019 WL 4142044 (N.D. Cal. Aug. 30, 2019) ...................................... 18

28

PLAINTIFF'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS CERTIFICATION
AND IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

*Colgan v. Leatherman Tool Grp., Inc.,*
   135 Cal. App. 4th 663 (2006) .................................................................... 26

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011) ..................................................................... 19

*Erica P. John Fund, Inc. v. Halliburton Co.,*
   563 U.S. 804 (2011) ..................................................................................... 20

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.,*
   326 F.R.D. 592 (N.D. Cal. 2018) ....................................................... 10, 27

*Forcellati v. Hyland's, Inc.,*
   No. CV 12-1983-GHK (MRWx),
   2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ........................................ 7, 21

*FTC v. Braswell,*
   No. CV 03-3700 DT (PJWx),
   2005 U.S. Dist. LEXIS 42976 (C.D. Cal. Sep. 26, 2005) ........................ 12

*Gen. Tel. Co. of Sw. v. Falcon,*
   457 U.S. 147 (1982) ..................................................................................... 11

*Hadley v. Kellogg Sales Co.,*
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) ............................................ *passim*

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ............................................................ *passim*

*Hanon v. Dataproducts Corp.,*
   976 F.2d 497 (9th Cir. 1992) ..................................................................... 11

*Harris v. Palm Springs Alpine Ests., Inc.,*
   329 F.2d 909 (9th Cir. 1964) ................................................................... 6, 8

*Hilsley v. Ocean Spray Cranberries Inc.,*
   No. 17cv2335-GPC(MDD),
   2018 WL 6300479 (S.D. Cal Nov. 29, 2018) ............................................. 9

*In re ConAgra Foods, Inc.,*
   302 F.R.D. 537 (C.D. Cal. 2014) ............................................................... 10

*In re Emulex Corp. Sec. Litig.,*
   210 F.R.D. 717 (C.D. Cal. 2002) ............................................................... 20

*In re MyFord Touch Consumer Litig.,*
   291 F. Supp. 3d 936 (N.D. Cal. 2018) ....................................................... 28

*In re Online DVD-Rental Antitrust Litig.,*
   779 F.3d 934 (9th Cir. 2015) ..................................................................... 19

*In re Scotts EZ Seed Litig.,*
   304 F.R.D. 397 (S.D.N.Y. 2015) ............................................................... 25

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

PLAINTIFF'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS CERTIFICATION
AND IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
   267 F.R.D. 583 (N.D. Cal. Mar. 28, 2010) ............................................................. 11

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ............................................................................................. 21

*Johns v. Bayer Corp.*,
   280 F.R.D. 551 (S.D. Cal. 2012) ............................................................................ 12

*Johnson v. Cal.*,
   543 U.S. 499 (2005) ................................................................................................. 11

*Jordan v. L.A. County*,
   669 F.2d 1311 (9th Cir. 1982) ................................................................................... 9

*Keegan v. Am. Honda Motor Co., Inc.*,
   284 F.R.D. 504 (C.D. Cal. 2012) ............................................................................... 8

*Kumar v. Salov N. Am. Corp.*,
   Case No.: 14-CV-2411- YGR,
   2016 WL 3844334 (N.D. Cal. July 15, 2016) ............................................. 10, 22, 23

*Kwikset Corp. v. Superior Court*,
   246 P.3d 877 (Cal. 2011) ........................................................................................ 23

*Lambert v. Nutraceutical Corp.*,
   870 F.3d 1170 (9th Cir. 2017) ................................................................................. 26

*LeGrand v. Abbott Lab'ys*,
   No. 22-CV-05815-TSH,
   2025 WL 2144836 (N.D. Cal. July 28, 2025) .......................................................... 16

*Leyman v. Kroger Co.*,
   No. 3:24-cv-01001,
   2025 U.S. Dist. LEXIS 140173 (S.D. Cal. July 22, 2025) ...................................... 14

*Lilly v. Jamba Juice Co.*,
   308 F.R.D. 231 (N.D. Cal. 2014) ............................................................................... 7

*Lytle v. Nutramax Labs., Inc.*,
   No. ED CV 19-0835 FMO (SPx),
   2022 WL 1600047 (C.D. Cal. May 6, 2022) ............................................................ 27

*Maldonado v. Apple, Inc*,
   No. 3:16-cv-04067-WHO,
   2021 WL 1947512 (N.D. Cal. May 14, 2021) .......................................................... 28

*Martin v. Monsanto Co.*,
   No. ED CV 16-2168-JFW (SPx),
   2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) .................................................... 21, 25

*Martinelli v. Johnson & Johnson*,
   No. 2: 15-cv-01733-MCE-DB,
   2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) ......................................................... 28

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

*McCrary v. Elations Co., LLC*,
    No. EDCV 13-00242 JGB (OPx),
    2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ................................................................. 8

*McGinity v. Procter & Gamble Co.*,
    69 F.4th 1093 (9th Cir. 2023) ..................................................................................... 14

*Milan v. Clif Bar & Co.*,
    340 F.R.D. 591 (N.D. Cal. 2021) .........................................................................*passim*

*Motors, Inc. v. Times Mirror Co.*,
    102 Cal. App. 3d 735 (1980) ....................................................................................... 24

*Mullins v. Premier Nutrition*,
    No. 13-cv-01271-RS,
    2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) ............................................................ 22

*Nevarez v. Forty Niners Football Co., LLC*,
    326 F.R.D. 562 (N.D. Cal. 2018) ................................................................................ 18

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ......................................................................................... 9

*Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*,
    No. CV 14-7242-DMG (KSX),
    2016 WL 5920345 (C.D. Cal. June 23, 2016) ........................................................... 16

*Prescott v. Reckitt Benckiser LLC*,
    No. 20-cv-02101-BLF,
    2022 WL 3018145 (N.D. Cal. July 29, 2022) ...................................................... 10, 26

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) ................................................................................. 8

*Ries v. Arizona Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012) ................................................................................ 16

*Rodman v. Safeway, Inc.*,
    No. 11-cv-03003-JST,
    2014 WL 988992 (N.D. Cal. Mar. 10, 2014) ............................................................. 24

*Rush v. Nutrex Research, Inc.*,
    No. C 12-01060 LB,
    2012 WL 2196144 (N.D. Cal. June 13, 2012) ........................................................... 24

*Salazar v. Target Corp.*,
    83 Cal. App. 5th 571 (2022) ....................................................................................... 15

*Schneider v. Chipotle Mexican Grill, Inc.*,
    328 F.R.D. 520, 539-40 (N.D. Cal. 2018) .................................................................. 21

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ...................................................................................................... 6

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

PLAINTIFF'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS CERTIFICATION
AND IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

*Sinatro v. Barilla Am., Inc.*,
  No. 22-cv-03460-DMR,
  2024 WL 2750018 (N.D. Cal. May 28, 2024) ........................................................ 12, 15

*Smith v. Keurig Green Mountain, Inc.*,
  No. 18-cv-06690-HSG,
  2020 WL 5630051 (N.D. Cal. Sept. 21, 2020) ...................................................... 25

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .......................................................................... 11

*Tait v. BSH Home Appliances Corp.*,
  289 F.R.D. 466 (C.D. Cal. 2012) .................................................................. 21, 29

*Testone v. Barlean's Organic Oils, LLC*,
  No. 19-CV-169 JLS (BGS),
  2021 WL 4438391 (S.D. Cal. Sept. 28, 2021) .................................................... 9

*Timmins v. Walmart, Inc.*,
  No. 2:24-cv-02960-DJC-JDP,
  2025 WL 1580525 (E.D. Cal. June 4, 2025) ...................................................... 16

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ...................................................................................... 20

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) .......................................................................... 29

*Velazquez v. GMAC Mortg. Corp.*,
  605 F. Supp. 2d 1049 (C.D. Cal. 2008) .......................................................... 24

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .................................................................................. 9, 10

*Weiss v. Trader Joe's Co.*,
  838 F. App'x 302 (9th Cir. 2021) ................................................................ 15

*Whiteside v. Kimberly-Clark Corp.*,
  108 F.4th 771 (9th Cir. 2024) .................................................................... 15, 21

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) .................................................................. 14, 21, 25

*Wolph v. Acer Am. Corp.*,
  272 F.R.D. 477 (N.D. Cal. 2011) ................................................................ 7

*Wuest v. My Pillow, Inc.*,
  No. 3:18-cv-03227-EMC,
  2019 WL 3577176 (N.D. Cal. Aug. 6, 2019) .................................................. 18

*Young v. Neurobrands, LLC*,
  No. 18-cv-05907-JSW,
  2020 WL 11762212 (N.D. Cal. Oct. 15, 2020) ................................................ 9

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

*Zakaria v. Gerber*,
   No. LA CV15-00200 JAK (Ex),
   2016 WL 6662723 (C.D. Cal. Mar. 23, 2016) ............................................................ 10, 25, 29

*Zakaria v. Gerber Prods. Co.*,
   755 Fed. App'x 623 (9th Cir. 2018) ............................................................................. 27

**<u>Statutes</u>**

Cal. Civ. Code § 1780 ...................................................................................................... 26

Cal. Com. Code § 2313 ..................................................................................................... 25

Cal. Bus. & Prof. Code §§ 17203 ................................................................................... 26

Cal. Bus. & Prof. Code §§ 17535 ................................................................................... 26

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

PLAINTIFF'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS CERTIFICATION
AND IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

