UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR MASRY,<br><br>    Plaintiff,<br><br>v.<br><br>ABBOTT LABORATORIES,<br><br>    Defendant. | Case No. 23-cv-04348-NW<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 81 |

Plaintiff Omar Masry filed a putative class action against Defendant Abbott Laboratories ("Abbott"). Masry challenges the labeling of Abbott's Glucerna line of powders and shakes, which are marketed as scientifically designed for people with diabetes to help manage blood sugar. Masry brings several claims on behalf of himself and a proposed class alleging that because Abbott's products contain sucralose and other additives, the products do not provide the promised health benefits. On February 6, 2025, Abbott filed a motion for summary judgment. Mot., ECF No. 81.

Having considered the parties' briefs, the relevant law, and the arguments offered by counsel at the August 20, 2025 hearing, the Court GRANTS Abbott's motion for summary judgment.

I.     **BACKGROUND**

The Court recites only facts relevant to the present motion for summary judgment, and assumes familiarity with the background of this case, which was discussed in the Court's June 5, 2024 Order.[1] *See* ECF No. 42.

---

[1] Unless otherwise noted, the background information comes directly from Plaintiff's First Amended Complaint ("FAC"). ECF No. 24.

1    Abbott sells a line of "diabetic nutritional drinks and powders" under the brand Glucerna.
2 FAC ¶ 24. Abbott markets the Glucerna products to diabetic, prediabetic, and health-conscious
3 consumers as a snack or meal replacement. Plaintiff challenges the following labels on the
4 Glucerna products ("Labels"):
5    • "#1 doctor recommended brand;"
6    • "scientifically designed for people with diabetes;" and
7    • "to help manage blood sugar."
8 Plaintiff also objects to unspecified non-label marketing and advertising. Plaintiff challenges
9 these Labels and alleges they misled him. In his FAC, Plaintiff asserts that he understood the
10 claim that Glucerna is the "#1 doctor recommended brand" and is "scientifically designed for
11 people with diabetes" to mean that Glucerna products "aid in managing blood sugar generally"
12 and are "scientifically capable of the treatment of diabetes or other health conditions." *Id*. ¶ 61.
13 Plaintiff contends that: the Labels are misleading because Glucerna products contain ingredients,
14 including sucralose, that may have negative health consequences when consumed in high
15 amounts; those negative effects are particularly likely to be experienced by people with diabetes;
16 and, the Labels are false and deceptive because the products do not provide the advertised
17 benefits.
18    On June 5, 2024, the Court granted in part Abbott's motion to dismiss Plaintiff's FAC.
19 ECF No. 42. Specifically, the Court granted the motion as to Plaintiff's claims for injunctive
20 relief with leave to amend. Plaintiff elected not to amend his complaint, leaving Plaintiff's claims
21 for: violations of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.
22 ("CLRA"); the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*. ("FAL"); the
23 Unfair Competition Law, *Id*. § 17200, *et seq*. ("UCL"); as well as claims for breach of express
24 warranty and unjust enrichment.
25    Two of the three named plaintiffs, Prescott and Villarreal, voluntarily withdrew from the
26 case in July 2024 and January 2025, respectively. *See* ECF Nos. 48, 72. Both of the former
27 named plaintiffs were diabetics. No additional named plaintiffs have since been added to this
28 action, leaving only Plaintiff Masry.

Masry was deposed on November 14, 2024. Decl. of Jonah Knobler in support of Mot., ¶ 2, Ex. 1, ECF No. 81-1 ("Tr.").[2] He testified that he purchased Glucerna products approximately 20 times in 2021 and 2022. Tr. at 44:15, 93:4. When discussing his background, Masry confirmed that he has never been diagnosed with diabetes, prediabetes, or insulin resistance. Tr. at 55:13-57:6. He explained that although he has never received medical advice that he is at a higher-than-average risk for developing diabetes, he is concerned about developing diabetes because his mother told him approximately 15 years ago that one of his grandparents may have had diabetes. Tr. at 56:7-57:6, 58:16. When asked if he believed that Glucerna products were designed for people with diabetes, Masry said, "I don't know that it is or is not." Tr. at 47:4. He said he is "not aware" of whether products made with artificial sweeteners are more suitable for diabetics than products made with sugar. Tr. at 54:14.

Masry could not clearly articulate what benefit he had hoped to receive as a non-diabetic from Glucerna products, nor how he believes Glucerna did not live up to that expectation. Masry confirmed that he does not "have and did not have at the time of purchasing an understanding of how Glucerna would help manage blood sugar." Tr. at 123:14. When asked whether he understood "what it means to manage blood sugar," Masry said that he "had a general sense of managing blood sugar at the time [sic] was basically to reduce spikes and/or lack of insufficient blood sugar." Tr. at 123:16-18. Masry confirmed that he did not and does not know what a blood sugar spike is "with specificity." Tr. at 123:20. Masry was specifically asked: "[w]hy do you believe you were misled by [the "to help manage blood sugar"] statement?" Tr. at 129:16-17. Masry replied, "[b]ecause from what I understand that does not appear to be the case." Tr. at 129:18-19.