## TABLE OF REFERENCES

| Abbreviation | Document | Declarant/Deponent/Expert |
|---|---|---|
| ECF No. 24 | First Amended Class Action Complaint ("FAC") | Plaintiff Omar Masry ("Plaintiff") |
| ECF No. 77 | Defendant's Motion to Deny Class Certification | Defendant Abbott Laboratories ("Defendant") |
| Gudino Decl. | Declaration of Alan Gudino in Support of Plaintiff's Omnibus Motion for Class Certification and in Opposition to Defendant's Motion to Deny Class Certification | Plaintiff's Counsel |
| Gudino Decl., Ex. 1 | Defendant's Responses and Objections to Plaintiff's Requests For Admission, Set One, dated August 12, 2024 | Defendant |
| Gudino Decl., Ex. 2 | Defendant's "2025 Business Planning Guide—Brand Strategy" (ABBOTT_016781) | Defendant |
| Gudino Decl., Ex. 3 | Labels for Glucerna Original, Snack Shake, Hunger Smart, Protein Smart | Defendant |
| Gudino Decl., Ex. 4 | Defendant's "Glucerna: Blood Sugar Management" market insights (ABBOTT_015929) | Defendant |
| Gudino Decl., Ex. 5 | Defendant's "2025 Business Planning Guide" (ABBOTT_016781) | Defendant |
| Gudino Decl., Ex. 6 | Defendant's "Therapeutic Brand Planning Day" presentation (ABBOTT_015731) | Defendant |
| Gudino Decl., Ex. 7 | Defendant's "Glucerna Claims Research" (ABBOTT_000198) | Defendant |
| Gudino Decl., Ex. 8 | Defendant's "2019 Q2 Tracking Summary" research (ABBOTT_000083) | Defendant |

PLAINTIFF'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS CERTIFICATION
AND IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

| Gudino Decl., Ex. 9 | Deposition Transcript of Paul Nichols | Defendant |
|---|---|---|
| Gudino Decl., Ex. 10 | Deposition Transcript of Omar Masry | Plaintiff |
| Gudino Decl., Ex. 11 | Firm Resume of Clarkson Law Firm, P.C. | Plaintiff's Counsel |
| Masry Decl. | Declaration of Plaintiff Omar Masry | Plaintiff |
| Weir Decl. | Declaration of Colin B. Weir | Plaintiff's Economics Expert |
| Gaskin Decl. | Declaration of Steven P. Gaskin | Plaintiff's Conjoint Survey Expert |
| Sen Decl. | Declaration of Dr. Sabyasachi Sen | Plaintiff's Science Expert |

PLAINTIFF'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS CERTIFICATION
AND IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## I.    INTRODUCTION

Defendant Abbott Laboratories labels and advertises its Glucerna shakes with a clear promise: they "help manage blood sugar." This claim is pivotal to the products' appeal, speaking directly to not only consumers living with diabetes or prediabetes, but also to the tens of millions of Americans who are health-conscious, at risk for metabolic conditions, or simply seeking better blood sugar control for overall wellbeing. The claim signals safety, efficacy, and a proactive tool for managing and improving metabolic health.

But the promise is false. Glucerna's key ingredient, the non-nutritive sweetener sucralose, does not help manage blood sugar. Instead, it impairs insulin response, exacerbates insulin resistance, and is associated with an increased risk of developing diabetes. Plaintiff's endocrinology expert, Dr. Sabyasachi Sen, will testify that sucralose worsens insulin resistance and metabolic dysfunction. That's why leading public health authorities—including the World Health Organization—have also explicitly warned against using non-sugar sweeteners like sucralose for glycemic control or chronic disease prevention.

Despite the science, Abbott continues to feature "help manage blood sugar" on the front of its shakes because it drives sales. Internal documents confirm that this claim ranked ███████ ███████ tested with consumers, leading Defendant to conclude that blood sugar management is highly material to purchase decision-making. Defendant's marketing plans reflect targeting the public at large with ████████████████████████████████████████████ Defendant uses the claim strategically to set Glucerna apart from the competition, prioritizing profit over the truth.

Plaintiff Omar Masry and Class members purchased Glucerna shakes in reliance on this uniform front-label claim and paid a premium for a product that does not deliver the promised benefit. The deception and harm are uniform, reflecting the precise circumstances Rule 23 was designed to address. Rather than allowing the certification process to proceed in due course, Defendant months ago attempted to block it with a premature "motion to deny class certification." Nothing in that improper attempt undermines certification. The record demonstrates Plaintiff's adequacy: his experience is representative, his interests are aligned with those of the Class, and he

PLAINTIFF'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS CERTIFICATION
AND IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

is committed to vigorously prosecuting this action on behalf of all consumers. Plaintiff's counsel is likewise well-qualified to represent the Class, with no conflicts and a strong record of success in complex consumer class actions.

All other Rule 23 requirements are satisfied as well. The Class is sufficiently numerous, as demonstrated by significant sales volume. Common questions of law and fact, including whether the representation is false, material, and likely to deceive reasonable consumers, predominate over any individualized issues due to Defendant's uniform  labeling. Typicality is satisfied because Plaintiff purchased the shakes during the Class Period in reliance on the same deceptive representation made to all Class members.

Plaintiff's experts will also demonstrate, through established methodologies, that the price premium paid for Glucerna shakes is attributable to the "help manage blood sugar" claim. Survey expert Steven P. Gaskin will quantify consumer reliance on the false promise, while economist Colin B. Weir will use that data to calculate damages on a classwide basis.

Like other class members, Plaintiff saw and relied on Defendant's uniform front-label claim that Glucerna shakes "help manage blood sugar," paid a premium based on that representation, and received a Product that disrupts blood sugar regulation and endangers metabolic health. Defendant made this same core misrepresentation to every purchaser, forming a proper basis for class-wide relief and certification. Plaintiff respectfully requests that the Court grant his motion for class certification and deny Defendant's motion to deny class certification.

## II.    COMMON FACTS AND EVIDENCE SUPPORTING CLASS CERTIFICATION

### A.    Defendant's "Help Manage Blood Sugar" Claim Appeared Uniformly on the Products' Front Label During the Class Period

Throughout the Class Period[1], Defendant engaged in a deliberate, uniform campaign to market and sell its Glucerna shakes, including the Original Shake, Hunger Smart Shake, Protein Smart Shake, and Original Snack Shake (collectively, the "Products"), by prominently featuring the health-focused promise that the Products "help manage blood sugar." ECF No. 24 ¶¶ 9, 14; Gudino Decl., Ex. 3 (Glucerna shakes labels). This representation appeared on the front panel of every

---

[1] The "Class Period" is August 24, 2019 through the present. ECF No. 24 ¶ 77.

PLAINTIFF'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS CERTIFICATION
AND IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    Product, regardless of flavor, size, or format. *Id.* Defendant has used this uniform front-label claim

2    across all retail packaging nationwide, including throughout California, so that every Class member

3    encountered the same deceptive message before buying the Products. *See* Gudino Decl., Ex. 9,

4    Nichols Dep. at 65:24–66:4; 86:8-15; 94:24–95:4; 101:13-18; 102:1-4; 102:18-21; 102:24–103:3.

5    Defendant's campaign did not stop at the label. Defendant reinforced this health message through a

6    long-running, widespread advertising campaign designed to cement Glucerna's reputation as a

7    solution for blood sugar management and as the product of choice for people with diabetes, at risk

8    for diabetes, or concerned about their blood sugar. *See Id.* at 63:7-14; 65:17-22; 85:14–86:4; 94:9-

9    23; 109:2-5, 16-5; 110:1-2, 8-10, 15-16. Through this effort, Defendant ensured that the false and

10   misleading representation reached consumers everywhere and guaranteed class-wide exposure to

11   the same uniform deception.

12   **B.      Defendant's Internal Documents Further Confirm That Blood Sugar**

13          **Management Claims Are Material and Drive Consumer Purchases**

14          Defendant's own evidence confirms that its "help manage blood sugar" claim is material to

15   *all* consumers, not just those diagnosed with diabetes. For example, internal data reveal that

16   ███████████████████████████████████████████████████████████

17   ███████████████████████████████████ Gudino Decl., Ex. 4 at

18   ABBOTT_015929. Defendant's Senior Director of Insights and Analytics, Paul Nichols, testified

19   that ███████████████████████████████████████████ *Id.*,

20   Ex. 9, Nichols Dep. at 125:8-22.  Defendant refers to this broader trend as ████████████

21   ████████ (*Id.*, Ex. 4 at ABBOTT_015929), and its 2025 business objectives even call for an

22   ███████████████████████████ with ██████████████████████

23   ██████████ (*Id.*, Ex. 5 at ABBOTT_016781). Defendant knows its blood sugar message resonates

24   beyond the diabetic population, and it has intentionally built strategies to capitalize on that broad

25   consumer appeal.

26          At the same time, Defendant recognizes that blood sugar management and diabetes remain

27   urgent, widespread public health concerns that strongly influence purchasing behavior. Its internal

28   documents emphasize the scale of the consumer base for its Products: ██████████████████

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1 ███████████████████████████████████████ and ████████████

2 ████████ *Id.*, Ex. 6 at ABBOTT_015731. Defendant further notes that obesity is ████████

3 ████████ affecting ████████████ and is ████████████████ *Id.* Its 2025

4 planning guide warns that █████████████████████████████████████

5 ██████████████████████████████████████████████ *Id.*, Ex. 5

6 at ABBOTT_016781. Defendant even tracks regional prevalence by noting ████████████

7 ████████████████████████████████████████████████████

8 ████████ *Id.*, Ex. 6 at ABBOTT_015731.