Masry did not testify about any health concerns he experienced after occasionally drinking Glucerna. When asked if he knows "whether Glucerna actually did minimize blood sugar spikes for you after drinking it," Masry said "I don't think it did. I don't have reason to believe it did."

---

[2] The parties each filed excerpted portions of the November 14, 2024 deposition transcript with their briefs. On August 20, 2025, the parties shared a complete version of the transcript with the Court.

3

1  Tr. at 131:22-23.  Masry confirmed that he has never measured his blood sugar after drinking
2  Glucerna or another product, and that he has never experienced symptoms that made him think he
3  was experiencing a blood sugar spike.  Tr. at 131:1-132:4.  Masry said that, after drinking
4  Glucerna, he has never felt nauseous, hungry, thirsty, or tired, nor has he experienced a fast
5  heartbeat or confusion.  Tr. at 132:5-20.  Masry noted that he "sometimes noticed that [he] burped
6  more often," but acknowledged that this was not a symptom he associated with high blood sugar.
7  Tr. at 132:20.

8      Masry commented that he felt "[b]etter than eating a fast food meal" when drinking
9  Glucerna.  Tr. at 133:11.   When asked what snack or meal Glucerna was replacing in his diet,
10 Masry offered "nuts, mango, beef jerky, half a KitKat or two pieces of KitKat bar."  Tr. at 138:17-
11 25.  Masry continues to drink another type of nutrition shake called Isopure that, like Glucerna,
12 contains sucralose.  Tr. at 63:13.

13     On February 6, 2025, Abbott moved for summary judgment.  Mot., ECF No. 81.  Masry
14 opposed, and Abbott filed a reply.  Opp'n, ECF No. 95; Reply, ECF No. 100.

15 **II.     LEGAL STANDARD**

16     Summary judgment is proper where the pleadings, discovery and affidavits show that there
17 is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
18 law." Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party who fails to
19 make a showing sufficient to establish the existence of an element essential to that party's case,
20 and on which that party will bear the burden of proof at trial . . . since a complete failure of proof
21 concerning an essential element of the nonmoving party's case necessarily renders all other facts
22 immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A fact is material if it might
23 affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is
24 genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving
25 party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  At summary judgment, the
26 Court does not make credibility determinations or weigh conflicting evidence regarding material
27 facts.  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.
28 1987).  The evidence presented and the inferences to be drawn from the facts must be viewed in a

light most favorable to the nonmoving party. *Id*. at 631. The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If the nonmoving party fails to do so, the court may properly grant summary judgment in favor of the moving party. *Id*.

In a case alleging misrepresentation, summary judgment will be appropriate if there is no genuine dispute of material fact that the plaintiff did not rely on the challenged statements when making their purchases. *In re iPhone Application Litigation*, 6 F.Supp.3d 1004, 1027 (N.D. Cal. 2013).

## III.  DISCUSSION

Each of Masry's claims turn on whether he relied on the Labels when he purchased the Glucerna products. For UCL, FAL, and CLRA claims, a plaintiff "must demonstrate that they actually relied on the challenged misrepresentations and suffered economic injury as a result of that reliance." *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1208 (N.D. Cal. 2017) (concerning claims under the UCL, FAL, and CLRA challenging misleading labels). "While a plaintiff is not required to show that the challenged misrepresentation was 'the sole or even the predominant or decisive factor influencing his conduct,' the misrepresentation must have "played a substantial part . . . in influencing his decision." *Id*. (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 326-27 (2009)). For a breach of express warranty claim, a plaintiff must "show reliance on the defendant's representation." *Moncada v. Allstate Ins. Co.*, 471 F. Supp. 2d 987, 997 (N.D. Cal. 2006) (citing *Kazerouni v. De Satnick,* 228 Cal.App.3d 871, 873 n. 3 (1991)); *see also Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 988 (N.D. Cal. 2009) (dismissing claim for breach of express warranty where the "only named plaintiff with standing to sue . . . fail[ed] to allege reasonable reliance on any specific representations [defendant] made").

Regarding unjust enrichment claims, courts dismiss those claims when "they are merely duplicative of statutory or tort claims." *In re Apple and AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011); *see also Samet v. Procter & Gamble Co.*, No. 5:12-CV-01891 PSG, 2013 WL 3124647, at *10 (N.D. Cal. June 18, 2013). Because Masry alleges no facts in his unjust enrichment claim that were not addressed in his UCL, FAL, and CLRA claims,

5

the Court grants Abbott's motion for summary judgment as to Masry's claim for unjust enrichment.

Abbott argues that summary judgment is appropriate for each of Masry's remaining claims because (1) Masry did not rely on the first two labels or non-label advertising in purchasing the products, and (2) assuming he relied on the third label, that reliance was unreasonable as a matter of law. The Court agrees.