 Defendant's own claims research confirms that blood sugar management claims are material

10 to consumers. *Id.*, Ex. 7 at ABBOTT_000198. Indeed, Defendant's stated purpose for its "Glucerna

11 Claims Research" was to determine █████████████████████████████████

12 ████████████—i.e., to identify which claims are most material and persuasive. *Id.*, Ex. 7 at

13 ABBOTT_000198. The results demonstrate that among Glucerna users, the top two claims out of

14 37 tested were █████████████████████████ and ███████████████

15 ████████. *Id.*; *see also id.*, Ex. 8 at ABBOTT_000083 (noting that adult nutrition shake users

16 associate Glucerna with █████████████████). Defendant's internal analysis concedes

17 that █████████████████████████ and even recognizes that █████████████

18 ██████████████████████████████████████ *Id.*, Ex. 7 at

19 ABBOTT_000198. In other words, Defendant knows that the concept of blood sugar management

20 is overwhelmingly material to consumers regardless of how it is communicated. *See id.* As

21 Defendant's documents further reveal, the █████████████████████████████ for

22 consumers. *Id.*, Ex. 6 at ABBOTT_015731. In short, Defendant's internal research and sales analysis

23 confirm that claims about blood sugar management are essential to consumer purchasing decisions

24 and a key driver of Glucerna sales.

25  **C. The Products Cannot Deliver the Promised Blood Sugar Management Benefit**

26  Defendant's claim that the Products "help manage blood sugar" is directly contradicted by

27 scientific and medical evidence. Sucralose has been shown to disrupt the body's ability to regulate

28 blood sugar by impairing glucose metabolism through various mechanisms, including altering gut

microbiota, promoting inflammation, and increasing insulin resistance. *See* Declaration of Dr. Sabyasachi Sen ("Sen Decl.") ¶¶ 16, 19, 21-22, 27-29. Rather than supporting metabolic health, the Products imbalance blood sugar levels that consumers seek to manage. *See id.*

Plaintiff's expert, Dr. Sabyasachi Sen, a practicing endocrinologist and tenured professor of medicine with over 20 years of experience in diabetes and metabolic research, has reviewed the clinical and scientific literature, as well as his own laboratory studies. Dr. Sen concludes that sucralose interferes directly with glucose and insulin pathways, promotes adipogenesis, and worsens glycemic control. *See id.* ¶¶ 14-16, 19, 21-29 (explaining that sucralose elevates reactive oxygen species ("ROS"), drives inflammation, disrupts gut microbiota, alters incretin and insulin secretion, and shifts stem cell differentiation toward fat accumulation).

As Dr. Sen explains, sucralose increases the accumulation of ROS within cells, which leads to both local and systemic inflammation. *Id.* ¶¶ 14, 19, 26-27. This inflammation, in turn, drives the development of insulin resistance—the first stage in the progression toward metabolic syndrome, prediabetes, and ultimately Type 2 diabetes. *Id.* ¶¶ 16, 19, 27. Dr. Sen's research, including studies on human adipose-derived mesenchymal stromal cells, shows that even small doses of sucralose, at concentrations comparable to or lower than those plausibly reached in the bloodstream after consuming Glucerna shakes, rapidly elevate ROS levels and enhance fat cell formation (adipogenesis). *Id.* ¶¶ 14-15 ███████████████████████████████

██████████ study used 0.2 mM sucralose, a physiologic dose within the range achievable by high NNS consumers), 25–28 (low-dose sucralose exposure caused ROS accumulation within 72 hours, promoted adipogenesis, and shifted stem cell differentiation toward fat tissue). Both ROS accumulation and adipogenesis are known to impair insulin signaling and worsen metabolic health.

Moreover, Dr. Sen notes that sucralose disrupts the gut microbiome by altering gut pH and killing beneficial bacteria, which impairs nutrient absorption and worsens systemic insulin signaling. *Id.* ¶ 22 (gut flora disruption alters glucose metabolism and promotes inflammation). These changes further destabilize glucose regulation, increase sugar cravings, and promote weight gain. *Id.* ¶¶ 22 (gut changes lead to cravings and obesity), 23 (susceptible individuals gain weight and increase inflammation after sucralose consumption). These harmful effects are observed even

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

in individuals who are not yet diabetic, demonstrating the general metabolic disturbance induced by sucralose. *Id.* ¶ 25. Based on this extensive scientific record, Dr. Sen concludes that the representation that the Products "help manage blood sugar" is medically and scientifically indefensible. *Id.* ¶ 29 (sucralose alters absorption, worsens glycemic control, and increases risk of obesity, prediabetes, and Type 2 diabetes).

These findings are consistent with public health guidance. In 2023, the World Health Organization (WHO) issued a report advising against the use of non-sugar sweeteners, including sucralose, for weight control or prevention of noncommunicable diseases such as diabetes due to insufficient evidence of their benefit and growing concerns over long-term harms. *See* ECF No. 24 ¶ 46. WHO concluded that "replacing free sugars with non-sugar sweeteners does not help with weight control in the long term" and that their use may have "potential undesirable effects . . . such as an increased risk of type 2 diabetes, cardiovascular diseases, and mortality [.]"[2]

Because Glucerna shakes contain an ingredient known to disrupt blood sugar and increase the risk of metabolic disease, they cannot credibly be marketed as supporting blood sugar management. The claim misleads consumers into the very harm they seek to avoid.

## III.    LEGAL STANDARD

Courts recognize that consumer protection claims are ideal for class treatment and that any doubt as to the propriety of certification should be resolved in favor of certification. *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913 (9th Cir. 1964). Under Rule 23, "'[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Rule 23(b)(3) allows certification where common questions of law or fact predominate over individual ones and where "a class action is superior to other available methods." Fed. R. Civ. P. 23(b)(3). Pertinent factors in this determination include,

---

[2] World Health Organization, *WHO Advises Not to Use Non-Sugar Sweeteners for Weight Control in Newly Released Guideline* (May 15, 2023), https://www.who.int/news/item/15-05-2023-who-advises-not-to-use-non-sugar-sweeteners-for-weight-control-in-newly-released-guideline; ECF No. 24 ¶ 7 n.6.

PLAINTIFF'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS CERTIFICATION
AND IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1   (A) the class members' interests in individually controlling the action, (B) whether any litigation

2   concerning the controversy has already begun, (C) the desirability of concentrating the litigation in

3   the forum, and (D) the difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). As

4   discussed below, each requirement set forth under Rule 23(a) and (b)(3) is satisfied warranting

5   certification of the Class.

6   **IV.    ARGUMENT**

7       **A.    The Class Is Adequately Defined**

8       While no ascertainability requirement exists in the Ninth Circuit, a class must still be

9   adequately defined. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124, n.4 (9th Cir. 2017);

10  *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011) ("The class definition must be

11  sufficiently definite so that it is administratively feasible to determine whether a particular person

12  is a class member."). A class is adequately defined where objective criteria can be applied to

13  determine eligibility as a class member. *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *5 (C.D.

14  Cal. Apr. 9, 2014).

15      The Class here is well-defined as: All residents of California who, within four years prior to

16  the filing of the Complaint (the "Class Period," which is August 24, 2019 to the present), purchased

17  Glucerna shakes labeled with the statement "help manage blood sugar" for personal use and not for

18  resale. The Class is objectively and sufficiently definite. It "identifies purchasers of Defendant's

19  products that included the material misrepresentation. Because the alleged misrepresentation

20  appeared on the actual packages of the products purchased, there is no concern that the class includes

21  individuals who were not exposed to the misrepresentation." *Astiana v. Kashi Co.*, 291 F.R.D. 493,

22  500 (S.D. Cal. 2013); *Forcellati*, 2014 WL 1410264, at *5 ("Here, Plaintiffs have precisely defined

23  their class based on an objective criterion: purchase of Defendants' . . . products within a prescribed

24  time frame. This is enough to satisfy Rule 23(a)'s implied ascertainability requirement.").

25      Moreover, "[t]here is no requirement that 'the identity of the class members . . . be known at

26  the time of certification.'" *Astiana*, 291 F.R.D. at 500. So long as the class definition is sufficiently

27  definite to identify putative members, as it is here, any "challenges entailed in the administration of

28  this class are not so burdensome as to defeat certification." *Id.*; *see also Lilly v. Jamba Juice Co.*,

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

1    308 F.R.D. 231, 238 (N.D. Cal. 2014) ("Few people retain receipts for low-priced goods . . . Yet it

2    is precisely in circumstances like these, where the injury to any individual consumer is small, but

3    the cumulative injury to consumers as a group is substantial, that the class action mechanism

4    provides one of its most important social benefits. In the absence of a class action, the injury would

5    go unredressed."). Here, Class members can be identified based on objective criteria, such as the

6    product purchased and the date and location of purchase. Even without documentary proof, Class

7    members may self-identify by declaring under oath that they purchased the Products during the

8    Class Period. *McCrary v. Elations Co., LLC*, No. EDCV 13-00242 JGB (OPx), 2014 WL 1779243,

9    at * 7 (C.D. Cal. Jan. 13, 2014).

10        **B.    The Rule 23(a) Criteria Are Satisfied**

11            **1.    Numerosity**

12        Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

13    impracticable[.]" Fed. R. Civ. P. 23(a)(1); *Harris*, 329 F.2d at 913 n.6. "Impracticability does not

14    mean impossibility," but rather asks the court to assess the difficulty or inconvenience of joining all

15    members of the class. *Harris*, 329 F.2d at 913-14. No cutoff number exists to determine numerosity,

16    but courts have consistently held that joinder is impracticable where the class is composed of more

17    than 40 persons. *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012).

18        Numerosity is undisputed. Defendant admits that each of the products has been purchased

19    by at least 40 people for personal use and not for resale during the class period. *See* Gudino Decl.,

20    Ex. 1 (Def.'s Resp. to Pl.'s RFA No. 18); *Rannis v. Recchia*, 380 F. App'x 646, 650-51 (9th Cir.

21    2010) (numerosity requirement satisfied when class includes at least 40 members). This admission

22    alone satisfies numerosity.