### 1. "#1 doctor recommended brand" and "scientifically designed for people with diabetes"

Masry's deposition testimony establishes that the first two challenged labels played no part in his purchases of Glucerna products. In his deposition, he explicitly stated that he did not recall reading the label "Glucerna is the number one doctor recommended brand" or "scientifically designed for people with diabetes." Tr. at 111:24, 113:15. He did not recall reading any of the labels on the back side of the packaging. Tr. at 103:10. Masry testified that he recalled reading the front side of the packaging, but he only reviewed the "mention of the ability to help regulate blood sugar." Tr. at 103:15. Masry also stated that he did not recall reviewing any other advertising or non-label claims when making his purchase. Tr. at 103:7.

In its opposition brief, Plaintiff focused its argument on Masry's reliance on the "to help manage blood sugar" portion of the label. To the extent Plaintiff made any argument regarding the other two labels it was to assert that irrespective of whether Masry read them, when claims "communicate the same essential message" they can be "grouped together for standing purposes." Opp'n at 6 (citing *Prescott v. Bayer HealthCare LLC*, 2020 WL 4430958, at *5 (N.D. Cal. July 31, 2020)). At the start of the hearing, Plaintiff indicated that it would like to proceed with its arguments on all three Labels and asserted that the Labels collectively communicate one message. However, at the end of the hearing, Plaintiff informed the Court that it no longer would be pursuing its claims based on the first two labels. Because Plaintiff has conceded its claims on these two labels, the Court need not address the claims further.

### 2. "to help manage blood sugar"

In his deposition, Masry testified that he relied on a "mention of the ability to help regulate

blood sugar." Tr. at 103:15. Later he clarified that he relied on the label "to help manage blood sugar." Tr. at 104:15. Masry was asked numerous times why and how he thought Glucerna would "help manage blood sugar." He explained that he does not have, and did not have at the time of purchase, an understanding of how Glucerna helps "manage blood sugar." Tr. at 123:14. He noted that he found the label "to be intriguing and given the mention by my mother of diabetes possibly being in the family from one of my grandparents, that it may be a benefit." Tr. at 103:24-104:8.

The label "to help manage blood sugar" is a portion of the complete label claim which reads: "Made with CARBSTEADY to help manage blood sugar." The sentence is followed by a symbol (a small dagger shape) indicating that more information is available elsewhere on the package. Masry acknowledged that the Glucerna package includes the full label claim, "Made with CARBSTEADY to help manage blood sugar." Tr. at 129:7. He said that he knew that there was additional information available on the package explaining what this label meant, but that he "did not check" the additional information. Tr. at 123:23-124:25. When asked why, Masry explained, "I don't have recollection in my thought process why or why not I did not check that symbol." *Id*.

"Even before reading the back label, the presence of an asterisk alone puts a consumer on notice that there are qualifications or caveats, making it unreasonable to assume that" the label stands on its own. *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 785 (9th Cir. 2024); *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023) (If a "front label is ambiguous, the ambiguity can be resolved by reference to the back label."); *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (reasonable consumers are expected to draw "contextual inferences regarding the product itself and its packaging"). Here, Masry admitted he saw the symbol indicating that there was further explanation on the packaging. Tr. at 123:23-124:25. Setting aside (as the Court must when ruling on a motion for summary judgment) whether Masry's testimony is credible, it was unreasonable for him to rely on one portion of one label in isolation.

Additionally, Masry's alleged reliance on the "helps manage blood sugar" label alone is insufficient to create an express warranty. Statements must be "specific and unequivocal" to

7

create an express warranty. *Baird v. Samsung Elecs. Am., Inc.*, 522 F. Supp. 3d 679, 685 (N.D. Cal. 2021) (holding that product packaging showing a YouTube logo on a Smart TV screen did not constitute a specific and unequivocal statement that consumers would have lifetime access to YouTube). Here, Masry states he relied on a portion of an entire sentence, which also contained a symbol indicating that further clarifying information was available on the packaging. Masry's claimed reliance on this portion of the label is not specific enough to constitute an express warranty. *See McMahon v. Take-Two Interactive Software, Inc.*, 745 F. App'x 786, 787 (9th Cir. 2018) (statement on a video game package of "Featuring GTA Online" is not specific and unequivocal enough to create express warranty of immediate access to GTA Online).

All Masry's remaining claims rise and fall on whether he relied on the Labels at the time of purchase. Because there is no genuine issue of material fact that Masry did not rely on those Labels, the Court GRANTS Defendant's motion.

## IV. CONCLUSION

Defendant's motion for summary judgment is GRANTED. "Because a class action cannot go forward without a named plaintiff, a putative class action lacking an appropriate named plaintiff should be dismissed." *Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 (9th Cir. 2019). Plaintiff's claims against Defendant are DISMISSED with prejudice. Plaintiff's motion for class certification, ECF No. 77, and renewed motion for class certification, ECF No. 113, are terminated as moot. The Court will enter judgment in favor of Defendant accordingly.

**IT IS SO ORDERED.**

Dated: August 28, 2025

Noël Wise
United States District Judge