23        Numerosity is further supported by Defendant's product sales in 2024, which were estimated

24    at ▮▮▮▮▮▮. Gudino Decl., Ex. 2; *see also Capaci v. Sports Rsch. Corp.*, No. CV 19-3440

25    FMO (FFMx), 2022 WL 1133818, at *5 (C.D. Cal. Apr. 14, 2022) (numerosity satisfied based on

26    wholesale sales data where "common sense" indicated retailers sold enough units to support a class

27    of at least 40 members). The precise number of class members is not required at this stage; it is

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1  enough that the available data supports a common-sense inference that the class is sufficiently

2  numerous.

### 2.    Commonality

4      Commonality requires the existence of "questions of law or fact common to the class" and is

5  construed liberally and permissively. Fed. R. Civ. P. 23(a)(2); *Jordan v. L.A. County*, 669 F.2d 1311,

6  1320 (9th Cir. 1982); *Young v. Neurobrands, LLC*, No. 18-cv-05907-JSW, 2020 WL 11762212, at

7  *3 (N.D. Cal. Oct. 15, 2020). Notably, even "a single [common] question' will do." *Wal-Mart

8  Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (citation omitted). The class's "claims must depend

9  upon a common contention . . . [and] . . . must be of such a nature that it is capable of class-wide

10  resolution—which means that determination of its truth or falsity will resolve an issue that is central

11  to the validity of each one of the claims in one stroke." *Id*. at 350. As the Ninth Circuit explained:

12  "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal

13  issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled

14  with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th

15  Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc.*, 564 U.S. at 338.

16      In false advertising cases, "variation among class members in their motivation for purchasing

17  the product, the factual circumstances behind their purchase, or the price that they paid does not

18  defeat the relatively 'minimal' showing required to establish commonality." *Astiana*, 291 F.R.D. at

19  502. In fact, "it is an error of law for a court to inquire into the motives of each individual class

20  member at the class certification stage." *Testone v. Barlean's Organic Oils, LLC*, No. 19-CV-169

21  JLS (BGS), 2021 WL 4438391, at *4 (S.D. Cal. Sept. 28, 2021). And "[i]n determining whether the

22  'common question' prerequisite is met, a district court is limited to resolving whether the evidence

23  establishes that a common question is capable of class-wide resolution, not whether the evidence in

24  fact establishes that plaintiffs would win at trial." *Olean Wholesale Grocery Coop., Inc. v. Bumble

25  Bee Foods LLC*, 31 F.4th 651, 666-67 (9th Cir. 2022).

26       Importantly, in false advertising cases, courts routinely find that commonality has been

27  satisfied based on the question of whether the label would be deceptive to a reasonable consumer.

28  *Hilsley v. Ocean Spray Cranberries Inc.*, No. 17cv2335-GPC(MDD), 2018 WL 6300479, at *4

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

(S.D. Cal Nov. 29, 2018) (citing cases); *see also Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF, 2018 WL 4952519, at *5 (N.D. Cal. Sept. 25, 2018) ("Numerous courts have recognized that a claim concerning alleged misrepresentations on packaging to which all consumers were exposed is sufficient to satisfy the commonality requirement because it raises the common question of whether the packaging would mislead a reasonable consumer."); *Prescott v. Reckitt Benckiser LLC*, No. 20-cv-02101-BLF, 2022 WL 3018145, at *4 (N.D. Cal. July 29, 2022) (same).

Numerous common questions exist here. *See* ECF No. 24 ¶ 81 (listing common questions). These questions satisfy commonality because an answer to these questions—for instance, whether Defendant's representation that the Products "help manage blood sugar" deceive reasonable consumers—will resolve "in one stroke" an issue that is central to the validity of each Class member's claims under California's consumer protection laws. *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 607-08 (N.D. Cal. 2018) (citing cases reasoning "Plaintiffs argue that the common question is: 'was Defendant's 'Made From Real Ginger' label likely to deceive reasonably consumers?' In other consumer fraud cases in this district, courts have found similar common questions to be sufficient to satisfy commonality.") (citations omitted); *see also Wal-Mart Stores, Inc.*, 564 U.S. at 359 (holding that even a single common question is sufficient).

Notably, the common questions here will be resolved by application of the same facts because Plaintiff and Class members all purchased and were exposed to the Products bearing the same misrepresentation. *See* Masry Decl. ¶ 3; *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1099 (N.D. Cal. 2018) (citing *Zakaria v. Gerber*, No. LA CV15-00200 JAK (Ex), 2016 WL 6662723, at *8 (C.D. Cal. Mar. 23, 2016)) ("[C]ourts have repeatedly recognized that '[w]here the alleged misrepresentation appears on the label or packaging of each item being sold, class-wide exposure to it may be inferred.'"); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 569 (C.D. Cal. 2014) ("Because all class members were exposed to the statement and purchased [the] products, there is 'a common core of salient facts.'"); *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411- YGR, 2016 WL 3844334, at *4-5 (N.D. Cal. July 15, 2016) (finding "sufficient common questions of fact and law" when "[t]he central question here is whether [defendant's] labels were likely to deceive a

1  reasonable consumer."); *Milan v. Clif Bar & Co.*, 340 F.R.D. 591, 598 (N.D. Cal. 2021) (finding

2  commonality where "the main liability question … is the same: were the challenged statements

3  likely to mislead an objectively reasonable consumer."). The "help manage blood sugar" claim is

4  featured on the front of every Product label throughout the Class Period (*see* Gudino Decl., Ex. 3),

5  and Plaintiff can prove through common scientific evidence that the claim is false. Commonality is

6  therefore satisfied.

7  ### 3.    Typicality

8  Typicality and commonality are often considered together because they "tend to merge" and

9  "serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims

10  are so inter-related that the interests of the class members will be fairly and adequately protected in

11  their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157, n.13 (1982). Rule 23(a)(3) requires

12  that "the claims or defenses of the representative parties are typical of the claims or defenses of the

13  class[.]" Fed. R. Civ. P. 23(a)(3). In the Ninth Circuit, typicality is satisfied if "the unnamed class

14  members have injuries similar to those of the named plaintiffs and the injuries result from the same,

15  injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001), *abrogated on*

16  *other grounds by Johnson v. Cal.*, 543 U.S. 499 (2005). However, "[t]ypicality does not mean that

17  the claims of the class representatives must be identical or substantially identical to those of absent

18  class members." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Rather, they need only be

19  "reasonably co-extensive with those of absent class members[.]" *Hanlon*, 150 F.3d at 1020. And

20  notably, "[t]ypicality refers to the nature of the claim or defense of the class representative, and not

21  to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976

22  F.2d 497, 508 (9th Cir. 1992) (cleaned up).

23  Courts find typicality in cases where defendants utilize "sufficiently similar" labeling claims

24  or omissions. *See, e.g., Beck-Ellman v. Kaz USA*, 283 F.R.D. 558, 566 (S.D. Cal. 2012) (certifying

25  claims on behalf of all models in "heating pad" product line where all "heating pads contain[ed]

26  similar omission[s]" and were "sufficiently similar"). Thus, Plaintiff may represent all members of

27  the Class, regardless of which Product variety they purchased. *In re TFT–LCD (Flat Panel) Antitrust*

28

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1  *Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. Mar. 28, 2010) ("The typicality requirement does not mandate

2  that the products purchased . . . must be the same as those of absent class members.").

3       Typicality, like commonality, is satisfied here because Plaintiff and the Class all purchased

4  the Products bearing the same material and deceptive "help manage blood sugar" claim. *See* Masry

5  Decl. ¶ 3. Plaintiff purchased the Products relying on Defendant's representation "help manage

6  blood sugar," believing this claim to be true. *Id.* Plaintiff's purchasing decision and willingness to

7  pay more for the Products were directly influenced by his reliance on this representation. *Id.* No

8  more is required to satisfy typicality. *See, e.g.*, *Broomfield*, 2018 WL 4952519, at *5-6 (finding

9  typicality satisfied where plaintiffs relied on deceptive representations causing them to pay more for

10  products); *Sinatro v. Barilla Am., Inc.*, No. 22-cv-03460-DMR, 2024 WL 2750018, at *9 (N.D. Cal.

11  May 28, 2024) (typicality satisfied where plaintiffs sought relief for products purchased in reliance

12  on allegedly false and misleading labels); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal.

13  2012) (typicality satisfied where plaintiffs and class were exposed to the same misrepresentations).

14       Months before class certification was properly at issue, Defendant filed a "motion to deny

15  class certification." *See generally* ECF No. 77. The Court declined to hear it, noting the arguments

16  could be considered at the proper time. *See* ECF No. 80. Defendant's motion raised four arguments

17  challenging Plaintiff's typicality and adequacy. As explained below, none have merit.

i.    *Plaintiff Relied on the "Help Manage Blood Sugar" Claim*

19       Defendant argues that Plaintiff is atypical because he relied on the "help manage blood sugar"

20  claim rather than the adjacent phrase "made with CarbSteady." ECF No. 77 at 5–6. This argument

21  fails for at least two reasons. First, courts recognize that consumers are not expected to parse labels

22  with legal precision; instead, the inquiry centers on the overall message the label communicates. *See*

23  *FTC v. Braswell,* No. CV 03-3700 DT (PJWx), 2005 WL 4227194, at *5 (C.D. Cal. Sept. 26, 2005)

24  (rejecting motion for summary judgment when "the net impression of the [challenged]

25  representations [were] such that the representations would be likely to mislead reasonable

26  consumers.").

27       Second, Defendant's own internal documents demonstrate that "help manage blood sugar"

28  has been tested as a standalone marketing message, distinct from "CarbSteady." *See* Gudino Decl.,

1  Ex. 7 at ABBOTT_000198. In fact, Defendant's consumer testing ranked ████████████

2  ██████████████████████████████████████████████████████████████████████████

3  ██████████████████████████████████████████████—underscoring

4  that consumers do not view the two claims together or the same. *Id.* Indeed, Plaintiff, like other

5  reasonable consumers, does not know what "CarbSteady" even means, making it implausible that it

6  somehow conditions or limits the far more understandable blood sugar claim. Gudino Decl., Ex. 10,

7  Masry Dep. at 122:9-11 ("A. I didn't rely on CARBSTEADY portion. I didn't understand what that

8  meant. I relied on the phrase 'help manage blood sugar.'").

9      Plaintiff acted just as a reasonable consumer would. He testified that the "help manage blood

10 sugar" claim was the main reason for his Product purchases and that he specifically noticed and

11 relied on this front-label statement in making his purchasing decision. *See* Gudino Decl., Ex. 10,

12 Masry Dep. at 123:4-10 ("Q. And that it helps manage blood sugar? A. Yes. Q. And you read that

13 claim? A. Yes. Q. And you relied on that claim in purchasing the product? A. Yes."). Plaintiff was

14 not confused about what "help manage blood sugar" meant or what claim he was relying on; he

15 confirmed this during his deposition, and that this representation was material to his purchase

16 decision.

17     Defendant's contention that Plaintiff "cherry-picked" a portion of the Product label ignores

18 the reality of how consumers interact with product packaging. As this Court has already recognized,

19 a reasonable consumer could interpret the "help manage blood sugar" statement displayed on the

20 front of Glucerna's packaging as representing that the Products provide blood sugar management

21 benefits, not just in comparison to other foods, but in a more general sense. ECF No. 42 at 6

22 ("[P]laintiffs have plausibly alleged that a reasonable consumer might understand Glucerna labels

23 in full context to claim that the products can help manage blood sugar and diabetes generally, not

24 just in comparison to foods with high glycemic carbohydrates"). Nothing about Plaintiff's testimony

25 or reliance undermines that conclusion.

26     Consumers are not required to investigate vague, proprietary terms like "CarbSteady"—

27 particularly when they did not rely on them. Plaintiff testified that he relied on the Products' "help

28 manage blood sugar" claim, was persuaded by their advertised "benefits for regulating blood sugar

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1  and for reducing possibility of diabetes," and believed the claim meant the Product "helped manage

2  blood sugar." Gudino Decl., Ex. 10, Masry Dep. at 104:6-8, 122:9-11, 130:7. He did not rely on or

3  even understand the "CARBSTEADY" portion of the label, which he is not challenging, and the

4  law does not require consumers to investigate proprietary terms, especially when the consumer did

5  not rely on that claim. *See Leyman v. Kroger Co.,* No. 3:24-CV-01001-L-VET, 2025 WL 2051202,

6  at *3 (S.D. Cal. July 22, 2025) ("If the front label is misleading, then 'reasonable consumers should

7  [not] be expected to look beyond misleading representations on the front of the box to discover the

8  truth from the ingredient list in small print on the [*7]  side of the box,'") (quoting *Williams v.*

9  *Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)).

10      While *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093 (9th Cir. 2023), holds that back-

11  label review may be appropriate where the front label itself is ambiguous, that rule does not apply

12  here. The "help manage blood sugar" claim is clear and unambiguous. Moreover, Defendant's own

13  research confirms that this is the message that resonates most with consumers—not an obscure,

14  undefined reference to "CarbSteady," which carries no commonly understood meaning and would

15  not be readily interpreted by the average consumer. *See also* Gudino Decl., Ex. 7 at

16  ABBOTT_000198 ███████████████████████████████████████████████

17  ██████████████████████████████████████); Ex. 6 at ABBOTT_015731

18  ████████████████████████████).

19      Even if a consumer did look to the inconspicuous disclaimer buried in the side or back label

20  (i.e., "Designed to help minimize blood sugar spikes in people with diabetes compared to high

21  glycemic carbohydrates") it would not dispel the deception. That "disclaimer" reinforces the

22  impression that the Products help with blood sugar management, and as the Court has already

23  recognized, "even assuming consumers read this clarification, the Court cannot conclude . . . that a

24  reasonable consumer would necessarily understand the side-label clarification to limit the scope of

25  the front label's blood sugar claims in the way that Abbott suggests." ECF No. 42 at 7. Defendant's

26  suggestion that a reasonable consumer would have researched technical language, focus on fine

27  print cross-referenced by a dagger symbol next to clear language, or otherwise look beyond the clear

28  front-label promise is contrary to the law and common sense.

Defendant's reliance on *Weiss v. Trader Joe's Co.*, 838 F. App'x 302 (9th Cir. 2021) for the proposition that a consumer cannot "cherry-pick" labeling claims is misplaced. There, in an unpublished and non-precedential decision concerning bottled water, the Court affirmed a dismissal after determining that no reasonable consumer would interpret "ionized to achieve the perfect balance" to refer to *the consumer's internal pH*, including because the rest of the label made clear it referred to the water's balance. *Id.* at 303. It also highlighted how the interpretation lacked "common sense." *Id.* Here, by contrast, the "help manage blood sugar" claim is, on its own, a representation the Court has already found plausibly misleading at the motion to dismiss stage. ECF No. 42 at 5–6.

Equally distinguishable is *Whiteside v. Kimberly-Clark Corp.*, 108 F.4th 771 (9th Cir. 2024). There, the Ninth Circuit held that an asterisked, front-label environmental claim was sufficiently clarified by an explicit "70% by weight" qualifier directly adjacent to the challenged claim. *Id.* at 784-85. That is not the case here. Under the reasonable-consumer standard, the issue is not merely whether Plaintiff personally noticed or relied on "Carbsteady," but whether the "help manage blood sugar" claim itself was clear or whether a reasonable consumer would need to consult any additional clarifying language. *See Salazar v. Target Corp.*, 83 Cal. App. 5th 571, 579 (2022) (what matters in the reasonable consumer test "is how consumers actually behave—how they perceive advertising and how they make decisions") (internal citations omitted). The "help manage blood sugar" claim is neither ambiguous nor does it appear with a directly adjacent and unambiguous qualifier, and thus cannot be "cured" in the manner found dispositive in *Whiteside*.

Ultimately, Plaintiff's reliance on the "help manage blood sugar" claim without regard to ambiguous technical language or background qualifiers is typical, both of reasonable consumers and of the Class he seeks to represent. Differences in whether some consumers noticed, relied on, or also read other label information do not defeat typicality. *See, e.g.*, *Sinatro v. Barilla Am., Inc.*, No. 22-CV-03460-DMR, 2024 WL 2750018, at *9 (N.D. Cal. May 28, 2024), reconsideration denied, No. 22-CV-03460-DMR, 2024 WL 4008715 (N.D. Cal. Aug. 29, 2024) (rejecting argument that class representatives were atypical because some class members may have read other label statements and holding that "individual experience with a product is irrelevant because the injury under the

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1    UCL, FAL, and CLRA is established by an objective test"). And where a plaintiff testifies to relying

2    on an affirmative health message displayed on the front label, class certification is appropriate. *See,*

3    *e.g.*, *Timmins v. Walmart, Inc., Defendant.,* No. 2:24-CV-02960-DJC-JDP, 2025 WL 1580525, at

4    *4 (E.D. Cal. June 4, 2025) ("[T]he reasonable consumer standard is evaluated from the perspective

5    of the ordinary consumer within the larger population, who is not typically exceptionally acute or

6    sophisticated or wary and suspicious of advertising claims.") (cleaned up); *Brod v. Sioux Honey*

7    *Ass'n, Co-op.*, 927 F. Supp. 2d 811, 828 (N.D. Cal. 2013) (same)).

8                    *ii.    Lack of Proof of Purchase Does Not Present a Unique Defense*

9            Defendant argues Plaintiff is atypical because he lacks receipts or other proof of purchase,

10   but cites no authority that class representatives in consumer cases must retain receipts for everyday

11   products like Glucerna shakes routinely bought at grocery and drugstores. Nor could it. Courts

12   recognize that most consumers do not keep proof of purchase for inexpensive, frequently purchased

13   food products, and therefore reject this type of objection at class certification. *See Pierce-Nunes v.*

14   *Toshiba Am. Info. Sys., Inc.*, No. CV 14-7242-DMG (KSX), 2016 WL 5920345, at *4 (C.D. Cal.

15   June 23, 2016) (holding that a plaintiff's lack of purchase proof "will not put him in conflict with

16   other class members"); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 540 (N.D. Cal. 2012)

17   (same). Far from being atypical, Plaintiff's inability to produce receipts actually reflects the common

18   experience of class members. He credibly testified to purchasing Glucerna during the class period

19   and, like most consumers, simply did not retain receipts. Gudino Decl., Ex. 10, Masry Dep. at

20   147:10-12. This is not a unique defense and poses no barrier to typicality. *See also LeGrand v.*

21   *Abbott Lab'ys*, No. 22-CV-05815-TSH, 2025 WL 2144836, at *5 (N.D. Cal. July 28, 2025) (recently

22   rejecting Abbott's similar "no receipt" argument because "receipts are not a prerequisite to a

23   cognizable consumer class action").

24                    *iii.    Plaintiff's Medical Status Is Irrelevant to Typicality*

25           Defendant's argument that Plaintiff is atypical because he is not diabetic or pre-diabetic

26   misses the mark. The Class is defined not by medical diagnosis, but by exposure to and payment of

27   a premium for the same deceptive "help manage blood sugar" claim. That claim is false for all

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

consumers, regardless of health status, because the Products do not deliver the promised benefit. Rule 23 requires no shared medical diagnosis, and Defendant cites no authority to the contrary.

Plaintiff is typical of the Class including because he was exposed to the same front-label misrepresentation, relied on it in making his purchase, and suffered the same economic injury as every other Class Member. Plaintiff is concerned about blood sugar, as reasonable consumers are, and he also has a family history of diabetes (Masry Decl. ¶ 3)—a demographic Defendant's own internal documents identify as a key market for the Products (*see* Gudino Decl., Ex. 6 at ABBOTT_015731 (noting " ████████████████████████████████████████████ ████████████████████████████████████████████ ); Ex. 4 at ABBOTT_015929 (internal ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ].".); Ex. 9, Nichols Dep. at 115:14-15 (admitting ████████████████████████ ████████████████████████████ ); Ex. 4 at ABBOTT_015929, Ex. 5 at ABBOTT_016781 (recognizing and pursuing ████████████████████████████████████████ ████████████████████████████████████ .)). He purchased the Products based on the "help manage blood sugar" claim and was motivated by a desire to manage his blood sugar and reduce his risk of diabetes. Gudino Decl., Ex. 10, Masry Dep. at 104:6-8, 122:9-11, 130:7 (testifying that he relied on the Products' "help manage blood sugar" claim and was persuaded by the advertised "benefits for regulating blood sugar and for reducing possibility of diabetes," because he believed the claim meant the Product "helped manage blood sugar").

Requiring a class representative to have a diabetes diagnosis would also misunderstand the theory of Plaintiff's claims—that management of blood sugar is an objectively material claim to all. Defendant's own documents confirm this. *See* Gudino Decl., Ex. 4 at ABBOTT_015929 (recognizing the ████████████████████████████ among all consumers). Rule 23 does not require class representatives to have an identical health profile to every class member; it simply requires exposure to the same material misrepresentation and the same type of injury. Both exist here. *See Broomfield*, 2018 WL 4952519, at *5.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    Simply put, the Products' appeal, and the materiality of the "help manage blood sugar" claim

2 extends well beyond any specific diagnosis, as evidenced by Defendant's own market research, sales

3 data, and executive testimony.

4                *iv.*        *Plaintiff's Prior Litigation Does Not Render Him Atypical*

5    Attempting to undermine Plaintiff's typicality, Defendant also launches a common defense

6 tactic: labeling him a "serial litigant." But this has no legal relevance to the typicality analysis. *See,*

7 *e.g.*, *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) (finding that a

8 "serial plaintiff" is not a basis for finding that a plaintiff is atypical); *see also Chinitz v. NRT W.,*

9 *Inc*., No. 18-CV-06100-NC, 2019 WL 4142044, at *4 (N.D. Cal. Aug. 30, 2019) ("[B]eing a serial

10 or professional plaintiff is generally not grounds for inadequacy."). Nor does it have a basis in fact.

11 Defendant offers no evidence (nor could it) that Plaintiff has filed another action involving the same

12 or even similar legal theories, factual allegations, or subject matter as those at issue. There is no

13 pattern of repeated, self-serving class action litigation related to false advertising, food labeling, or

14 consumer protection claims. Nor is there any suggestion of a history of settling class claims for

15 personal gain to the detriment of absent class members.

16    The authorities on which Defendant relies further highlight why its argument fails.  In *Wuest*

17 *v. My Pillow, Inc.*, No. 3:18-cv-03227-EMC, 2019 WL 3577176 (N.D. Cal. Aug. 6, 2019), the court

18 denied class certification only after finding a plaintiff had a well-documented history of filing class

19 actions under the very same statute, almost always settling for personal benefit without any class

20 relief, and was thus uniquely subject to credibility and adequacy attacks that would predominate the

21 litigation. Likewise, *Backus v. ConAgra Foods, Inc.,* No. C 16-00454 WHA, 2016 WL 7406505

22 (N.D. Cal. Dec. 22, 2016), involved pursuing class actions (or any other actions) involving the same

23 statute, factual predicates, or legal theories. Defendant cannot point to any prior case where Plaintiff

24 pursued similar consumer fraud or food labeling claims, let alone did so to the detriment of a putative

25 class, because none exist. The mere fact that a plaintiff has been involved in unrelated litigation is

26 not grounds for defeating typicality or adequacy. *See Nevarez v. Forty Niners Football Co., LLC*,

27 326 F.R.D. 562, 583 (N.D. Cal. 2018) (rejecting argument that plaintiff was an inadequate class

28 representative for previously filing ADA cases). What matters is whether that litigation

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

PLAINTIFF'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS CERTIFICATION
AND IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

1  demonstrates a pattern of unique vulnerabilities or personal motives that would distract from class-

2  wide issues. No such showing can be made here.

### 4.    Adequacy

4      Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

5  interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has articulated two criteria for

6  determining legal adequacy: (1) whether the named plaintiffs and their counsel have any conflicts

7  of interest with other class members; and (2) whether they will prosecute the action vigorously on

8  behalf of the class. *See Hanlon*, 150 F.3d at 1020; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970,

9  985 (9th Cir. 2011). As to the latter, "[t]he relevant inquiry is whether the plaintiffs maintain a

10  sufficient interest in, and nexus with, the class so as to ensure vigorous representation." *In re Online*

11  *DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). Both criteria favor certification here.

12      First, Plaintiff interests and those of the Class members are aligned, and there are no conflicts

13  of interest. *See* Masry Decl. ¶ 7. Plaintiff purchased the Products, reasonably relying on Defendant's

14  uniform labeling and advertising claim that the Products "help manage blood sugar" and believing

15  that the Products were appropriate for individuals managing diabetes or concerned about blood sugar

16  control. *Id.* ¶ 3. His individual claims and the claims of the Class arise from the same deceptive

17  conduct by Defendant, and Plaintiff seeks remedies that are equally applicable and beneficial to the

18  Class. *Id.* ¶¶ 3, 8.

19      Second, Plaintiff has demonstrated a strong commitment to this litigation, actively

20  participating to date and affirming his readiness to continue doing so following class certification—

21  including sitting for his deposition, responding to discovery, and testifying at trial, if necessary. *Id.*

22  ¶¶ 5, 6. Plaintiff has demonstrated his dedication to vigorously pursuing this action by staying

23  informed of case developments and responding diligently to discovery requests. *Id.* ¶ 6. Plaintiff

24  understands the nature of a class action and his duty to fairly and adequately represent the interests

25  of the Class. *Id.* ¶¶ 5, 6.

26      Plaintiff's counsel are equally committed to pursuing this action in the best interests of the

27  Class and have no conflicts of interest. Gudino Decl. ¶ 4. When determining whether class counsel

28  is adequate, "a court may examine the attorneys' professional qualifications, skill, experience, and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

resources. The court may also look at the attorneys' demonstrated performance in the suit itself." *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (citation omitted). Clarkson Law Firm, P.C. is a well-respected firm with extensive experience in complex and class action litigation, having successfully litigated numerous similar consumer protection class actions. Gudino Decl., Ex. 11. Class counsel also have the resources necessary to vigorously litigate this action. *Id*. ¶ 4.

Throughout this litigation, Plaintiff and his counsel have diligently safeguarded the interests of the Class. They successfully opposed Defendant's motion to dismiss (*see* ECF No. 42) and have gathered extensive class-wide evidence supporting class certification. *Id.* This includes conducting a thorough pre-litigation investigation of Defendant's labeling and advertising, serving comprehensive written discovery, resolving discovery disputes through detailed meet-and-confer efforts, and analyzing voluminous documents and discovery responses. *Id.* Additionally, Plaintiff's counsel subpoenaed third-party records, engaged in mediation efforts, retained leading experts, deposed Defendant's Rule 30(b)(6) corporate representatives, and skillfully managed the day-to-day aspects of the litigation. *Id.* Thus, the adequacy requirement has been fully satisfied.

## V.    THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED

Because common questions of law and fact lie at the core of this case, Rule 23(a)(2) is satisfied, triggering the Rule 23(b)(3) analysis on whether these questions predominate over individual ones. *Hanlon*, 150 F.3d at 1022 ("In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues."). Under Rule 23(b)(3), "[a] class action may be maintained if . . . the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to the other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied here.

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454 (2016) (quoting *Amchem*, 521 U.S. at 623). Evaluating predominance "begins . . . with the elements of the underlying cause[s] of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). "When common questions present a significant aspect of the case and they can be

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Case No. 5:23-cv-04348-NW                    20
PLAINTIFF'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS CERTIFICATION
AND IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

1   resolved for all members of the class in a single adjudication, there is clear justification for handling

2   the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation

3   omitted). "Class actions in which a defendant's uniform policies are challenged generally satisfy

4   the predominance requirement of Rule 23(b)(3)." *Castro v. Paragon Indus., Inc.*, No. 1:19-cv-

5   00755-DAD-SKO, 2020 WL 1984240, at *10 (E.D. Cal. Apr. 24, 2020) (citations omitted). Thus,

6   "[i]n cases alleging misrepresentation, common issues predominate when plaintiffs are exposed to

7   [a] common set of representations about a product." *Schneider v. Chipotle Mexican Grill, Inc*., 328

8   F.R.D. 520, 539-40 (N.D. Cal. 2018) (cleaned up). That is precisely the case here.

**A.**    **Class Claims Will Be Resolved Through Objective Standards and Common**

        **Evidence That Apply Class-Wide**

        **1.**    **California's Consumer Protection Laws**

12  Plaintiff's California consumer protection claims are subject to uniform resolution: "[f]or

13  purposes of class certification, the UCL, FAL, and CLRA are materially indistinguishable."

14  *Forcellati*, 2014 WL 1410264, at *9 ("Each statute allows Plaintiffs to establish the required

15  elements of reliance, causation, and damages by proving that Defendants made what a reasonable

16  person would consider a material misrepresentation."). The determinations necessary to adjudicate

17  the CLRA, FAL, and UCL are not made with regard to each class member, but under a single,

18  objective, and common "reasonable consumer" standard. *Whiteside*, 108 F.4th at 777 (quoting

19  *Williams*, 552 F.3d at 938). The "objective test renders claims under the UCL, FAL and CLRA ideal

20  for class certification because they will not require the court to investigate class members' individual

21  interaction with the product." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal.

22  2012). This is especially true where, as here, the "help manage blood sugar" claim is a uniform

23  claim  conveying a material health benefit.

24  A plaintiff must prove actual reliance under the CLRA; however, "reliance may be presumed

25  as to the entire Class if [Defendant's] misrepresentations were material." *Martin v. Monsanto Co.*,

26  No. ED CV 16-2168-JFW (SPx), 2017 WL 1115167, at *6 (C.D. Cal. Mar. 24, 2017); *In re Tobacco

27  II Cases*, 46 Cal. 4th 298, 327 (2009) ("[A] presumption, or at least an inference, of reliance arises

28  wherever there is a showing that a misrepresentation was material."). Here, Plaintiff attests that he

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

1   read and relied upon Defendant's "help manage blood sugar" claim and reasonably understood the

2   claim to mean that the Products would be helpful for those generally concerned about their blood

3   sugar health. Masry Decl. ¶ 3; ECF No. 24 ¶ 23. This representation was material to Plaintiff's

4   decision to purchase the Products. Had he known the Products did not and could not provide the

5   advertised benefit, he would not have purchased the Products or would have paid significantly less.

6   Masry Decl. ¶ 3.

7        "A representation is material . . . if a reasonable consumer would attach importance to it *or* if

8   the maker of the representation knows or has reason to know that its recipient regards or is likely to

9   regard the matter as important in determining his choice of action." *Hinojos v. Kohl's Corp.*, 718

10  F.3d 1098, 1107 (9th Cir. 2013). Critically here, materiality is subject to common proof because it

11  is "judged according to an objective standard and so '[t]he alleged misrepresentations and

12  omissions, whether material or immaterial, would be so equally for all [consumers] composing the

13  class.'" *Mullins v. Premier Nutrition*, No. 13-cv-01271-RS, 2016 WL 1535057, at *5 (N.D. Cal.

14  Apr. 15, 2016) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013)).

15  As a result of this objective test, Plaintiff's "claims under the UCL, FAL, and CLRA [are] ideal for

16  class certification because they will not require the court to investigate 'class members' individual

17  interaction with the product.'" *Bradach v. Pharmavite, LLC*, 735 F. App'x. 251, 254-55 (9th Cir.

18  2018).

19       While Plaintiff does not need to prove materiality at the class certification stage (*see Hadley*,

20  324 F. Supp. 3d at 1115), the significance of the "help manage blood sugar" claim is evident. *See*

21  *also Milan*, 340 F.R.D. at 599 ("Questions of materiality and reliance also do not defeat

22  predominance."). Defendant's own conduct shows the "help manage blood sugar" claim is material

23  as it is featured on the front label of each Product (*see* Gudino Decl., Ex. 3) and was consistent with

24  Defendant's broader efforts to market the Product to those concerned about their blood sugar health

25  (*see* Gudino Decl., Ex. 4 at ABBOTT_ 015929). *See Kumar*, 2016 WL 3844334, at *8 ("Materiality

26  can be shown by a third party's, or defendant's own, market research showing the importance of

27  such representations to purchasers.") (collecting cases).

28       Indeed, Defendant's "███████████████████████



. Gudino Decl., Ex. 7 at ABBOTT_000198. Defendant's analysis concedes that "

*Id.* Defendant's

, which demonstrates the broad classwide reliance and interest in blood sugar management among the general population. *See* Gudino Decl., Ex. 4 at ABBOTT_015929. Defendant's

. Gudino Decl., Ex. 6 at ABBOTT_015731, Ex. 5 at ABBOTT_016781. Overall, Defendant's own market research, business strategy, and marketing campaign provide common evidence that the "help manage blood sugar" claim is material to consumers.

Plaintiff, like other reasonable consumers, attached great importance to this representation. Plaintiff relied on the "help manage blood sugar" claim when deciding to purchase the Products, as he believed the claim indicated the Products would be suitable for people generally concerned about their blood sugar. Masry Decl. ¶ 3; Gudino Decl., Ex. 10, Masry Dep. at 104:6-8, 122:9-11, 130:7 (testifying he relied on the Products' "help manage blood sugar" claim, was persuaded by the advertised "benefits for regulating blood sugar and for reducing possibility of diabetes," and believed the claim meant the Product "helped manage blood sugar."). Had Plaintiff known that the Products have harmful effects on blood sugar and metabolic health, he would not have purchased the Products or would have paid less for them. *See id.* That reliance is foreseeable where health claims are involved, because consumers heavily value assurances relating to health, wellness, and disease prevention. *See Kumar*, 2016 WL 3844334, at *8; *see Kwikset Corp. v. Superior Court*, 246 P.3d 877, 892 (Cal. 2011) ("Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a

PLAINTIFF'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS CERTIFICATION
AND IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

*Clarkson Law Firm, P.C.    |    22525 Pacific Coast Highway    |    Malibu, CA 90265*

1   particular source.").

2       Additionally, because every Class member was exposed to the same "help manage blood

3   sugar" claim, the predominating common issues include whether Defendant's representation about

4   the Products was false and misleading, and whether it was likely to deceive a reasonable consumer.

5   *See Johns*, 280 F.R.D. at 557. These are objective questions subject to common proof and not

6   dependent on individualized circumstances. *See Rodman v. Safeway, Inc.*, 2014 WL 988992, at *9

7   (N.D. Cal. Mar. 10, 2014) ("The scope and proper interpretation of the objective words of the

8   parties' agreement is a common question that applies commonly to all members of the class, is an

9   issue whose resolution will drive resolution of the litigation, and will predominate over any

10  individualized issues.").

11      In any event, because materiality is judged on the objective, reasonable consumer standard,

12  its determination is not only subject to common proof, but "is a question of fact to be determined at

13  a later stage." *Johns*, 280 F.R.D. at 558-59. Therefore, materiality and reliance pose no hindrance

14  to certification of the Class.

15      Common questions also predominate as to the "unfair," "unlawful," and "fraudulent" prongs

16  of the UCL. Under the "unfair" prong of the UCL, "[t]he court must weigh the utility of the

17  defendant's conduct against the gravity of the harm to the alleged victim . . . ." *Motors, Inc. v. Times*

18  *Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980). Defendant's efforts to persuade consumers to

19  purchase the Products, and the harm resulting from these purchases, are issues common to members

20  of the Class. Deceiving consumers with a false health claim provides no legitimate utility and

21  imposes serious risks to metabolic health. Similarly, under the "unlawful prong," unlawful business

22  acts include "any practices forbidden by law[.]" *Rush v. Nutrex Research, Inc.*, No. C 12-01060 LB,

23  2012 WL 2196144, at *8 (N.D. Cal. June 13, 2012). Defendant's breaches of the FAL, CLRA, and

24  other laws alleged herein are predicate violations supporting claims under the unlawful prong of the

25  UCL. *See Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008). Finally,

26  regarding the "fraudulent" prong, Plaintiff must establish that "members of the public are likely be

27  deceived" by Defendant's misrepresentation, which is an objective test subject to common proof, as

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

PLAINTIFF'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS CERTIFICATION
AND IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

1    described above. *See Williams*, 552 F.3d at 938 (internal quotes omitted). Therefore, predominance

2    is satisfied here for the UCL, FAL, and CLRA claims.

### 2.    Breach of Express Warranty

4        Plaintiff also seeks certification of his express warranty claims. To establish a breach of

5    express warranty under California law, a plaintiff must show that: "(1) the seller's statements

6    constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part

7    of the basis of the bargain; and (3) the warranty was breached." *Zakaria*, 2016 WL 6662723, at *13;

8    *see also* Cal. Com. Code § 2313(1)(a)-(b). Here, Defendant's uniform labeling statement—"help

9    manage blood sugar"—constitutes affirmation of fact and description of the Products that were part

10   of the basis of the bargain. This representation appeared on every Product label and was marketed

11   specifically to convey health benefits to consumers including blood sugar management. *See* Gudino

12   Decl., Ex. 3.

13       Because every Class member was exposed to the same misleading health-related

14   representation, whether the statement constitutes an express warranty and whether that warranty was

15   breached are common questions susceptible to generalized proof. *See Martin*, 2017 WL 1115167,

16   at *7 (certifying express warranty claims in a false labeling case). Importantly, because reliance is

17   not an element of express warranty claims under California law, individual issues do not defeat

18   predominance. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 411 (S.D.N.Y. 2015) (certifying

19   California breach of express warranty claim). Thus, whether Defendant's health related

20   representation constituted an express warranty and whether it was breached turns entirely on

21   common evidence regarding what Defendant uniformly promised and failed to deliver. Defendant's

22   health-focused marketing campaign represents a common course of conduct that uniformly affected

23   all Class members. This misrepresentation formed the basis of the bargain and is objectively false

24   and misleading in ways that rendered the Products incapable of meeting the promised benefits.

### 3.    Unjust Enrichment

26       Like the warranty claims, Plaintiff's unjust enrichment claim satisfies Rule 23's

27   predominance requirement. Under California law, unjust enrichment (or quasi-contract) claims

28   require common proof of Defendant's conduct and raise the same legal issues for all Class members.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    *See Astiana*, 291 F.R.D. at 505 (certifying unjust enrichment claim based on uniform product

2    labeling); *see also Smith v. Keurig Green Mountain, Inc.*, 2020 WL 5630051, at *5 (N.D. Cal. Sept.

3    21, 2020) ("[T]he Court finds the inquiry presented here—whether [Defendant] was unjustly

4    enriched by the proposed class members' purchase of the Products given its allegedly false

5    representations [ ]—raises the same legal issues as to all class members.").

6         Plaintiff alleges that Defendant was unjustly enriched by marketing and selling the Products

7    based on a uniform, false, and misleading representation that they "help manage blood sugar," a

8    claim Plaintiff relied upon in purchasing the Products. ECF No. 24 ¶¶ 157-162; Masry Decl. ¶ 3.

9    The "help manage blood sugar" claim is false, because a product that deregulates blood sugar,

10   exacerbates insulin resistance, and increases diabetes risk cannot "help manage blood sugar" for

11   individuals with or without diabetes. Defendant benefitted financially from this misrepresentation

12   by charging a price premium and driving consumer purchases through deception, while Plaintiff and

13   the Class were deprived of the benefit of their bargain. ECF No. 24 ¶¶ 157-162. Because this unjust

14   enrichment arose from a common course of conduct and identical labeling, the legal and factual

15   issues are the same for all Class members. Predominance is therefore satisfied for the unjust

16   enrichment claim.

17   **B.    The Class's Damages Model Is Capable of Measuring Class-wide Damages and**

18   **Is Consistent with the Class's Theory of Liability**

19        The UCL, FAL, and CLRA all authorize courts to grant restitution to private plaintiffs

20   bringing claims under these statutes. As noted in *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal.

21   App. 4th 663, 694 (2006), and supported by California law (Cal. Bus. & Prof. Code §§ 17203,

22   17535; Cal. Civ. Code § 1780(a)(3)), courts have the authority to provide such restitution.

23        "Class-wide damages calculations under the UCL, FAL, and CLRA are particularly forgiving.

24   California law 'requires only that some reasonable basis of computation of damages be used, and

25   the damages may be computed even if the result reached is an approximation.'" *Lambert v.

26   Nutraceutical Corp.*, 870 F.3d 1170, 1183 (9th Cir. 2017) (reversed on other grounds). In false

27   advertising cases, courts have consistently recognized the "price premium" attributable to

28

PLAINTIFF'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS CERTIFICATION
AND IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

*(left margin)* Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1  misrepresentations on product labeling as a valid measure of damages. *Hadley*, 324 F. Supp. 3d at

2  1104; *Prescott*, 2022 WL 3018145, at \*10.

3      Conjoint analysis is widely regarded as an effective method for isolating this price premium

4  *see e.g.*, *Hadley*, 324 F. Supp. 3d at 1107; *Lytle v. Nutramax Labs., Inc.*, 2022 WL 1600047, at \*17

5  (C.D. Cal. May 6, 2022), and has been repeatedly upheld in cases involving class-wide damages

6  calculations for mislabeling under the CLRA. *Milan*, 340 F.R.D. at 601; *Bailey v. Rite Aid Corp.*,

7  338 F.R.D. 390, 411 (N.D. Cal. Apr. 28, 2021).

8      The Ninth Circuit has affirmed that "plaintiffs can measure class-wide damages using methods

9  that evaluate what a consumer would have been willing to pay for the product had it been labeled

10 accurately," as long as these methods "reflect supply-side considerations and marketplace realities

11 that would affect product pricing." *Zakaria v. Gerber Prods. Co.*, 755 Fed. App'x 623, 624 (9th Cir.

12 2018). In mislabeling cases, courts have accepted conjoint analyses as sufficient for accounting for

13 supply-side factors and estimating price premiums without conflicting with *Comcast*, provided that

14 (1) the survey prices reflect actual market prices from the class period, and (2) the quantities used

15 in the analysis correspond to actual quantities sold during that time. *Hadley*, 324 F. Supp. 3d at

16 1105. Additionally, courts have supported conjoint analyses that incorporate real market-clearing

17 prices and fixed supply quantities. *Fitzhenry-Russell*, 326 F.R.D. at 606.

18     To quantify class-wide damages and restitution in this case, Plaintiff will rely on a conjoint

19 analysis conducted by survey expert Steven Gaskin and economist Colin Weir. Mr. Gaskin will

20 design a survey that isolates and measures the market price premium attributable to the health-

21 related "help manage blood sugar" claim on the Products. *See* Gaskin Decl. ¶ 10. This conjoint

22 analysis will provide a scientifically valid method for determining the added value consumers placed

23 on this specific claim and will be used to calculate the amount of restitution and damages owed to

24 the Class.

25     Mr. Gaskin will follow accepted principles of conjoint survey design and will include labeling

26 attributes such as brand, health-related claims, and price. *See* Gaskin Decl. ¶¶ 12-47 (explaining

27 design framework, attribute selection, and implementation methodology). He will also account for

28 supply-side factors in both the survey and resulting market simulation, including the use of real-

PLAINTIFF'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS CERTIFICATION
AND IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

world pricing and sales volume data to mirror actual market conditions. *Id.* ¶ 24. This ensures that the conjoint analysis properly accounts for factors influencing price beyond consumer preference alone. In *Milan*, the court specifically acknowledged the conjoint analysis developed by Plaintiff's expert, Mr. Gaskin, as a widely accepted method for determining price premium, deeming the plaintiff's damages model reliable and suitable for the case. 340 F.R.D. at 601. Similarly, in this case, the survey designed by Mr. Gaskin, along with the conjoint analysis he will conduct, isolates and quantifies the price premium linked to the "help manage blood sugar" claim. This analysis will be instrumental in calculating the restitution and damages owed to the Class. *See* Gaskin Decl. ¶¶ 12-47 (outlining the conjoint survey's methodology, key steps, and the process for obtaining a representative sample of respondents).

Mr. Gaskin will be supported by Mr. Weir, a highly experienced economist with extensive expertise in calculating damages in consumer class actions. *See* Weir Decl. ¶ 8. Mr. Weir will provide economic oversight for the conjoint survey and ensure its suitability for determining damages on a class-wide basis. *Id.* ¶¶ 8, 12-14, 48-72 (detailing his role in designing and assessing the economic validity of the conjoint survey, and providing a framework for calculating damages). He will also supplement the conjoint analysis with Defendant's business records, third-party sales data, and industry research. *Id.* ¶¶ 66-68. Mr. Weir explains that the "help manage blood sugar" claim served as a key differentiator in the marketplace, a claim that allowed Defendant to distinguish the Products from other sweeteners and to command a price premium. *Id.* ¶¶ 15-24. This representation, as Defendant's own internal documents confirm, was central to its marketing strategy and to consumer perception of the Products' value. *Id.*

Together, Mr. Gaskin and Mr. Weir will employ a well-established and reliable methodology to determine the price premium specifically attributable to Defendant's health-related representation. *See Martinelli v. Johnson & Johnson*, No. 2: 15-cv-01733-MCE-DB, 2019 WL 1429653, at *4 (E.D. Cal. Mar. 29, 2019) (declining to strike testimony of Mr. Weir where "the conjoint analysis . . . factored supply-side data into its design"); *see also Maldonado v. Apple, Inc*, No. 3:16-cv-04067-WHO, 2021 WL 1947512, at *22 (N.D. Cal. May 14, 2021) (stating that "this damages model—a conjoint analysis using real-world supply-side data—satisfies *Daubert* and

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1    California law."); *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 969-72 (N.D. Cal.

2    2018).

3        Importantly, this damages model does not require individualized inquiries. *See* Weir Decl. ¶¶

4    73-78. All data necessary to conduct the conjoint analysis are common to the Class and derived from

5    shared sources. *Id*. ¶ 36. Once the price premium attributable to the "help manage blood sugar"

6    claim is determined, that value can be multiplied by the number of units purchased by each Class

7    member to calculate individual and total damages. *Id*. ¶¶ 69-72; *see Zakaria*, 2016 WL 6662723, at

8    *16. This methodology ties directly to Plaintiff's theory of liability, and the model is both legally

9    sufficient and capable of measuring damages on a class-wide basis. Accordingly, this further

10   supports a finding of predominance under Rule 23(b)(3).

11       **C.    Superiority**

12       Whether "a class action is superior . . . for fairly and efficiently adjudicating the controversy"

13   depends on "(A) the class members' interests in individually controlling the prosecution or defense

14   of separate actions; (B) the extent and nature of any litigation concerning the controversy already

15   commenced by or against members of the class; (C) the desirability or undesirability of

16   concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in

17   managing a class action." Fed. R. Civ. P. 23(b)(3). All four factors favor certification here.

18       Superiority is satisfied here. The Products are relatively inexpensive, and Class members

19   thus have no interest in controlling individual actions. *Tait*, 289 F.R.D. at 486 (Superiority "is met

20   '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual

21   basis.'") (quotation omitted). Plaintiff's counsel is also unaware of any other related litigation.

22   Gudino Decl. ¶ 6. Finally, this case focuses on Defendant's uniform labeling practices, not every

23   consumer's interaction. This minimizes any manageability concerns, which in any event cannot

24   defeat class certification where, as here, "no realistic alternative exists." *See Valentino v. Carter-*

25   *Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). Thus, a class action is the superior method.

26   //

27   //

28   //

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    **VI.    CONCLUSION**

2           For the foregoing reasons, Plaintiff respectfully requests that the Court certify the proposed

3    Class, designate Plaintiff as Class representatives, appoint Clarkson Law Firm, P.C. as Class

4    Counsel, and deny Defendant's motion in its entirety.

5

6    Dated: August 12, 2025                          **CLARKSON LAW FIRM, P.C.**

7                                                    By: */s/ Alan Gudino*
                                                        Shireen M. Clarkson
8                                                       Bahar Sodaify
                                                        Alan Gudino
9
                                                        *Attorneys for Plaintiff*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS CERTIFICATION
AND IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

Clarkson Law Firm, P.C.    |    22525 Pacific Coast Highway    |    Malibu, CA 90265